UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re OPTIONABLE SECURITIES LITIGATION | Case No. 07 Civ. 03753 (LAK) |

# MEMORANDUM OF LAW IN SUPPORT OF SCOTT WALDMAN'S MOTION TO CONSOLIDATE, FOR APPOINTMENT AS LEAD PLAINTIFF, AND FOR APPROVAL OF HIS SELECTION OF LEAD COUNSEL

WOLF POPPER LLP
Marian P. Rosner (MR - 0410)
Patricia I. Avery (PA - 8423)
845 Third Avenue
New York, New York 10022
Tel.: (212) 759-4600
Fax: (212) 486-2093

Doc. 157790

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

SUMMARY OF THE ACTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    I.    SCOTT WALDMAN'S MOTION FOR
          APPOINTMENT AS LEAD PLAINTIFF SHOULD BE GRANTED . . . . . . . . . 3

          A.    Waldman Satisfies the Procedural Requirements of the PSLRA . . . . . . . 3

          B.    Waldman Constitutes The "Most Adequate Plaintiff" . . . . . . . . . . . . . . . 4

              1.    Movant Has Made A Motion For His Appointment As Lead
                    Plaintiff . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

              2.    Movant Has The Largest Financial Interest . . . . . . . . . . . . . . . . . . 6

          C.    Waldman Satisfies Fed. R. Civ. P. 23 . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

              1.    Waldman Fulfills The Typicality Requirement . . . . . . . . . . . . . . 7

              2.    Waldman Fulfills The Adequacy Requirement . . . . . . . . . . . . . . 8

    III.    THE COURT SHOULD APPROVE
           WALDMAN'S SELECTION OF LEAD COUNSEL . . . . . . . . . . . . . . . . . . . . . 9

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

# TABLE OF AUTHORITIES

## CASES

Bassin v. Decode Genetics, Inc.,
    230 F.R.D. 313 (S.D.N.Y. 2005) ............................................. 6

In re Drexel Burnham Lambert Group, Inc.,
    960 F.2d 285 (2d Cir. 1992), cert. denied, 506 U.S. 1088 (1993) ................. 7

In re Espeed, Inc. Sec. Litig.,
    232 F.R.D. 95 (S.D.N.Y. 2005) ......................................... 5, 7, 8

Ferrari v. Impath, Inc.,
    No. 03-CV-5667 (DAB), 2004 U.S. Dist. LEXIS 13898 (S.D.N.Y. 2004) .......... 5, 7

Fitzgerald v. Citigroup Inc.,
    No. 03-cv-4305 (DAB), 2004 U.S. Dist. LEXIS 5066 (S.D.N.Y. 2004) ............. 5

In re Oxford Health Plans, Inc., Sec. Litig.,
    182 F.R.D. 42 (S.D.N.Y. 1998) ............................................. 7

Schulman v. Lumenis, Ltd.,
    2003 U.S. Dist. LEXIS 10348 (S.D.N.Y. 2003) ............................... 7

Walsh v. Northrop Grumman Corp.,
    162 F.R.D. 440 (E.D.N.Y. 1995) ............................................ 8

Weiss v. Friedman, Billings, Ramsey Group, Inc.,
    2006 U.S. Dist. LEXIS 3028 (S.D.N.Y. 2006) .............................. 5, 7

## STATUTES AND RULES

15 U.S.C. § 77z-1 ................................................... passim

15 U.S.C. §78u-4(a)(3) .............................................. passim

Fed. R. Civ. P. 42(a) .................................................... 1

Private Securities Litigation Reform Act ................................ passim

Securities Exchange Act of 1934 ......................................... 1

Securities Exchange Act of 1934 ......................................... 1

## PRELIMINARY STATEMENT

Scott Waldman ("Waldman" or "Movant") respectfully submits this memorandum of law in support of his motion, pursuant to Fed. R. Civ. P. 42(a); § 27(a)(3)(B) of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. § 77z-1(a), as amended by the Private Securities Litigation Reform Act (the "PSLRA"); and § 21D of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §78u-4(a)(3)(B), as amended by the PSLRA, for an order: (a) appointing Waldman as Lead Plaintiff to prosecute the Securities Act claims brought on behalf of class members who purchased shares in or traceable to the public offering conducted on or about May 6, 2005 (the "IPO") and the Exchange Act claims brought on behalf of class members who purchased shares in the open market on or before May 11, 2007 (the "Class Period"); and (b) approving Movant's selection of Wolf Popper LLP as Lead Counsel.[1]

