# Exhibit 4

LEXSEE

**KATHLEEN FITZGERALD, individually and on behalf of all others similarly situated, Plaintiff, -against- CITIGROUP INC., SALOMON SMITH BARNEY INC., SMITH BARNEY ASSET MANAGEMENT, SMITH BARNEY FUND MANAGEMENT LLC and CITIGROUP GLOBAL MARKETS INC., Defendants.**

03 Civ. 4305 (DAB)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

*2004 U.S. Dist. LEXIS 5066*

March 19, 2004, Decided
March 26, 2004, Filed

**SUBSEQUENT HISTORY:** Motion granted by, Claim dismissed by *Fitzgerald v. Citigroup, Inc., 2007 U.S. Dist. LEXIS 15365 (S.D.N.Y., Feb. 22, 2007)*

**DISPOSITION:** [*1] Plaintiff Fitzgerald's motions for appointment as lead plaintiff and appointment of lead counsel granted.

**COUNSEL:** For Kathleen Fitzgerald, PLAINTIFF: Joel H. Bernstein, Christopher J. Keller, Goodkind Labaton Rudoff & Sucharow LLP, New York, NY.

**JUDGES:** DEBORAH A. BATTS, United States District Judge.

**OPINION BY:** DEBORAH A. BATTS

**OPINION**

*MEMORANDUM AND ORDER*

DEBORAH A. BATTS, United States District Judge.

Pending before this Court is Plaintiff's unopposed motion for appointment as Lead Plaintiff, and to appoint as Lead Counsel Plaintiff's counsel, Goodkind Labaton Rudoff & Sucharow. For the reasons that follow, the Court GRANTS the Plaintiff's motions.

I. BACKGROUND

On June 12, 2003, Plaintiff Kathleen Fitzgerald ("Fitzgerald" or "Plaintiff") filed a class action against Defendant Salomon Smith Barney, Inc., which sponsors over 60 mutual funds that comprise the Smith Barney Fund Family (the "Funds"), against Smith Barney Fund Management LLC and Smith Barney Asset Management (which manage the Funds), and against Citigroup Global Markets, Inc. and Citigroup Inc. (of which Salomon Smith Barney, Inc., Smith Barney Fund Management LLC and Smith Barney Asset Management are subsidiaries). (Compl. P 15-16.) Fitzgerald alleges [*2] violations of *Sections 11* and *12* of the Securities Act of 1933. *15 U.S.C. § 77l*. Specifically, Plaintiff alleges that on July 20, 2000, she purchased 13,034.411 Class B shares of the Smith Barney High Income Fund at a cost of $125,000.00; 138.471 Class B shares of the Smith Barney Aggressive Growth Fund at a cost of $13,772.30; and 37,826 Class B shares of the Smith Barney Diversified Strategic Income Fund at a cost of $275,000.00, (Fitzgerald Cert., App. to Compl.).

The Complaint alleges that, among other fees, Class B shares are subject to contingent deferred sales charges that range from 4.5% in the first year the shares are held to 1% in the fifth year. (Compl. P 32.) Plaintiff alleges that investors will pay more for fees and earn less profits if they purchase Class B shares than if they purchase Class A or Class L shares, (Compl. P 37), and that Defendants failed to disclose facts necessary to allow investors to understand that selecting Class B with respect to an investment of $100,000 or more would result in payment of unnecessary fees. (Compl. P 40.) Thus, Plaintiff alleges that the Prospectuses used in connection with the sale of the Fund shares [*3] contained materially false and misleading statements and omitted to state material facts. (Compl. P 53-68.)

In accordance with the requirements of the Private Securities Litigation Reform Act of 1995 ("PSLRA"), *15 U.S.C. § 77z-1(a) (3) (A) (i)*, Fitzgerald published a no-

Case 1:07-cv-03753-LAK    Document 21-5    Filed 07/10/2007    Page 3 of 5

Page 2
2004 U.S. Dist. LEXIS 5066, *

tice of the pendency of this action over the Internet Wire on June 25, 2003. (*See* Brody Aff., Ex. A.)

## II. DISCUSSION

### A. Appointment of Lead Plaintiff

In 1995, Congress enacted the PSLRA in response to perceived abuses in securities fraud class actions. *See* S. Rep. No. 104-98 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679; H.R. Conf. Rep. No. 104-369 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730. The purpose behind the PSLRA is to prevent "lawyer-driven" litigation, and to ensure that "'parties with significant holdings in issuers, whose interests are more strongly aligned with the class of shareholders, will participate in the litigation and exercise control over the selection and actions of plaintiffs counsel.'" *In re Oxford Health Plans, Inc., Sec. Litig.,* 182 F.R.D. 42, 43-44 (S.D.N.Y. 1998) (quoting H.R. Conf. Rep. No. 104-369); *see also In re Donnkenny Inc. Sec. Litig.,* 171 F.R.D. 156, 157-58 (S.D.N.Y. 1997). [*4] Congress believed that this could best be achieved by encouraging institutional investors to serve as lead plaintiffs. *See In re Oxford Health Plans,* 182 F.R.D. at 46 (citing H.R. Conf. Rep. No. 104-369). Before the PSLRA was enacted, "professional plaintiffs" with securities fraud claims "tended to profit irrespective of the culpability of the defendants, most of whom chose settlement over prolonged and expensive litigation." *In re Party City Secs. Litig.,* 189 F.R.D. 91, 103 (D.N.J. 1999). These professional plaintiffs tended to benefit disproportionately and at the expense of shareholders with larger stakes. *Id.*

