**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re OPTIONABLE
SECURITIES LITIGATION

No. 07 Civ. 3753 (LAK)

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF**
**MONARCH CAPITAL FUND LTD. FOR APPOINTMENT AS LEAD PLAINTIFF**
**AND APPROVAL OF SELECTION OF LEAD COUNSEL**

Movant Monarch Capital Fund Ltd. ("Monarch") respectfully submits this memorandum of law in support of its motion to be appointed as lead plaintiff of a class of investors (the "Class") in the publicly traded securities of Optionable Inc. ("Optionable" or the "Company"), pursuant to Section 27(a)(3)(B) of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. §77z-1(a)(3)(B), and Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §78u-4(a)(3)(B), both as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), and for approval of its selection of the law firm of Gardy & Notis, LLP as lead counsel for the Class.

**INTRODUCTION**

Optionable is a Valhalla-based natural gas and energy derivatives trader that completed its IPO in May 2005, and then spent the next two years lying to investors about its operations and accounting and background of its CEO. Beginning in early May 2007, Optionbale could no longer manage the façade of legitimacy created by its falsehoods, and its stock price collapsed amid reports that it materially understated (by half) its dependence on a single major client that was leaving the Company; that outside

auditors had found material discrepancies between the stated portfolio value and market value of its natural gas options; and that it had failed to disclose that its CEO had multiple felony convictions for financial crimes and spent years in federal prison. Just one month earlier, however, the CEO and other Company insiders sold nearly $29 million in shares of Optionable common stock. Prior to the unraveling of the fraudulent scheme, Monarch was an institutional investor in Optionable shares at prices artificially inflated by defendants' false statements. With disclosure of the scheme and the collapse of the stock, Monarch has incurred approximately $863,000 in losses,[1] and now seeks to represent the Class as lead plaintiff.

## FACTUAL AND PROCEDURAL BACKGROUND

There are currently six substantially similar class action lawsuits pending in this court on behalf of proposed classes of individuals and entities that purchased Optionable securities between overlapping class periods between May 6, 2005 and May 11, 2007 (the "Class Period"), including securities traceable to Optionable's initial public offering.[2] By Orders dated June 20, 2007 (Doc. 13) and July 3, 2007 (Docs. 14 and 15), the actions have been or will be consolidated into the low-filed case, No. 07 Civ. 3753.

---

[1] A copy of the Monarch's lead plaintiff certification is attached to the Declaration of James S. Notis (the "Notis Decl.") as Exhibit A. This Certification sets forth Monarch's transactions in Optionable securities during the Class Period.

[2] The six actions are *Fleiss v. Optionable Inc.*, No. 07 Civ. 3753 (LAK), *Patel v. Optionable Inc.*, No. 07 Civ. 3845 (LAK), *Peters v. Optionable Inc.*, No. 07 Civ. 3877 (LAK), *Manowitz v. Optionable Inc.*, No. 07 Civ. 3884 (LAK), *Glaubach v. Optionable Inc.*, No. 07 Civ. 4085 (LAK) and *Bock v. Optionable Inc.*, No. 07 Civ. 5948 (UA).

Although there are slight variations in the legal claims asserted,[3] all of the actions essentially allege the same scheme that inflated the price of Optionable securities.

First, Optionable misrepresented its heavy reliance on a single customer, the Bank of Montreal ("BMO").  Throughout the Class Period, Optionable told shareholders that BMO's account represented between 10% and 30% of the Company's revenues, when, in fact, the Company's transactions for BMO represented up to 60% of its total revenues, and a whopping 86% of the Company's brokerage fees, such that Optionable was far more dependent on BMO's business than it told shareholders.

Second, Optionable had been conducting a false pricing scheme with the BMO trader responsible for so much of Optionable's business,[4] whereby Optionable provided false pricing information to BMO that vastly overstated the value of BMO's trading position, enabling BMO to hide huge losses in the account.  BMO has since gone public, disclosed the losses and Optionable's pricing "irregularities," and suspended trading through Optionable.

Third, Optionable failed to disclose the material fact that its CEO, Kevin Cassidy, had multiple felony convictions for financial crimes, including a 30-month sentence for

---

[3]    For instance, the *Patel* and *Manowitz* actions list a class period beginning on May 6, 2005, the class period in the *Peters* action begins on May 9, 2005 (dates roughly corresponding to the IPO), and the *Glaubach* and *Bock* actions begin the class period on September 27, 2005 (when the shares first traded on the over-the-counter market).  In addition, all cases other than *Fleiss* assert fraud-based purchaser claims under Section 10(b) the Exchange Act, 15 U.S.C. §78j(b), whereas *Fleiss* only asserts strict liability claims under Section 11 of the Securities Act, 15 U.S.C. §77k, for purchases of shares traceable to the IPO.  (Mr. Fleiss, however, did purchase in the IPO.)

