**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re OPTIONABLE SECURITIES LITIGATION | ) ) ) ) ) ) DOCKET NUMBER: 07-cv-3753-LAK ) ) ) HON. LEWIS A. KAPLAN ) ) ) ) ) ) ) ) |

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF KLD INVESTMENT MANAGEMENT, LLC TO CONSOLIDATE RELATED ACTIONS; TO BE APPOINTED LEAD PLAINTIFF; AND TO APPROVE PROPOSED LEAD PLAINTIFF'S CHOICE OF COUNSEL**

**PRELIMINARY STATEMENT**

KLD Investment Management, LLC ("KLD" or "Movant") hereby moves to consolidate all future related securities fraud class actions filed against Optionable, Inc.[1] ("Optionable" or the "Company") and other defendants, to be appointed Lead Plaintiff in this action pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B) and Section 27(a)(3)(B) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. § 77z-1(a)(3)(B), as amended by Section 101(a) of the Private Securities Litigation Reform Act of 1995 ("PLSRA"), and for approval of its selection of the law firm of Kahn Gauthier Swick, LLC ("KGS") as Lead Counsel for the Class in this action.

KLD fully understands its duties and responsibilities to the Class, and is willing and able to oversee the vigorous prosecution of this action. As described in the Certification attached to the Declaration of Kim E. Miller in Support of the Motion of KLD Investment Management, LLC to Consolidate All Related Actions, To Be Appointed Lead Plaintiff, and To Approve Proposed Lead Plaintiff's Choice of Counsel ("Miller Decl.") at Exhibit A, KLD has suffered losses of $3,752,667.30 as a result of its purchase of 1,299,000 shares of Optionable common stock on the open market (expending $4,298,247.30) prior to May 14, 2007[2]. To the best of its knowledge, KLD has sustained the largest loss of any investor seeking to be appointed as Lead Plaintiff.

---

[1] The consolidated securities fraud class actions include the following cases: *Alexander Fleiss v. Optionable, Inc., et al.*, 07-3753 (filed May 11, 2007); *Robert Rastocky v. Optionable, Inc., et al.*, 07-3755 (filed May 11, 2007 and voluntarily dismissed May 24, 2007); *Jagish Patel v. Optionable, Inc., et al.*, 07-930 (filed May 18, 2007); *Edward Peters v. Optionable, Inc., et al.*, 07-3877 (filed May 17, 2007); *Gerald Manowitz v. Optionable, Inc., et al.*, 07-3884 (filed May 17, 2007); *and Jonathan Glaubach v. Optionable, Inc., et al.*, 07-4085 (filed May 24, 2007). In addition, the case of *Stanley T. Bock v. Optionable, Inc., et al.*, 07-5948 (filed June 22, 2007), has been related to the consolidated cases, but has not yet been consolidated with this matter.

[2] Several different Class Periods are asserted in the multiple complaints filed in this Court, ranging from the earliest inception of the Class Period on May 6, 2005 in the *Patel*, *Manowitz* and *Rastocky* actions, through September 27, 2005 in the *Glaubach* and *Bock* actions, and ending at the latest on May 14, 2007, in the *Glaubach* and *Bock* actions. Irrespective of whichever Class Period is chosen for purposes of the lead plaintiff analysis, KLD's purchases of Optionable shares occurred within every Class Period asserted.

In addition to evidencing the largest financial interest in the outcome of this litigation, KLD's Certification demonstrates its intent to serve as Lead Plaintiff in this litigation, including its cognizance of the duties of serving in that role.[3]  Moreover, KLD satisfies both the applicable requirements of the PSLRA and Rule 23 of the Federal Rules of Civil Procedure ("Rule 23") and is presumptively the "most adequate plaintiff."

