UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In re OPTIONABLE SECURITIES
LITIGATION

No. 07 Civ. 3753 (LAK)

**MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE MOTION OF RAMESH M. SINGA FOR APPOINTMENT AS LEAD PLAINTIFF AND IN OPPOSITION TO THE COMPETING MOTIONS OF MARC A. HEMBROUGH, DORIS LEE HO, MONARCH CAPITAL FUND LTD., KLD INVESTMENT MANAGEMENT, LLC, AND THE VLK GROUP**

## I.   INTRODUCTION

Ramesh M. Singa ("Singa") respectfully submits this memorandum of law in further support of his motion for appointment as lead plaintiff and appointment of lead counsel, and in opposition to the competing motions of Marc A. Hembrough, Doris Lee Ho, Monarch Capital Fund Ltd., KLD Investment Management, LLC, and the VLK Group.[1] Singa seeks to represent himself and all others similarly situated who, between September 27, 2005 and May 14, 2007, inclusive (the "Class Period"), purchased or otherwise acquired securities of Optionable Inc. ("Optionable" or the "Company"). He has chosen the law firm of Cohen, Milstein, Hausfeld & Toll, P.L.L.C. ("Cohen Milstein") to represent him and to serve as lead counsel.

As outlined below, the VLK Group cannot adequately represent the class and its motion should be denied. Of the remaining movants – unless the Court disqualifies the two institutions (Monarch and KLD) because of questions about their typicality or adequacy and appoints the movant with the next largest financial interest and no disabling impediment as sole lead

---

[1] On July 17, 2007, Movant Scott Waldman withdrew his motion for appointment as lead plaintiff, which the Court endorsed on July 23, 2007 (Docket Entry Nos. 45 and 46). On July 27, 2007, the Patel and Desai Groups likewise withdrew their motions for appointment as lead plaintiff (Docket Entry Nos. 47 and 48).

plaintiff – both an institution (either Monarch or KLD) and an individual should be appointed as co-lead plaintiffs in order to adequately protect the diverse interests of Class members. Because Movant Doris Lee Ho, an individual movant with a somewhat higher loss than Singa,[2] has chosen counsel which is not qualified to serve as lead counsel, individual Movant Singa and his counsel, Cohen Milstein, should be approved by the Court to represent the Class, either as sole lead plaintiff or co-lead plaintiff.

## II. ARGUMENT

### A. The Legal Requirements Under the PSLRA

The PSLRA sets forth procedures for the selection of a lead plaintiff in class actions brought under the Securities Act or Exchange Act. 15 U.S.C. § 78u-4(a)(1). The PSLRA requires the court to consider all motions made by purported class members seeking appointment and to determine the "member *or members* of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i) (emphasis added).

In determining the motion, the Court must adopt a presumption that the most adequate plaintiff is the person or group of persons who "has the largest financial interest in the relief sought by the class" and who otherwise satisfies the requirements of Fed. R. Civ. P. 23. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). This presumption is rebuttable, however, upon proof that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

---

[2] Movant Ho claims losses of $207,803.59, while Movant Singa claims losses of $146,607.30.

### B. The VLK Group Is Unqualified to Serve as Lead Plaintiff

The VLK Group, comprised of three individual investors, has moved for appointment as lead plaintiff in this case. This group is unqualified to serve as lead plaintiff and to appoint it as such would defeat the purpose of the PSLRA. When groups of unrelated investors like the VLK Group serve as lead plaintiffs, there is a significant risk that they will be poorly positioned to supervise the work of counsel, one of the express purposes of the PSLRA. *See, e.g., In re Doral Financial Corp. Sec. Litig.*, 414 F.Supp.2d 398, 401-02 (S.D.N.Y. 2006) ("[B]y allowing attorneys to designate otherwise unrelated plaintiffs as a purported 'group,' and by allowing unrelated groups to aggregate investments in an effort to generate the 'largest financial interest,' a strong possibility emerges that lawyers will form such groups to manipulate the selection process, and thereby gain control of the litigation"). Indeed, this Court has repeatedly denied lead plaintiff status to manufactured groups. *See, e.g., In re Pfizer Inc. Sec. Litig.*, 233 F.R.D. 334, 337 (S.D.N.Y. 2005); *Goldberger v. PXRE Group, Ltd.*, No. 06-CV-3410 (KMK), 2007 WL 980417, at *5 (S.D.N.Y. Mar. 30, 2007).