## SUMMARY OF THE ACTION

The first-filed Fleiss action[2] alleges that defendants violated Sections 11 and 15 of the Securities Act, 15 U.S.C. § 77(k) and (o), by including, or allowing the inclusion of materially false and misleading statements in the Registration Statement and Prospectus issued by Optionable Inc. ("Optionable" or the "Company") in connection with the IPO. The Fleiss action

---

[1] Six class action lawsuits (the "Actions") were filed asserting substantially the same claims against Optionable Inc. Pursuant to orders issued by this Court on June 20, 2007 and July 3, 2007 five of these Actions were consolidated under the civil action number 07 Civ. 3884. On July 2, 2007, the Court ordered any objectors to consolidating Bock v. Optionable inc., et al, No. 07-cv-05948 (LAK), with these Actions to show cause by July 16, 2007. Movant anticipates that the Bock action will be consolidated.

[2] Fleiss v. Optionable, Inc.,et al 07-CV-3753 (LAK), S.D.N.Y. (the "Fleiss" action), was filed on May 11, 2007 and named as defendants Optionable Inc., Mark Nordlicht, Kevin Cassidy, Edward J. O'Connor, Albert Helmig, and Marc Andre Boisseau. The factual description herein is based on the allegations in that complaint and the other Actions.

Doc. 157790                              1

alleges claims on behalf of persons or entities who purchased shares pursuant or traceable to the Registration Statement filed with the Securities and Exchange Commission ("SEC") on May 9, 2005 (the "May 2005 Prospectus").[3]

The Fleiss action alleges specifically that defendants failed to conduct an adequate due diligence investigation into the Company prior to the IPO and failed to reveal that at the time of the IPO three key facts: (i) two of the Company's four board members, its Chairman, Mark Nordlicht, and its only purported independent director, Albert Helmig, were actually related parties and members of the Board of Directors of Platinum Energy; (ii) that there was a significantly higher customer concentration than Optionable reported, with Bank of Montreal (BMO) directly connected to over 80% of the Company's revenues - much higher than the 20%-30% reported; and (iii) that defendants had conspired with now-terminated BMO brokers to provide trade data to BMO that was false, misleading and designed to avoid reporting hundreds of millions of dollars in trading losses that would have necessarily curtailed BMO trading with and through Optionable.

Throughout Optionable's public history, the Company allegedly continued to understate its dependence on BMO. For example, in its quarterly report of the period ended March 31, 2007, it stated that BMO accounted for only 30% of its revenues during that period. However, because of Optionable's position as a "middle-man" in the energy trading options business, with BMO making up only one side of each transaction and fees being charged to both parties to the transaction, transactions with BMO actually accounted for 60% of the Company's potential revenue.

---

[3] The May 2005 Prospectus bears a date of May 6, 2005. The Fleiss Action alleges a class beginning May 9, 2005.

Beginning in late-April 2007 the truth about Optionable began to be revealed. The first revelation came from BMO on April 30, 2007 when it announced huge options-related losses (more than $300 million) which highlighted the magnitude of Optionable's customer over-concentration and its reliance on BMO for the majority of its revenues. Shortly after that announcement and after BMO had suspended trading with Optionable, on May 10, 2007, BMO announced that it had received a report from independent forensic accountants revealing that Optionable and BMO's own brokers had conspired to under-report trading losses, in an effort to maintain trading and avoid accountability to BMO.

In the aftermath of these revelations, Optionable's common stock dropped from just under $5.00 per share on April 30, 2007 to just over $1.00 per share on May 10, 2007 - a decline of almost 80% attributable to two trading days.

Further, during the Class Period, the defendants and other Company insiders took advantage of the artificially inflated price of Optionable common stock. Company insiders sold 11,431,636 shares of Optionable stock for gross proceeds in excess of $29 million. Included in this are the 1,905,000 shares sold by Defendant Kevin Cassidy at $5.29 per share for gross proceeds of $5,124,450, the 1,853,886 shares sold by Defendant Edward O'Connor at $2.69 per share for gross proceeds of $4,986,953, and the 7 million shares sold by Mark Nordlicht at $2.69 per share for gross proceeds of $18,830,000.