Accordingly, the PSLRA amended the *Exchange Act* by altering the procedures for bringing such class actions. The PSLRA requires plaintiffs filing a private securities class action complaint to publish notice of the pendency of the suit in a widely circulated business publication or wire service no later than twenty days after the complaint is filed. *15 U.S.C. § 77z-1(a)(3)(A)(i).* No later than sixty days after the publication of notice, any member of the purported class may file a motion to serve as lead plaintiff. [*5] *15 U.S.C. § 77z-1(a)(3)(A)(i)(II).*

The PSLRA provides that:

> The court ... shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members (hereafter in this paragraph referred to as the "most adequate plaintiff") ....

*15 U.S.C. § 77z-1(a)(3)(B)(i).*

A rebuttable presumption directs the court's inquiry when appointing lead plaintiff under the PSLRA. The PSLRA provides that the most adequate plaintiff is the person or group of persons which:

> (aa) has either filed the complaint or made a motion in response to a notice ...;
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of *Rule 23 of the Federal Rules of Civil Procedure.*

*15 U.S.C. § 77z-1(a)(3)(B)(iii)(I).*

This presumption may be rebutted only upon proof offered by another member of the purported class "that the presumptively most adequate plaintiff -- [*6] (aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class." *15 U.S.C. § 77z-1(a)(3)(B)(iii)(II).*

### 1. Notification Requirement and Filing a Timely Motion

The PSLRA requires plaintiffs filing securities class actions to publish "in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class -- (I) of the pendency of the action, the claims asserted therein, and the purported class period ...." *15 U.S.C. § 77z-1(a)(3)(A)(i).* In addition, the notice must also advise members of the purported class that "not later than 60 days after the date on which the notice is published, any member ... may move the court to serve as lead plaintiff of the purported class." *15 U.S.C. § 77z-1(a)(3)(A)(i)(II).*

On June 25, 2003, Fitzgerald published a notice of pendency on the Internet Newswire, within 20 days of the filing of the Complaint, as required by *15 U.S.C. § 77z-1(a)(3)(A)(i).* [1] (Berstein Aff., Exh. [*7] A.) This notice informed members of the class that they had sixty days after publication to move for appointment as Lead Plaintiff. The sixty day period elapsed on Wednesday, August 24, 2003; no further complaints or motions for Lead Plaintiff status have been filed.

---

1 The PSLRA does not further define what type of publication is required by *15 U.S.C. § 77z-1(a)(3)(A)(i).* However, Internet Wire has been accepted as a proper publication. *See e.g., Taft v. Ackermans,* 2003 U.S. Dist. LEXIS 2486, 2003

Case 1:07-cv-03753-LAK    Document 21-5    Filed 07/10/2007    Page 4 of 5

Page 3
2004 U.S. Dist. LEXIS 5066, *

*WL 402789 at \*2 n. 4 (S.D.N.Y. 2003)* (publication over Internet Wire satisfies PSLRA).

2. Largest Financial Interest Requirement

During the proposed Class period, Fitzgerald purchased 50,999.567 Class B shares of three Smith Barney Funds for which she paid a total of $ 413,772.30. (Bernstein Aff. Ex. B.) No other putative class member or lead plaintiff has come forward to demonstrate a larger financial stake.

3. *Rule 23* Requirement

Under *Rule 23(a)*, a party may serve as a class representative only [\*8] if the following four prerequisites are met:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

*Fed.R.Civ.P.23(a)*

The *Rule 23* inquiry under *§ 77z-1(a)(3)(B)(iii)(I)(cc)* is less stringent than the inquiry the rule otherwise requires. *See In re Party City, 189 F.R.D. at 106* ("'[a] wide-ranging analysis under *Rule 23* is not appropriate [at this initial stage of the litigation] and should be left for consideration of a motion for class certification'" (quoting*Fischler v. Amsouth Bancorporation, 1997 U.S. Dist. LEXIS 2875, No. 96-1567-Civ-T-17A, 1997 WL 118429, at \*2 (M.D. Fla. Feb. 6, 1997)*)); *McKitty v. Advanced Tissue Sciences, Inc. (In re Advanced Tissue Sciences Sec. Litig.), 184 F.R.D. 346, 349 (S.D. Cal. 1998)* (same). Thus, at this stage in the litigation, a plaintiff need only make a "preliminary showing" that the Rule's typicality and adequacy requirements [\*9] have been satisfied. *In re Olsten Corp. Sec. Litig., 3 F. Supp. 2d 286 at 296*; *see also Weltz v. Lee, 199 F.R.D. 129, 2001 WL 228412, at \*5 (S.D.N.Y. 2001)*. Any preliminary class certification findings of adequacy and typicality made at this time do not preclude any party from contesting the ultimate class certification. *See Weltz, 199 F.R.D. 129, 2001 WL 228412, at \*5*; *see also Koppel v. 4987 Corp., 1999 U.S. Dist. LEXIS 12340, Nos. 96 Civ. 7570, 97 Civ. 1754, 1999 WL 608783, at \*8 (S.D.N.Y. Aug. 9, 1999)* (appointment as lead plaintiff "does not prejudice defendants' capacity to contest plaintiff's adequacy on a motion for class certification").