[4]    The BMO trader, David Lee, is reported to have a close personal relationship with Optionable CEO Kevin Cassidy and other senior management of the Company.  BMO has since placed Lee on a leave of absence.

3

credit card fraud in 1997 and a six month sentence for tax evasion in 1993. Amazingly, the Company was specifically notified of Cassidy's criminal past by another director (who resigned upon learning it), but took no action to disclose it to shareholders.

Cassidy and the other founders of the Company (Edward O'Connor and Mark Nordlict) capitalized on their fraudulent scheme by selling approximately 10.8 million shares of their personal holdings in Optionable for nearly $29 million during the Class Period. After the scheme unraveled at the end of the Class Period, Optionable common stock collapsed. The stock now trades at roughly $0.35 per share, down from a Class Period high of over $8.62 per share in February 2007.

## ARGUMENT

### I.    MONARCH SHOULD BE APPOINTED LEAD PLAINTIFF

#### A.    The Procedure Required Under the PSLRA

The Securities Act and the Exchange Act, each as amended by the PSLRA,[5] set forth procedures for the appointment of lead plaintiffs to oversee class actions brought under those titles.

First, within 20 days after the date on which a class action is filed, the plaintiff or plaintiffs shall cause to be published, in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class: (i) of the pendency of the action, the claims asserted therein, and the purported class period; and (ii) that, not later than 60 days after the date on which the

---

[5]    The *Fleiss* action asserts claims under the Securities Act and the remaining cases assert claims under the Exchange Act, such that Monarch is moving for lead plaintiff under both titles. As described herein, the relevant lead plaintiff provisions of the Securities Act and the Exchange Act are identical.

notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class. 15 U.S.C. §77z-1(a)(3)(A)(i); 15 U.S.C. §78u-4(a)(3)(A)(i). Here, following the filing of the *Fleiss* action, counsel for that plaintiff issued a press release on May 11, 2007, advising the public of the pendency of that action and the July 10, 2007 deadline to move for lead plaintiff. *See* Notis Decl. Ex. B.

Second, the Court shall consider any motion made by any plaintiff or any class member and shall appoint as lead plaintiff the member or members of the class that the Court determines to be most capable of adequately representing the interests of class members. 15 U.S.C. §77z-1(a)(3)(B); 15 U.S.C. §78u-4(a)(3)(B). In determining the "most adequate plaintiff," the PSLRA provides that:

> the court shall adopt a presumption that the most adequate plaintiff in any private action arising under this Act is the person or group of persons that—
>
> (aa)    has either filed the complaint or made a motion in response to a notice...
>
> (bb)    in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc)    otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. §77z-1(a)(3)(B)(iii); 15 U.S.C. §78u-4(a)(3)(B)(iii).

### B.    Monarch Is the Presumptive Lead Plaintiff

Monarch is a member of the Class, has timely moved for appointment of lead plaintiff, satisfies the requirements of Rule 23, is believed to have a larger financial interest than any other plaintiff or proposed lead plaintiff, and, as an institutional investor, is well-suited to prosecute this action on behalf of the Class.

When Monarch first purchased the Company's stock, shares of Optionable were trading in the high $5-range. Since then, Optionable shares have collapsed and now trade at just $0.35 per share. In total, Monarch's estimated losses amount to approximately $863,000, a substantial loss for which Monarch is highly motivated to represent the Class. *See* Notis Decl. Ex. A (listing all of Monarch's trading in Optionable securities). Monarch also readily satisifies the requirements of Rule 23.[6] As set forth in its lead plaintiff certifications, Monarch has affirmed its understanding of the duties owed to the class and has expressed a commitment to oversee the prosecution of this case in the best interests of the Class. Monarch's interests are the same as other Class members, and there are no facts which indicate any conflicts of interest with any other members of the Class. Indeed, the events and course of conduct that give rise to Monarch's claims are the same as those that give rise to the claims of the Class.

## II.    MONARCH'S SELECTION OF LEAD COUNSEL SHOULD BE APPROVED

The Court should approve Monarch's choice of the law firm of Gardy & Notis, LLP ("Gardy & Notis") to serve as lead counsel. The PSRLA provides that the lead plaintiff select and retain lead counsel to represent the Class, subject to the Court's approval. 15 U.S.C. §77z-1(a)(3)(B)(v), 15 U.S.C. §78u-4(a)(3)(B)(v). Gardy & Notis is an experienced and highly qualified firm and is more than able to serve as lead counsel,

---

[6]    The adequacy and typicality requirements of Rule 23 are the provisions of Rule 23 relevant to the determination of lead plaintiffs under the PSLRA. *See, e.g., Weinberg v. Atlas Air Worldwide Holdings, Inc.,* 216 F.R.D. 248, 252-53 (S.D.N.Y. 2003).

having been appointed lead counsel in similar actions in this and other courts.[7] Accordingly, the Court should approve Monarch's selection of Gardy & Notis as lead counsel for the Class.