Accordingly, KLD respectfully submits this memorandum of law in support of its motion, pursuant to Section 21D(a)(3)(B) of the Exchange Act, 15 U.S.C. § 78u-4(a)(3)(B) and Section 27(a)(3)(B) of the Securities Act, 15 U.S.C. § 77z-1(a)(3)(B), as amended by the PSLRA, for an order: (1) consolidating all future related actions concerning the subject matters of this action pursuant to Fed. R. Civ. P. 42(a); (2) appointing KLD as Lead Plaintiff in this action pursuant to the Securities Act and the Exchange Act; and (3) approving Movant's selection of the law firm of KGS as Lead Counsel for the Class.

## PROCEDURAL BACKGROUND

The first lawsuit against defendants, *Fleiss v. Optionable, Inc., et al.*, No. 07-cv-3753, was filed on behalf of plaintiff Alexander Fleiss, in the United States District Court for the Southern District of New York on May 11, 2007.  Pursuant to 15 U.S.C. § 78u-4(a)(3)(A)(i) and 15 U.S.C. § 77z-1(a)(3)(A)(i), on May 11, 2007, the first notice that a class action had been initiated against Defendants was published on *Market Wire*, a widely-circulated national business-oriented wire service, advising members of the proposed Class of their right to move the Court to serve as Lead Plaintiff no later than July 10, 2007.  *See* Miller Decl. at Exhibit B.

---

[3] The relevant federal securities laws specifically authorize any Class Member seeking to be appointed Lead Plaintiff to either file a complaint or move for appointment as Lead Plaintiff.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii) and 15 U.S.C. § 77z-1(a)(3)(B)(iii).  A copy of KLD's Certification of its transactions in Optionable securities during the Class Period is attached as Exhibit A to the Miller Declaration that has been filed in support of this motion.

Movant is a Class Member (*see* Miller Decl. at Exhibit A) who has timely filed this motion within the 60 day period following publication of the May 11, 2007 notice.

## STATEMENT OF FACTS[4]

Defendant Optionable describes itself as a "leading provider of natural gas and other energy derivatives trading and brokerage services, headquartered in Valhalla, NY. The Company provides its services to brokerage firms, financial institutions, energy traders and hedge funds nationwide. In addition to the traditional voice brokerage business, Optionable developed an automated derivatives trading platform. OPEX is a real-time electronic trade matching brokerage system designed to improve liquidity and transparency in the energy derivatives market."

On May 9, 2005, Optionable filed with the SEC a Form 424B3 Prospectus (the "Prospectus") for the IPO. On that date, the Company registered 30,131,026 shares and 1,300,000 shares underlying outstanding common stock purchase warrants. All of the shares were offered by certain of the Company's stockholders and warrant holders, including the Individual Defendants. With regard to its customer concentration, the Prospectus represented, in pertinent part, as follows:

> One of our customers, Bank of Montreal, accounted for approximately 10% of our revenues during 2004. Two of our customers, Bank of Montreal and Coral Energy Holding, L.P., accounted for approximately 17% and 10% respectively, of our revenues during 2003.

BMO Financial Group ("BMO"), also known as Bank of Montreal, increased its business with Optionable when prices in natural gas rose following Hurricane Katrina in August 2005.

---

[4] These facts were derived from the allegations contained in the class actions styled as *Alexander Fleiss v. Optionable, Inc., et al.*, 07-cv-3753 (filed May 11, 2007) and *Jonathan Glaubach v. Optionable, Inc., et al.*, No. 07-cv-4085 (filed May 24, 2007).

Throughout the Company's history, Optionable understated its dependence on BMO. In its latest quarterly report, Optionable stated that BMO accounted for approximately 30% of its revenues during the three-month period ended March 31, 2007. Optionable is the so-called "middle-man" in the energy trading options business. In other words, it matches buyers with sellers and makes money by charging a commission to both parties. Therefore, since BMO was on one side of the transaction, BMO actually accounted for approximately 60% of the Company's potential revenue. Moreover, the Company failed to tell investors that its business with BMO was tied intimately to David Lee ("Lee"), a natural gas trader at BMO. Unbeknownst to investors, Lee had a close personal relationship with executives at Optionable, including Defendant Kevin Cassidy ("Cassidy"). According to reports, Lee's trading alone in the first quarter of 2007 amounted to $2.73 million, or 30% of Optionable's revenue.