The VLK Group exists only as a vehicle for plaintiffs' counsel to increase the losses they represent in the hope of securing a role as lead counsel. The individual members of the VLK Group lack any preexisting investment relationship and there is no evidence that they will act or make decisions collectively or monitor the work of counsel as envisioned by the PSLRA. Courts have routinely refused to appoint amalgamations of unrelated individuals as lead plaintiffs for these reasons. *In re Razorfish, Inc. Sec. Litig.*, 143 F.Supp.2d 304, 309 (S.D.N.Y. 2001) (rejecting a group as lead plaintiff because it had "no independent existence and its composite members [had] no prior relationship"); *In re Donnkenny Inc. Sec. Litig.*, 171 F.R.D. 156, 158 (S.D.N.Y. 1997) (holding that allowing "lawyers to designate unrelated plaintiffs as a

'group' and aggregate their financial stakes would allow and encourage lawyers to direct the litigation," the opposite of Congress's intent in enacting the PSLRA); *In re Telxon Corp. Sec. Litig.*, 67 F.Supp.2d 803, 815-16 (N.D. Ohio 1999) (noting that "[t]he larger the group, the less incentive any single member of the group – and certainly the group as a whole – will have to exercise any supervision or control over the litigation").

Nothing in the record here suggests that the VLK Group is anything but an aggregation of disparate and unrelated plaintiffs, cobbled together by counsel solely for the purpose of being appointed lead plaintiff and in order to ensure that the attorneys who manufactured it are selected as lead counsel. The VLK Group has provided no evidence that it can act collectively to make decisions and protect the interests of the Class. Thus, the Court should refuse to appoint the VLK Group as lead plaintiff. *See In re Veeco Instruments Inc. Sec. Litig.*, 233 F.R.D. 330, 334 (S.D.N.Y. 2005).

### C. Unless the Institutional Movants are Both Disqualified, the Court Should Appoint an Institution and an Individual as Co-Lead Plaintiffs

The PSLRA expressly authorizes the Court to appoint as lead plaintiff the "member *or members*" of the plaintiff class who can most adequately represent the Class. 15 U.S.C. § 78u-4(a)(3)(B)(i) (emphasis added). Unless the Court finds both of the two institutional movants inadequate, it should appoint both an individual and institution as co-lead plaintiffs in order to represent as diverse a range of interests as possible. This is a matter within the Court's discretion, but has been done by numerous courts and makes particular sense in this case for various reasons. First, the percentage of Optionable's shares held by institutional investors is very small for a publicly-traded company.[3] Because approximately 87.6% of Optionable's

---

[3] Approximately 12.4% of Optionable's outstanding shares are held by institutions, and given the holdings of some of them, it is quite obvious that the number of institutional

shares are held by individuals, it is important that an individual be included as one of the lead plaintiffs. Second, the two institutional movants here – a money manager and a hedge fund – are not the types of institutional investors typically appointed to lead securities class actions, such as state or city pension funds. Rather, they are private entities with entirely different objectives. Appointment of an individual investor will balance the interests directing this litigation, especially given the very small number of institutional investors and the vast number of individuals owning the stock.

This Court has recognized the advantages of appointing an institution and individual as co-lead plaintiffs. Doing so ensures adequate representation in both the prosecution of an action and in the negotiation and approval of a fair settlement. *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 49 (S.D.N.Y. 1998). Doing so also allows an institution and individual to pool resources and experience to mount as effective a prosecution as possible. *Id.* As a couple, "the lead plaintiffs will represent a broader range of shareholder interests than if the Court appointed an individual or an institutional investor alone." *Yousefi v. Lockheed Martin Corp.*, 70 F. Supp. 2d 1061, 1071 (C.D. Cal. 1999) (citing *In re Oxford Health Plans*, 182 F.R.D. at 47). Each brings a unique perspective to the table. *Laborers Local 1268 Pension Fund v. Campbell Soup Co.*, No. 00-152 (JEI), 2000 U.S. Dist. LEXIS 5481, at *11 (citing *In re Oxford Health Plans*, 182 F.R.D. at 51).