## ARGUMENT

### I. SCOTT WALDMAN'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF SHOULD BE GRANTED

#### A. Waldman Satisfies the Procedural Requirements of the PSLRA

The PSLRA provides a rebuttable presumption that in a securities class action the person

or group of persons with the largest financial interest in the relief sought by the class (who moves for appointment as lead plaintiff) shall be appointed as the lead plaintiff. 15 U.S.C. §77z-1(a)(3); 15 U.S.C. §78u-4(a)(3). Scott Waldman has signed a certification seeking to be appointed lead plaintiff, stating that he purchased 1,750 shares of Optionable common stock at $6.54 and $5.69 per share. See Exhibit 1 to the Declaration of Patricia I. Avery In Support of Scott Waldman's Motion to Consolidate, for Appointment as Lead Plaintiff and for Approval of His Selection of Lead Counsel (the "Avery Decl."). Using the average price of the stock since the first day after end of the Class Period (the stock closed at $0.365 per share on July 10, 2007 and has an average price of $0.4153), Waldman has lost approximately $9,557 as a result of his purchase of Optionable common stock.

Plaintiffs who commence securities class actions must publish a notice to the class, within twenty days of filing the action, informing class members of the pendency of the action and their right to file a motion for appointment as Lead Plaintiff. See 15 U.S.C. § 77z-1(a)(3)(A)(i); 15 U.S.C. §78u-4(a)(3)(A)(i). Within sixty days after that publication of notice, any person or group of persons who are members of the proposed class may apply to the Court to be appointed as Lead Plaintiff. Id. On May 11, 2007, the initial notice of the pendency of the Fleiss action was published via the *Market Wire* wire service, a widely circulated national newswire. A copy of this notice is attached as Exhibit 2 to the Avery Decl. Waldman's motion is being made on July 10, 2007, and is timely because it is being made within sixty days after publication of the initial notice.

### B.   Waldman Constitutes The "Most Adequate Plaintiff"

The PSLRA mandates that, not more than ninety days after publication of the initial

notice of pendency, a court shall consider any motion made by any class member, and appoint as Lead Plaintiff the member(s) of the class that the court determines to be most capable of adequately representing the interests of class members. 15 U.S.C. § 77z-1(a)(3)(B); 15 U.S.C. §78u-4(a)(3)(B). Under the PSLRA, such persons are referred to as the "most adequate plaintiff." Id.

The statute dictates that courts must presume that the most adequate plaintiff:

is the person or group of persons that:

(aa) has either filed the complaint or made a motion in response to a notice . . .;

(bb) in the determination of the Court, has the largest financial interest in the relief sought by the class; and

(cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 77z-1(a)(3)(B)(iii)(I); 15 U.S.C. §78u-4(a)(3)(B)(iii). See Ferrari v. Impath, Inc., No. 03-CV-5667 (DAB), 2004 U.S. Dist. LEXIS 13898 at *13 (S.D.N.Y. 2004)(attached hereto as Exhibit 3 to the Avery Decl.); Fitzgerald v. Citigroup Inc., No. 03-cv-4305 (DAB), 2004 U.S. Dist. LEXIS 5066 at *5 (S.D.N.Y. 2004) (attached hereto as Exhibit 4 to the Avery Decl.); Weiss v. Friedman, Billings, Ramsey Group, Inc., 2006 U.S. Dist. LEXIS 3028, at *10 (S.D.N.Y. 2006) (attached hereto as Exhibit 5 to the Avery Declaration); In re Espeed, Inc. Sec. Litig., 232 F.R.D. 95, 97-98 (S.D.N.Y. 2005) (Scheindlin, J).

### 1. Movant Has Made A Motion For His Appointment As Lead Plaintiff

Pursuant to the provisions of the PSLRA and within the requisite time frame after publication of the notice, Waldman has timely moved this Court to be appointed lead plaintiff on behalf of all plaintiffs and class members covered by the Actions.

### 2. Movant Has The Largest Financial Interest

According to 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I)(bb) and 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb), the Court shall appoint as lead plaintiff the class member who represents the largest financial interest in the relief sought by the action. Waldman believes he has the largest loss of any class member who purchased shares issued traceable to the May 2005 Prospectus and has standing to pursue the Securities Act and Exchange Act claims. Waldman is entitled to this presumption and is demonstrably the most adequate plaintiff to pursue the Securities Act and Exchange Act claims.

### C. Waldman Satisfies Fed. R. Civ. P. 23

In addition to the aforementioned requirements, 15 U.S.C. § 77z-1(a)(3)(B) and 15 U.S.C. § 78u-4(a)(3)(B) dictates that the proposed Lead Plaintiff must also "otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure." For purposes of a motion for appointment of lead plaintiff, a movant need only make a preliminary showing that he or she satisfies Rule 23. See Fitzgerald v. Citigroup Inc., 2004 U.S. Dist. LEXIS 5066 at *8-9 (S.D.N.Y. 2004)("Thus, at this stage in the litigation, a plaintiff need only make a 'preliminary showing' that the Rule's typicality and adequacy requirements have been satisfied."); See also Weiss v. Friedman, Billings, Ramsey Group, Inc., 2006 U.S. Dist. LEXIS 3028, at *16; In re Espeed, Inc. Sec. Litig., 232 F.R.D. at 102; Bassin v. Decode Genetics, Inc., 230 F.R.D. 313, 315 (S.D.N.Y. 2005).