i. Typicality

The typicality requirement is satisfied when the claims of the proposed lead plaintiff "arise from the same conduct from which the other class members' claims and injuries arise." *In re Oxford Health Plans, 182 F.R.D. at 50* (citing *In re Drexel Burnham Lambert Group, Inc., 960 F.2d 285, 291 (2d Cir. 1992))*. The claims of the proposed lead plaintiff need not be identical to the claims alleged by other class members. [\*10] *In re Party City, 189 F.R.D. at 107*; *see also In re Nice Systems Sec. Litig., 188 F.R.D. 206, 218 (D.N.J. 1999)* (same).

Fitzgerald allegedly purchased over $ 400,000 Class B Fund shares during the class period, and was damaged by Defendants' allegedly false and misleading statements in the Fund prospectuses. (Compl. PP 14, 41, 58.) Accordingly, Fitzgerald is typical of putative plaintiffs who purchased more than $ 100,000 Class B shares. Again, no party has come forward to contest Fitzgerald's typicality; neither have Defendants opposed her motion. Accordingly, on the information currently available to the Court, Plaintiff satisfies the typicality requirement for purposes of the Lead Plaintiff inquiry.

ii. Adequacy

The adequacy requirement is satisfied if (1) the class counsel is qualified, experienced, and generally able to conduct the litigation; (2) the interests of the class members are not antagonistic to one another; and (3) the lead plaintiff has a sufficient interest in the outcome to ensure vigorous advocacy. *In re Olsten Corp., 3 F. Supp. 2d at 296* (citing *In re Drexel, 960 F.2d at 291*; *Lax v. First Merchants Acceptance Corp., 1997 U.S. Dist. LEXIS 11866, 1997 WL 461036, at \*6)* [\*11] .

At this stage of the proceedings, Fitzgerald also satisfies the adequacy requirement. The Memorandum of Law filed here suggests Court that Fitzgerald's counsel, Goodkind Labaton Rudoff & Sucharow LLP, is generally able to conduct the litigation. This conclusion is supported by the firm's resume. (Bernstein Aff. Ex. C) (indicating that Goodkind Labaton Rudoff & Sucharow LLP has significant experience and success in prosecuting securities class actions). This Court finds that Fitzgerald is an adequate Lead Plaintiff.

iii. Presumption of Adequacy Not Rebutted

The most adequate plaintiff presumption "may be rebutted only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff-- (aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class." *15 U.S.C. § 77z-1(a)(3)(B)(iii)(II)*. No member of the putative class has sought to rebut the presumption in this case. Accord-

ingly, Plaintiff Kathleen Fitzgerald is appointed Lead Plaintiff for this action.

C. Appointment of Lead Counsel

Plaintiff [*12] has selected the law firm Goodkind Labaton Rudoff & Sucharow LLP to serve as Lead Counsel. The PSLRA provides that "the most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." *15 U.S.C. § 77z-1(a)(3)(B)(v)*. "Giving the Lead Plaintiff primary control for the selection of counsel was a critical part of Congress' effort to transfer control of securities class actions from lawyers to investors." *Gluck v. CellStar Corp., 976 F. Supp. 542, 550 (N.D. Tex. 1997)*. Courts, however, may decline to approve Lead Plaintiff's suggested counsel "to protect the interests of the class." *15 U.S.C. § 77z-1(a)(3)(B)(iii)(II)(aa)*. As stated earlier, the Court finds Plaintiff's chosen counsel qualified to prosecute this securities class action. Accordingly, the Court approves the selection of Goodkind Labaton Rudoff & Sucharow LLP as Lead Counsel.

III. CONCLUSION

Having considered Plaintiff's Motion for Appointment of Lead Plaintiff and Lead Counsel pursuant to the *Exchange Act*,

IT IS HEREBY ORDERED THAT:

1. Plaintiff Kathleen Fitzgerald's Motion for Appointment as Lead Plaintiff [*13] is GRANTED.

2. Goodkind Labaton Rudoff & Sucharow LLP is appointed Lead Counsel.

3. Plaintiffs shall file a Consolidated Complaint within 45 days of the date of this Order.

4. Defendants shall move or answer within 45 days of the filing of the Amended Complaint.

SO ORDERED.

DATED: New York, New York

March *19*, 2004

DEBORAH A. BATTS

United States District Judge