## CONCLUSION

For the foregoing reasons and as set forth in the accompanying notice of motion and declaration of James S. Notis and based on all prior pleadings and proceedings herein, Monarch Capital Fund Ltd. respectfully requests appointment as lead plaintiff and approval of its selection of Gardy & Notis, LLP as lead counsel for the class, along with such other and further relief as the Court may deem just and proper.

Dated: July 10, 2007

Respectfully submitted,

GARDY & NOTIS, LLP

By:    s/ James S. Notis
        James S. Notis (JN-4189)
440 Sylvan Avenue, Suite 110
Englewood Cliffs, New Jersey 07632
Tel: 201-567-7377
Fax: 201-567-7337

*Attorneys for Movant*
*Monarch Capital Fund Ltd.*

---

[7] For instance, Gardy & Notis was recently appointed co-lead counsel by Judge Sprizzo in *In Re Sears Holdings Corporation Securities Litigation*, No. 06 Civ. 4053 (SDNY) (JES). A copy of the firm resume of Gardy & Notis is attached as Exhibit C to the Notis Decl.

## CERTIFICATE OF SERVICE

Notice of this filing will be sent to all counsel of record by operation of the Court's electronic filing system as follows:

Kim Elaine Miller
Email: kimmiller225@yahoo.com
KAHN GAUTHIER SWICK, LLC

*Counsel for plaintiff Alexander Fleiss*

Ronen Sarraf
Email: ronen@sarrafgentile.com
SARRAF GENTILE, LLP

*Counsel for plaintiff Jagdish Patel*

Evan J Smith
Email: esmith@brodsky-smith.com
BRODSKY & SMITH, L.L.C.

*Counsel for plaintiff Edward Peters*

Jeffrey Philip Campisi
Email: jcampisi@kaplanfox.com
KAPLAN FOX & KILSHEIMER LLP

*Counsel for plaintiff Gerald Manowitz*

Catherine A. Torell
Email: ctorell@cmht.com
Steven Jeffrey Toll
Email: stoll@cmht.com
COHEN, MILSTEIN, HAUSFELD &
TOLL, P.L.L.C.

*Counsel for plaintiff Stanley T. Bock*

Jack Gerald Fruchter
Email: JFruchter@FruchterTwersky.com
ABRAHAM FRUCHTER & TWERSKY
LLP

David Avi Rosenfeld
Email: drosenfeld@lerachlaw.com
Mario Alba, Jr.
Email: malba@lerachlaw.com
Samuel Howard Rudman
Email: srudman@lerachlaw.com
LERACH, COUGHLIN, STOIA,
GELLER, RUDMAN & ROBBINS, LLP

*Counsel for plaintiff Jonathan Glaubach*

Christine Schessler Poscablo
Email: CSPoscablo@kelleydrye.com
Kevin James Smith
Email: ksmith@kelleydrye.com
Mark Scott Gregory
Email: mgregory@kelleydrye.com
Thomas Benjamin Kinzler
Email: tkinzler@kelleydrye.com
KELLEY DRYE & WARREN, LLP

*Counsel for defendant Optionable Inc.*

Lawrence Robert Gelber
Email: gelberlaw@aol.com

*Counsel for defendant Kevin Cassidy*

Peter Joseph Pizzi
Email: ppizzi@connellfoley.com
CONNELL FOLEY LLP

*Counsel for defendant Albert Hemig*

In addition, on July 10, 2007, a true and correct copy of the foregoing was served by First Class U.S. Mail to non-ECF-listed counsel of record as follows:

Lewis Stephen Kahn
Kahn, Gauthier Law Group, L.L.C.
650 Poydras Street, Suite 2150
New Orleans, Louisiana 70130

*Counsel for plaintiff Alexander Fleiss*

Frederick S. Fox
Donald R. Hall
Kaplan, Fox & Kilsheimer LLP
805 Third Avenue, 22nd Floor
New York, New York 10022

*Counsel for plaintiff Gerald Manowitz*

s/ James S. Notis
James S. Notis (JN 4189)
GARDY & NOTIS, LLP
440 Sylvan Avenue, Suite 110
Englewood Cliffs, New Jersey 07632
Tel: 201-567-7377
Fax: 201-567-7337

2