On April 27, 2007, when BMO announced that its mark-to-market commodity trading losses were estimated to be between $350 million and $450 million (pre-tax) in the second quarter of 2007, shares of the Company's stock fell $1.45 per share, or almost 21%, to close at $5.56 per share after investors recognized that BMO accounted for at least 24% of the Company's revenues in 2006.

On May 8, 2007, when BMO announced that it was suspending all of its business relationships with Optionable pending the results of a full external review and placed Lee and Bob Moore, executive managing director of commodity products at BMO, on leaves of absence, the price of Optionable stock declined precipitously, falling from $4.64 per share to $2.81 per share—a decline of approximately 40%--on heavy trading volume. According to reports, BMO contributed its mark-to-market commodity trading losses to bad trading strategies employed by

Lee. Moreover, BMO was concerned with the quality of valuations provided by Optionable to BMO and Lee being able to do all of his business through one broker.

Shares of the Company's stock continued to decline as investors learned that: (i) NYMEX Holdings, Inc. ("NYMEX") had resigned its board representation of Optionable; (ii) Defendant Cassidy had resigned; and (iii) Defendant Cassidy served time in prison for a felony conviction on credit card fraud in 1997 and for income tax evasion in 1993.

Prior to disclosing these adverse facts, Defendants Cassidy, Edward J. O'Connor and Mark Nordlicht were able to sell 10,758,886 shares of their personally-held Optionable stock to NYMEX for gross proceeds in excess of $28 million.

## ARGUMENT

### I. THE COURT SHOULD CONSOLIDATE THE RELATED ACTIONS

Consolidation pursuant to Rule 42(a) is proper and routinely granted in actions such as this, where there are common questions of law and fact.[5] See *Yousefi v. Lockheed Martin Corp.*, 70 F. Supp. 2d 1061, 1064 (C.D. Cal. 1999).[6] Courts have recognized that securities class actions, in particular, are ideally suited for consolidation pursuant to Rule 42(a) because their unification expedites pretrial proceedings, reduces case duplication, avoids contacting of the parties and witnesses for inquiries in multiple proceedings, and minimizes the expenditure of

---

[5] Here, the first filed case (*Fleiss v. Optionable, Inc., et al.*) pleaded violations of the Securities Act of 1933, while the remaining related cases pleaded violations of the Securities Exchange Act of 1934. The majority of the related actions currently pending before this Court have been consolidated, however the action titled *Stanley T. Bock v. Optionable, Inc., et al.*, 07-5948 (filed June 22, 2007), which has been related to the consolidated cases, has not yet been consolidated with this action. Furthermore, if additional securities cases are filed alleging the same course of conduct and similar or identical claims against the same or similar defendants, consolidation would be proper. *See* Rule 42(a).

[6] Rule 42(a) of the Federal Rules of Civil Procedure allows this Court to order consolidation of separate actions:
> When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all of the matters in issue in the actions; it may order all of the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs of delay.

time and money by all persons concerned. See e.g., *Primavera Familienstiftung v. Askin*, 173 F.R.D. 115, 129 (S.D.N.Y. 1997). Indeed, "[i]n securities actions where the complaints are based on the same 'public statements and reports,' consolidation is appropriate if there are common questions of law and fact" and the parties will not be prejudiced. *Garber v. Randell*, 477 F.2d 711, 714 (2d Cir. 1973); *Weltz v. Lee*, 199 F.R.D. 129, 131 (S.D.N.Y. 2001). Consolidating shareholder class actions streamlines and simplifies pre-trial and discovery proceedings, including motions, class action issues, clerical and administrative duties, and generally reduces the confusion and delay that result from prosecuting related actions separately before two or more judges. *Id*. See also *In re Olsten Corp. Securities Litigation*, 3 F.Supp.2d 286 (E.D.N.Y. 1998).

Accordingly, this Court should enter an Order that consolidates any future filed cases with the instant action.