Indeed, courts have regularly recognized the benefits of such a lead plaintiff structure. Appointing both an individual and institution guarantees that *all* class members are adequately represented. *In re Cable & Wireless, PLC Sec. Litig.*, 217 F.R.D. 372, 376 (E.D. Va. 2003); *Weisz v. Calpine Corp.*, No. C 02-1200 SBA, 2002 U.S. Dist. LEXIS 27831, at *30 (N.D. Cal.

---

investors of Optionable is very small, perhaps only ten or fifteen. *See* http://finance.yahoo.com/q/ks?s=OPBL.OB.

Aug. 15, 2002). *See also Malasky v. IAC/InteractiveCorp*, No. 04 Civ. 7447 (RJH), 2004 U.S. Dist. LEXIS 25832, at *13 (S.D.N.Y. Dec. 20, 2004) (appointing an institution and individual as co-lead plaintiffs to ensure adequate monitoring of counsel); *Tice v. Novastar Fin.*, No. 04-0330-CV-W-ODS, 2004 U.S. Dist. LEXIS 16800, at *28 (W.D. Mo. Aug. 23, 2004) (appointing an institution and individual as co-lead plaintiffs to reconcile factual differences regarding plaintiffs' reliance).

Because an institution and individual, serving jointly as class representatives, will more adequately represent the diverse interests of the plaintiff class in this litigation, the Court should appoint one of each as co-lead plaintiffs.[4]

### D.  **Movant Doris Lee Ho's Counsel is Unqualified to Serve as Lead Counsel**

According to her opening motion, Movant Doris Lee Ho's losses appear to be greater than Singa's. *See* Declaration of Mario Alba, Jr. in Support of the Motion of Doris Lee Ho for Appointment as Lead Plaintiff and for Approval of Selection of Lead Counsel, at Exs. 2-3 (Docket Entry No. 34).  Ho's counsel, however, Lerach Coughlin Stoia Geller Rudman & Robbins LLP (the "Lerach firm"), is not adequate to represent the Class in this litigation. The PSLRA provides that "the most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v). The Court, however, can interfere with the Lead Plaintiff's selection when necessary "to protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa). The instant action is an example of an occasion where the Court should intervene. For the reasons given below, the Lerach firm

---

[4]     In addition, the law firms which represent the two institutional movants are both very small. The Gardy & Notis firm has only two lawyers, and the Kahn Gauthier firm has only eight and is fairly new to this field. Appointing Cohen Milstein, a relatively large plaintiffs' firm with the personnel, financial resources, and legal experience required to litigate this case, as co-lead counsel would be a substantial benefit to the class.

is unable to fairly and adequately represent the Class. Singa, who has the largest losses of any individual movant after Ho,[5] has retained as his counsel the law firm of Cohen, Milstein, Hausfeld & Toll, which is qualified and willing to serve as lead or co-lead counsel. Singa and his choice of counsel should therefore be approved by the Court to represent the Class, either solely or in conjunction with KLD or Monarch.

Serious doubts exist as to the Lerach firm's ability to focus its efforts and devote the attention required for the effective litigation of this matter. Its founding partner, William S. Lerach, is currently a target of an investigation by the U.S. Department of Justice for allegedly making "secret payments" to named plaintiffs in federal securities class actions. Julie Creswell, *Ex-Partner at Milberg Pleads Guilty to Conspiracy*, N.Y. Times, July 10, 2007, at C1 (attached as Ex. A). Recently, this investigation led to the indictment of two of Lerach's former partners, *see* First Superseding Indictment, *United States v. Milberg Weiss Bershad & Schulman, LLP, et al.*, CR 05-587 (A) – DDP (C.D. Cal. May 18, 2006) (Docket Entry No. 63), one of whom, David J. Bershad, has since pled guilty. Bershad's plea and accompanying Statement of Facts, attached as Exhibits B and C, describe the fraudulent scheme in detail. Of note is the reference to "Partner B," widely believed to be Lerach himself. Bloomberg News, *Milberg Client Pleads Guilty To Taking Pay To File Suits*, N.Y. Times, July 11, 2007, at C2 (attached as Ex. D). Indeed, signaling that Lerach will soon be indicted, the U.S. Attorney's office recently offered Lerach a plea arrangement, which he declined. *Id.* It is not known whether other partners at the Lerach firm will be implicated.