Of the prerequisites to class certification set forth in Rule 23, only the typicality and adequacy prongs are implicated in any consideration of the "most adequate plaintiff." This is clear from PSLRA Section 27(a)(3)(B)(iii)(II), which provides that the presumption in favor of

the most adequate plaintiff may be rebutted only upon proof that this individual:

> (aa) will not fairly and adequately protect the interest of the class;
> or (bb) is subject to unique defenses that render such plaintiff
> incapable of adequately representing the class.

Id. Consequently, in deciding a motion for appointment of Lead Plaintiff, inquiry should be limited to the typicality and adequacy prongs of Rule 23(a). See Ferrari v. Impath, Inc., 2004 U.S. Dist. LEXIS 13898 at *17 (S.D.N.Y. 2004) (noting that the preliminary showing at this stage of the litigation need only be made as to the typicality and adequacy requirements of Rule 23); Schulman v. Lumenis, Ltd., 2003 U.S. Dist. LEXIS 10348 at *19 (S.D.N.Y. 2003) (same).

### 1. Waldman Fulfills The Typicality Requirement

The typicality requirement of Rule 23(a)(3) is satisfied when each class member's claims arise from the same course of events and each class member makes similar arguments to prove the defendants' liability. Schulman v. Lumenis, Ltd., No. 02-cv-1989 (DAB), 2003 U.S. Dist. LEXIS 10348 at *19 (S.D.N.Y. 2003) (attached hereto as Exhibit 6 to the Avery Decl.); see also In re Oxford Health Plans, Inc., Sec. Litig., 182 F.R.D. 42, 49 (S.D.N.Y. 1998) ("[Typicality is satisfied where the claims] arise from the same conduct from which the other class members' claims and injuries arise.") (citing In re Drexel Burnham Lambert Group, Inc., 960 F.2d 285, 291 (2d Cir. 1992), cert. denied, 506 U.S. 1088 (1993)); Weiss v. Friedman, Billings, Ramsey Group, Inc., 2006 U.S. Dist. LEXIS 3028, at *16-17; In re Espeed, Inc. Sec. Litig., 232 F.R.D. 95 at 102 ; Bassin v. Decode Genetics, Inc., 230 F.R.D. at 316. .

Waldman seeks to represent a Class of persons who purchased Optionable securities that were issued pursuant to the May 2005 Prospectus. Waldman satisfies the typicality requirement because he: (i) purchased Optionable securities directly traceable to the May 2005 Prospectus and (ii) suffered damages thereby. Thus typicality is satisfied since the claims asserted by Movant

arise "from the same event or course of conduct that give rise to claims of other class members and the claims are based on the same legal theory." <u>Walsh v. Northrop Grumman Corp.</u>, 162 F.R.D. 440, 445 (E.D.N.Y. 1995).

### 2.     Waldman Fulfills The Adequacy Requirement

Section 27(a) of the PSLRA directs the Court to limit its inquiry under the adequacy prong to the existence of any conflicts between the interests of the proposed representative and the members of the Class.  <u>See</u> 15 U.S.C. § 77z-1(a)(3)(B)(iii)(II)(bb) and 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(bb).  Adequacy depends upon the existence of common interests between the class members and the representative party and a showing of a willingness of the representative party to vigorously prosecute the action on behalf of the class members.  <u>In re Espeed, Inc. Sec. Litig.</u>, 232 F.R.D. 95, 103 (S.D.N.Y. 2005).

Here, the interests of Waldman are clearly aligned with the interests of the members of the Class who acquired shares in the IPO, and there is no evidence of any antagonism between his interests and the interests of that Class.  Further, Waldman has already demonstrated his interest in pursuing this action on behalf of the Class by signing a certification attesting to his willingness to assume the responsibilities of class representative.

Waldman is the victim of the same misconduct as other Class members, and his claims raise similar questions of law and fact as those of other Class members.  To further his own interest, Waldman will necessarily have to advance the interests of other Class members. Waldman has already demonstrated that he is committed to vigorously prosecuting claims on behalf of the Class by retaining counsel experienced in complex class litigation and by executing the certification attesting to his willingness to serve as Lead Plaintiff.  These facts amply demonstrate that Waldman will adequately represent the interests of Class members.