## II.    KLD SHOULD BE APPOINTED LEAD PLAINTIFF

### A.    The Procedural Requirements Pursuant to the PSLRA

The PSLRA sets forth a detailed procedure for the selection of a Lead Plaintiff to oversee securities class actions brought pursuant to the Federal Rules of Civil Procedure. *See* 15 U.S.C. § 78u-4(a)(3) and 15 U.S.C. § 77z-1(a)(3).

First, the plaintiff who files the initial action must, within 20 days of filing the action, publish a notice to the Class informing Class Members of their right to file a motion for appointment as Lead Plaintiff. 15 U.S.C. § 78u-4(a)(3)(A)(i) and 15 U.S.C. § 77z-1(a)(3)(A)(i). Plaintiff in the first-filed action published a notice on *Market Wire* on May 11, 2007. *See* Miller Decl. Exhibit B.[7]  This notice indicated that applications for appointment as Lead Plaintiff were

---

[7] *Market Wire* is a suitable vehicle for meeting the statutory requirement that notice be published "in a widely circulated national business-oriented publication or wire service." *See Pirelli Armstrong Tire Corp. Retiree Med.*

to be made no later than July 10, 2007. Within 60 days after publication of the required notice, any member or members of the proposed Class may apply to the Court to be appointed as Lead Plaintiff, whether or not they have previously filed a complaint in this action. 15 U.S.C. § 78u-4(a)(3)(A) and (B) and 15 U.S.C. § 77z-1(a)(3)(A) and (B).

Next, according to the PSLRA, within 90 days after publication of the initial notice of pendency of the action, the Court shall appoint as Lead Plaintiff the movant that the Court determines to be the most capable of adequately representing the interests of Class Members. 15 U.S.C. § 78u-4(a)(3)(B)(i) and 15 U.S.C. § 77z-1(a)(3)(B)(i). In determining who is the "most adequate plaintiff," the acts provide that:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this title is the person or group of persons that—
>
> (aa) has either filed the complaint or made a motion in response to a notice…
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure [pertaining to class actions].

15 U.S.C. § 78u-4(a)(3)(B)(iii) and 15 U.S.C. § 77z-1(a)(3)(B)(iii). *See In re Oxford Health Plans, Inc., Sec. Litig.*, 182 F.R.D. 42, 43-44 (S.D.N.Y. 1998); *Sofran v. Labranche & Co.*, 220 F.R.D. 398, 401 (S.D.N.Y. 2004).

---

*Benefits Trust v. LaBranche & Co.*, No. 02-cv-8264, 2004 U.S. Dist. LEXIS 9571, at *20 (S.D.N.Y. May 27, 2004); *Greebel v. FTP Software, Inc.*, 939 F. Supp. 57, 62-64 (D. Mass. 1996); *Lax v. First Merchs. Acceptance Corp.*, No. 97-cv-2715, 1997 U.S. Dist. LEXIS 11866, at *2 (N.D. Ill. August 6, 1997).

### B.      KLD Is "The Most Adequate Plaintiff"

#### 1.      KLD Has Complied With the PLSRA and Should Be Appointed Lead Plaintiff

KLD moves this Court to be appointed Lead Plaintiff and has timely filed the instant motion to be appointed Lead Plaintiff within the 60-day time period requirement. The plaintiff in the first-filed action published notice on *Market Wire*, a national business-oriented wire service, on May 11, 2007. Accordingly, KLD meets the requirement of 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa) and 15 U.S.C. § 77z-1(a)(3)(B)(iii)(aa), and has filed its motion by July 10, 2007.

Moreover, KLD has sustained a substantial loss from its investment in Optionable stock and has shown its willingness to represent the Class by signing a Certification detailing its Optionable transaction information during the Class Period. *See* Miller Decl. Exhibit A. As demonstrated by its Certification, KLD is prepared to consult with counsel on a regular basis, prior to every major litigation event, and direct the course of litigation, with the benefit of counsel's advice. In addition, KLD has selected and retained highly competent counsel with significant experience in class action and securities litigation to represent the Class. The firm biography of proposed Lead Counsel, KGS, is attached as Exhibit C to the Miller Declaration.