An impending indictment raises serious questions as to whether the Lerach firm will be able to commit the resources necessary to prosecute this matter while facing the distraction of

---

[5] Movant Marc A. Hembrough claims losses of $34,200.00, significantly below the losses of either of the other two individual movants.

7

defending its founding partner and possibly others against criminal wrongdoing. The investigation has become so onerous to Lerach that he has considered retiring because he believes "the investigation should not become a distraction to [his] firm and its ongoing work." Bruce V. Bigelow, *What's Leading Lerach to Think of Leaving Firm?*, San Diego Union-Trib., June 2, 2007, at C1 (attached as Ex. E). However, Lerach has still not retired, and may not for some time, which raises a strong possibility that the Lerach firm will not be able to serve effectively as lead counsel for the Class. Cohen Milstein, Singa's counsel, is qualified and willing to represent the Class in this matter and should be appointed to do so. There is no reason for the class to risk the possibility of class certification being denied at the class certification stage if not before because of issues involving the Lerach firm, thereby disrupting prosecution of the case.

     A number of courts throughout the country have similarly refused to appoint Milberg Weiss Bershad & Schulman LLP – Lerach's former firm, which has also been implicated in allegations of wrongdoing – as lead counsel because of their skepticism as to whether the firm is able to adequately represent a class. *See Nowak v. Ford Motor Co.*, 240 F.R.D. 355, 364 (E.D. Mich. 2006) (choosing another plaintiff to lead the litigation and acknowledging that "the presumption of innocence and the vigorous denials of wrongdoing by Milberg Weiss and by counsel for the lawyers individually charged ... cannot erase the obvious – that this indictment of a major law firm for alleged bribery, perjury and fraud by its named partners, could significantly harm the commitment of long term, unaltered legal personnel resources from the Milberg Weiss firm"); *In re General Electric ERISA Litig.*, No. 06-315, Docket Entry No. 33 (N.D.N.Y. Aug. 3, 2006) (delaying a decision on appointment of lead counsel but noting that "while recognizing Milberg Weiss's presumptive innocence, the Court must also consider on

behalf of the putative class that a grand jury found probable cause to believe that Milberg Weiss committed egregious wrongs in other class actions"); *In re Organogenesis Sec. Litig.*, 241 F.R.D. 397 (D. Mass. 2007) (finding Milberg Weiss inadequate to serve as co-lead counsel and disqualifying the firm at the class certification stage). While this has not yet impacted the Lerach firm, which was the West Coast office of Milberg Weiss during the time period of the criminal allegations in question, the very new developments involving Bershad's guilty plea and the accompanying Statement of Facts have placed an entirely new focus on this issue.

In light of the investigation and potential indictment of Lerach, Singa respectfully submits that the Class here deserves counsel which can dedicate its full attention and resources to litigating this case to a successful conclusion. As detailed in its firm resume, submitted with Singa's opening motion (Docket Entry No. 22), Cohen Milstein is able to provide this representation. Singa and his counsel should therefore be appointed to represent the Class.

## III.    CONCLUSION

For the foregoing reasons, Singa respectfully requests that the Court appoint him as Lead or Co-Lead Plaintiff and Cohen, Milstein, Hausfeld & Toll, P.L.L.C. as Lead or Co-Lead Counsel.

Dated: July 27, 2007

Respectfully submitted,

COHEN, MILSTEIN, HAUSFELD
& TOLL, P.L.L.C.

   /s/   Catherine A. Torell
Catherine A. Torell (CT-0905)
150 East 52nd Street, Thirtieth Floor
New York, New York 10022
Telephone: (212) 838-7797
Facsimile: (212) 838-7745

      - and -

Steven J. Toll
Daniel S. Sommers
S. Douglas Bunch
1100 New York Avenue, N.W.
West Tower, Suite 500
Washington, DC 20005-3964
Telephone: (202) 408-4600
Facsimile: (202) 408-4699

*Attorneys for Ramesh M. Singa and
Proposed Lead Counsel for the Class*