II. **THE COURT SHOULD APPROVE WALDMAN'S SELECTION OF LEAD COUNSEL**

Pursuant to 15 U. S. C § 77z-1(a)(3)(B)(v) and 15 U. S. C § 78u-4(a)(3)(B)(v), the lead plaintiff shall, subject to Court approval, select and retain counsel to represent the class. In that regard, Movant has selected and retained Wolf Popper LLP to serve as lead counsel for the class. Wolf Popper LLP has extensive experience in prosecuting complex securities actions, including such actions in this Court, and are well qualified to represent the class. See Avery Decl. Exhibit 7.

## CONCLUSION

For the reasons stated herein, it is respectfully submitted that Scott Waldman's motion to consolidate, to be appointed lead plaintiff, and to approve his selection of lead counsel, should be granted.

Dated: July 10, 2007
New York, New York

Respectfully submitted,

WOLF POPPER LLP

By: _____
Marian P. Rosner (MR - 0410)
Patricia I. Avery (PA - 8423)
845 Third Avenue
New York, New York 10022
(212) 759-4600
(212) 486-2093

Attorneys for Scott Waldman

Doc. 157790                    9

## CERTIFICATE OF SERVICE

     I, E. Elizabeth Ferguson, hereby certify that on July 10, 2007, I caused a true and correct copy of the attached document to be served by U.S. Mail, postage prepaid, or Federal Express, on the parties, or their counsel of record, identified on the attached service list:

                                              E. Elizabeth Ferguson

Doc.

## SERVICE LIST

| | |
|---|---|
| **Kaplan Fox & Kilsheimer LLP**<br>Jeffrey Philip Campisi<br>Frederick S. Fox<br>Donald R. Hall<br>805 Third Avenue<br>New York, NY 10022<br><br>Attorneys for Plaintiff Gerald Manowitz | **Lawrence R. Gelber**<br>Lawrence Robert Gelber<br>34 Plaza Street East,<br>Suite 1107<br>Brooklyn, NY 11238<br><br>Attorneys for the Defendant Kevin Cassidy |
| **Kelley Drye & Warren, LLP (CT)**<br>Mark Scott Gregory<br>Thomas Benjamin Kinzler<br>Christine Schessler Poscablo<br>Kevin James Smith<br>Two Stamford Plaza<br>281 Tresser Boulevard<br>Stamford, CT 06901<br><br>Attorneys for Defendant Optionable, Inc. | **Kahn, Gauthier Law Group, L.L.C.**<br>Lewis Stephen Kahn<br>650 Poydras St.<br>Suite 2150<br>New Orleans, LA 70130<br><br>Attorneys for Plaintiff Alexander Fleiss |
| **Kahn Gauthier Swick, LLC**<br>Kim Elaine Miller<br>12 East 41st Street<br>12th Floor<br>New York, NY 10017<br><br>Attorneys for Plaintiff Alexander Fleiss | **Connell Foley LLP**<br>Peter Joseph Pizzi<br>888 7th Avenue<br>New York City, NY 10106<br><br>Attorneys for Defendant Albert Helmig |
| **Sarraf Gentile, LLP**<br>Ronen Sarraf<br>485 Seventh Avenue<br>New York, NY 10018<br><br>Attorneys for Plaintiff Jagdish Patel | **Lerach, Coughlin, Stoia, Geller, Rudman & Robbins, LLP(LIs)**<br>Mario Alba, Jr<br>David Avi Rosenfeld<br>Samuel Howard Rudman<br>58 South Service Road<br>Suite 200<br>Melville, NY 11747<br><br>Attorneys for Plaintiff Jonathan Glaubach |

| | |
|---|---|
| **Abraham Fruchter & Twersky LLP**<br>Jack Gerald Fruchter<br>One Penn Plaza<br>Suite 1910<br>New York, NY 10119<br><br>Attorneys for Plaintiff Jonathan Glaubach | **Cohen, Milstein, Hausfeld & Toll, PLLC**<br>Steven Jeffrey Toll<br>Catherine A. Torell<br>1100 New York Avenue., N.W.<br>Washington, D.C., DC 20005<br><br>Attorneys for Plaintiff Stanley T. Bock |
| **Brodsky & Smith, L.L.C.**<br>Evan J Smith<br>240 Mineola Blvd.<br>Mineola, NY 11501 | |