#### 2.      KLD Has the Largest Financial Interest

Pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(iii) and 15 U.S.C. § 77z-1(a)(3)(B)(iii), the Court shall appoint as Lead Plaintiff the movant or movants who have the largest financial interest in the relief sought by the action. *See Sofran*, 220 F.R.D. at 401; *see also, Lee v. Axonyx, Inc., et al.*, No. 7:05-cv-2307, slip. Op., at pg. 8 (S.D.N.Y. Jan. 27, 2006) (Griesa, J.) (appointing movant with the largest financial interest). As demonstrated herein, KLD (with losses of

$3,752,667.30) has the largest known financial interest in the relief sought by the Class. *See* Miller Decl. Exhibit A.

### 3. KLD Satisfies the Requirements of Rule 23

According to 15 U.S.C. § 78u-4(a)(3)(B) and 15 U.S.C. § 77z-1(a)(3)(B), in addition to possessing the largest financial interest in the outcome of the litigation, the Lead Plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) provides that a party may serve as a class representative if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

Of the four prerequisites to class certification, only two—typicality and adequacy—directly address the personal characteristics of the class representative. Consequently, in deciding a motion to serve as Lead Plaintiff, the Court should limit its inquiry to the typicality and adequacy prongs of Rule 23(a), and defer examination of the remaining requirements until the Lead Plaintiff moves for class certification. *See Oxford Health*, 182 F.R.D. at 49 (holding that typicality and adequacy are the only relevant prerequisites to lead plaintiff selection under the PSLRA); *See also, Sczensy Trust v. DiCamillo*, 223 F.R.D. 319, 323-24 (S.D.N.Y. 2004); *Weinberg v. Atlas Air Worldwide Holdings, Inc.*, 216 F.R.D. 248, 252 (S.D.N.Y. 2003), citing *In re Party City*, 189 F.R.D. at 106 ("In fact, a 'wide ranging analysis under Rule 23 is not appropriate [at this initial stage of the litigation] and should be left for consideration of a motion for class certification."). As detailed below, KLD satisfies both the typicality and adequacy

requirements of Rule 23, thereby justifying its appointment as Lead Plaintiff. KLD has claims that are typical of those of other Class Members and can adequately serve as Lead Plaintiff.

### i. KLD's Claims Are Typical of the Claims of All the Class Members

Under Rule 23(a)(3), typicality exists where "the claims…of the representative parties" are "typical of the claims…of the class." The typicality requirement of Rule 23(a)(3) is satisfied when the representative plaintiff's claims arise from the same event or course of conduct that gives rise to claims of other Class Members, and when the claims are based on the same legal theory. *See Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d Cir. 1986). The requirement that the proposed class representatives' claims be typical of the claims of the Class does not mean, however, that the claims must be identical. *See Daniels v. City of N.Y.*, 198 F.R.D. 409, 418 (S.D.N.Y. 2001), citing *Wilder v. Bernstein*, 499 F. Supp. 980, 922 (S.D.N.Y. 1980); *see also, Ferrari v. Impath*, No. 03-cv-5667, 2004 U.S. Dist. LEXIS 13898, at *18 (S.D.N.Y. July 15, 2004).

In this case, the typicality requirement is met because KLD's claims are identical, non-competing and non-conflicting with the claims of the other Class Members. KLD and all of the Class Members purchased Optionable securities during the Class Period when the stock prices were artificially inflated as a result of the Defendants' misrepresentations and omissions, and thus, both KLD and the Class Members suffered damages as a result of these purchases. Simply put, KLD, like all other Class Members: (1) purchased Optionable stock during the Class Period; (2) purchased Optionable stock at artificially-inflated prices as a result of defendants' misrepresentations and omissions; and (3) suffered damages thereby. KLD's claims and injuries "arise from the same conduct from which the other class members' claims and injuries arise." *Oxford Health*, 182 F.R.D. at 50. Moreover, KLD is not subject to any unique or special

defenses. Thus, KLD meets the typicality requirement of Fed. R. Civ. P. Rule 23 because its claims are the same as the claims of the other Class Members.

### ii.     KLD Will Adequately Represent the Class

Under Rule 23(a)(4), the representative party must "fairly and adequately protect the interests of the class." The PSLRA directs the Court to limit its inquiry regarding the adequacy of the Movant to: (1) whether there are any conflicts between the interests of the Movant and the members of the Class; (2) whether the Movant is an adequate representative of the Class; (3) whether the interests of the Movant are clearly aligned with the members of the putative Class; and (4) whether there is evidence of any antagonism between their respective interests. 15 U.S.C. § 78u-4(a)(3)(B) and 15 U.S.C. § 77z-1(a)(3)(B).

KLD's interests are clearly aligned with the members of the Class because its claims are identical to the claims of the Class. There is no evidence of antagonism between its interests and those of the proposed Class Members. Furthermore, KLD has a significant, compelling interest in prosecuting this action to a successful conclusion based upon the very large financial loss it incurred as a result of the wrongful conduct alleged herein. This motivation, combined with KLD's identical interest with the members of the Class, clearly shows that KLD will adequately and vigorously pursue the interests of the Class. In addition, KLD has selected a law firm that is highly experienced in prosecuting securities class actions such as this one to represent him.

In sum, because of KLD's common interests with the Class Members, its clear motivation and ability to vigorously pursue this action, and its competent counsel, the adequacy requirement of Fed. R. Civ. P. Rule 23(a) is met in this case. Therefore, since KLD not only meets both the typicality and adequacy requirements of Fed. R. Civ. P. Rule 23(a), and has sustained the largest amount of losses at the hands of the Defendants, it is, in accordance with 15

U.S.C. § 78u-4(a)(3)(B)(iii)(I) and 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I), presumptively the most adequate plaintiff to lead this action.

### III. THE COURT SHOULD APPROVE KLD'S CHOICE OF LEAD COUNSEL

The PSLRA vests authority in the Lead Plaintiff to select and retain counsel to represent the Class, subject to the Court's approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v) and 15 U.S.C. § 77z-1(a)(3)(B)(v). Thus, this Court should not disturb the Lead Plaintiff's choice of counsel unless necessary to "protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa) and 15 U.S.C. § 77z-1(a)(3)(B)(iii)(II)(aa).

KLD has selected KGS, to serve as Lead Counsel for the Class. This firm has not only prosecuted complex securities fraud actions, but has also successfully prosecuted many other types of complex class actions. *See* Miller Decl. Exhibit C. Furthermore, KLD's counsel has continually invested time and resources in carefully investigating and prosecuting this case. This Court may be assured that in the event this motion is granted, the members of the Class will receive the highest caliber of legal representation.

### CONCLUSION

For all of the foregoing reasons, KLD respectfully requests that this Court: (1) consolidate all future related actions, (2) appoint KLD to serve as Lead Plaintiff in this consolidated action; (3) approve KLD's selection of Lead Counsel for the Class; and (4) grant such other and further relief as the Court may deem just and proper.

Dated: July 10, 2007                                  Respectfully submitted,

                                                      KAHN GAUTHIER SWICK, LLC

                                                      /s/ Kim E. Miller
                                                      Michael A. Swick  (MS-9970)
                                                      Kim E. Miller  (KM-9669)

12 East 41st Street, 12th Floor
New York, NY 10017
Telephone:   (212) 696-3730
Facsimile:    (504) 455-1498

And

KAHN GAUTHIER SWICK, LLC
Lewis S. Kahn
650 Poydras St., Suite 2150
New Orleans, Louisiana 70130
Telephone (504) 455-1400
Facsimile: (504) 455-1498

*Counsel for KLD and Proposed Lead Counsel for the Class*

**CERTIFICATE OF SERVICE**

      I hereby certify that this Motion was filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and paper copies will be sent to those indicated as non-registered participants on July 10, 2007.

                                                /s/ Kim E. Miller____
                                                Kim E. Miller