**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re OPTIONABLE, INC. SECURITIES LITIGATION | ) ) ) ) ) DOCKET NUMBER: 07-cv-3753-LAK ) ) ) HON. LEWIS A. KAPLAN ) ) ) ) ) ) ) |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE MOTION OF KLD INVESTMENT MANAGEMENT, LLC TO BE APPOINTED LEAD PLAINTIFF, TO APPROVE PROPOSED LEAD PLAINTIFF'S SELECTION OF COUNSEL, AND IN FURTHER OPPOSITION TO OTHER COMPETING MOTIONS**

**TABLE OF CONTENTS**

**TABLE OF AUTHORITIES** ................................................................................................... iii

**INTRODUCTION** ..................................................................................................................... 1

**ARGUMENT** .............................................................................................................................. 2

    I.  Singa Should Not Be Appointed Lead Plaintiff.............................................................. 2

        A.  **Singa Has Not Rebutted the Presumption KLD Is the Most Adequate Lead Plaintiff**................................................................................................................. 2

        B.  **Co-Lead Plaintiffs in this Action Are Not Indicated and Would Needlessly Complicate Leadership Structure** ........................................................................ 3

    II.  Monarch Should Not Be Appointed Lead Plaintiff ........................................................ 6

        A.  **Monarch Has Not Rebutted The Presumption KLD Is Most Adequate Lead Plaintiff**................................................................................................................ 6

        B.  **Monarch Still Has Not Established Their Authority in This Action**.................... 8

    III. KLD Should Be Appointed Lead Plaintiff..................................................................... 9

        A.  **KLD Is the Presumptive Lead Plaintiff and That Presumption Has Not Been Rebutted**............................................................................................................... 9

**CONCLUSION** ........................................................................................................................ 10

# **TABLE OF AUTHORITIES**

**Cases**

*In re Cable & Wireless, PLC Sec. Litig.*, 217 F.R.D. 372 (E.D.Va. 2003) .................................... 5

*In re Cavanaugh*, 306 F.3d 726 (9th Cir. 2002) ................................................................. 6, 7, 8

*In re Cendant* 264 F.3d 201 (3d.Cir. 2001), cert. denied, 535 U.S. 929 (2002) ............................ 8

*In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95 (S.D.N.Y. 2005) ..................................................... 4, 9

*In re Oxford Health Plans, Inc. Sec. Litig*, 182 F.R.D. 42 (S.D.N.Y. 1998) ................................. 3

*In re Turkcell Iletisim Hizmetler, A.S. Sec. Litig.*, 209 F.R.D. 353 (S.D.N.Y. 2002) ............. 4, 8, 9

*Malasky v. IAC/InteractiveCorp*, 2004 U.S. Dist. LEXIS 25832 (S.D.N.Y. Dec. 20, 2004) ......... 5

*Sczesny Trust v. KPMG LLP*, 223 F.R.D. 319 (S.D.N.Y. 2004) ...................................................... 2

*Smith v. Suprema Specialties*, 206 F. Supp. 2d 627 (D.N.J. 2002) .................................................. 9

*Sofran v. LaBranche & Co., Inc.,* 220 F.R.D. 398 (S.D.N.Y. 2004) ............................................... 3

*Tice v. Novastar Fin.*, 2003 U.S. Dist. LEXIS 16800 (W.D. Mo. Aug. 23, 2004) ......................... 6

*U.S. Underwriters Ins. Co. v. Falcon Constr. Corp.*, 2006 U.S. Dist. LEXIS 79329 (S.D.N.Y. Oct 30, 2006) ............................................................................................................................... 9

*Weisz v.Calpine*, 2002 U.S. Dist. LEXIS 27831 (N.D. Cal. Aug 15, 2002) ........................... 4, 5, 9

**Statutes**

15 U.S.C. § 77z-1(a)(3)(B) ............................................................................................................... 1

15 U.S.C. § 77z-1(a)(3)(B)(iii)(bb) ................................................................................................ 10

15 U.S.C. § 77z-1(a)(3)(B)(iii)(II)(aa)-(bb) ..................................................................................... 2

15 U.S.C. § 78u-4(a)(3)(B) ............................................................................................................... 1

15 U.S.C. § 78u-4(a)(3)(B)(iii)(bb) ................................................................................................ 10

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa)-(bb) ..................................................................................... 2

**Rules**

Fed. R. Civ. P. 23 ..................................................................................................................... 2, 7, 10

## **INTRODUCTION**

KLD Investment Management, LLC ("KLD") respectfully submits this Reply Memorandum of points and authorities in further support of its Motion, pursuant to the Securities Act of 1933 ("Securities Act"), 15 U.S.C. § 77z-1(a)(3)(B), and the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B) as *amended* by Section 101(a) of the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), for appointment of KLD as Lead Plaintiff, for approval of its selection of Kahn Gauthier Swick, LLC as Lead Counsel, and in further opposition to the remaining competing motions.

The case has been consolidated, and of the eight initial movants for Lead Plaintiff all but three have either formally withdrawn or have tacitly withdrawn by failing to participate in this motion process beyond the filing of their initial motions. Of the remaining movants KLD, with demonstrable losses of $3,752,667.30, has a far greater interest in the relief sought by the Class than either Ramesh M. Singa ("Singa") with losses of $146,607.30, or Monarch Capital Fund ("Monarch") with losses of $863,000.00. KLD is presumptively the most adequate Lead Plaintiff, and this fact has not been rebutted by *proof* offered by either Singa or Monarch.

In fact, neither movant Singa nor Monarch has even attempted to rebut the presumption in favor of KLD, and neither has offered any proof to demonstrate that KLD is either inadequate or atypical so as to prevent its appointment as Lead Plaintiff. In his Opposition Brief, Singa requests this Court to depart from the clear mandate of the PSLRA, and asks to be appointed co-Lead Plaintiff despite its small loss and despite its failure to rebut the presumption in favor of appointing only KLD. Singa Opp. Memo at 1, 5. Moreover, not only is Singa's position unsupported by law, but the result would needlessly complicate the leadership structure of the litigation, adding unnecessary costs and potentially delaying the prosecution of this Action.

Monarch has also failed to rebut the presumption in favor of KLD to serve as Lead Plaintiff in this action, and it too never even addresses the adequacy or typicality of KLD. Instead, Monarch attempts to argue that KLD should be disqualified because of its choice of counsel. Not only is Monarch's position wholly unsubstantiated, but this position has been routinely rejected by courts absent the most extreme circumstances. Moreover, as argued by KLD in its prior motion, Monarch has yet to establish that it has *any loss* in this action and it has never documented attorney-in-fact authority, or indeed any authority, to move for Lead Plaintiff.

As demonstrated herein and in its prior motions, KLD has the largest financial interest in the relief sought by the Class, it is presumptively the Lead Plaintiff in this action, and its adequacy and typicality have not been materially challenged. Accordingly, the motions by competing movants should be denied, and the Court should appoint KLD as Lead Plaintiff in this Action and ratify its selection of Lead Counsel for the Class.

## ARGUMENT

### I. Singa Should Not Be Appointed Lead Plaintiff

**A. Singa Has Not Rebutted the Presumption KLD Is the Most Adequate Lead Plaintiff**

The PSLRA is explicit in its instruction that the movant with the largest losses who also satisfies the typicality and adequacy requirements of Fed. R. Civ. P. 23 is the presumptive Lead Plaintiff, and only with *proof* that the presumptive Lead Plaintiff will not fairly and adequately protect the interests of the class, or is subject to "unique defense" that render such plaintiff incapable of adequately representing the class, will this presumption be rebutted. 15 U.S.C. § 77z-1(a)(3)(B)(iii)(II)(aa)-(bb) and 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa)-(bb). *See also Sczesny Trust v. KPMG LLP*, 223 F.R.D. 319, 324-325 (S.D.N.Y. 2004)(Conclusory assertions of inadequacy of a lead plaintiff are insufficient to rebut the statutory presumption under the Private

2

Securities Litigation Reform Act of 1995 without specific support in evidence of the existence of an actual or potential conflict of interest or a defense to which the lead plaintiff would be uniquely subject.); *Sofran v. LaBranche & Co., Inc.,* 220 F.R.D. 398, 403-04 (S.D.N.Y. 2004)(emphasizing mere speculation not sufficient proof necessary to rebut presumption in favor of the most adequate lead plaintiff movant.)

Not one fact is raised in Singa's motion that attempts to challenge the adequacy or typicality of KLD, and Singa has also not offered any proof that KLD would be subject to any unique claims or defenses.  Unsupported aspersions cast about hypothetical "factual differences regarding plaintiffs' reliance," or the "entirely different objectives" purported to be maintained by Singa *prove* nothing – apart from the possibility that Singa would be inadequate and atypical of the Class *if* he had demonstrated the largest financial interest in the relief sought.

**B. Co-Lead Plaintiffs in this Action Are Not Indicated and Would Needlessly Complicate Leadership Structure**

Citing a few cases that demonstrate nothing more than extreme positions, and offering no authority to support its position that Courts should – much less "regularly" – amalgamate movants to create a dual leadership structure in an action governed by the PSLRA, movant Singa argues that it should be appointed co-Lead Plaintiff because this will "balance the interests" of diverse Class members, and because movants such as Singa have "entirely different objectives" than members of the Class who sustained significantly greater losses.  Singa Opp. Memo at 2.

Movant Singa's position is neither correct nor logically consistent, and movant Singa has failed to rebut any presumption afforded KLD, the movant with the largest financial interest in the relief sought by the Class.  Singa's position suffers from several fatal defects, not the least of which is his reliance on *In re Oxford Health Plans, Inc. Sec. Litig*, 182 F.R.D. 42, 49 (S.D.N.Y. 1998), for the proposition that Singa should be appointed co-Lead Plaintiff because that would

3

assure that the interests of "individuals" and "institutions" are protected. In fact, however, Singa wholly ignores the jurisprudence in this District which holds that KLD is not considered an "institutional" investor.

In this District, KLD is not considered an institutional investor because it is a registered "investment advisor" which Courts classify as an "individual investor", as distinguished from institutional investors such as public or private pension funds. Courts in this District have held that when registered investment advisors such as KLD act as a "single person" in the manner in which they control their investments, and provided that that they have attorney-in-fact authority from clients to sue to recover losses, they are deemed to be "individual" investors for the purpose of Lead Plaintiff appointment pursuant to the PSLRA. *See infra, In re Turkcell Iletisim Hizmetler, A.S. Sec. Litig.*, 209 F.R.D. 353, 357-58 (S.D.N.Y. 2002); *In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 98 (S.D.N.Y. 2005); *Weisz v.Calpine*, 2002 U.S. Dist. LEXIS 27831 (N.D. Cal. Aug 15, 2002).

Here, KLD has demonstrated that it has acted as a single investor and that it has attorney-in-fact authority from its clients to move for appointment as Lead Plaintiff. Accordingly, even if Singa could identify why he believes that the interests of private entities are "entirely different" from institutional investors, or what interests need to be "balanced" – which he simply states but for which he offers no proof – his argument would still fail.

Moreover, even if this Court were to consider KLD an institutional investor, the instant Action is distinguishable from the other actions cited by Singa, which were unusual cases that required the appointment of co-Lead Plaintiffs. Here, circumstances are not so unusual as to warrant a Court-sponsored dual leadership structure, and the cases cited by Singa are inapposite.

For instance, in *In re Cable & Wireless, PLC Sec. Litig.*, 217 F.R.D. 372 (E.D.Va. 2003), a case from the Eastern District of Virginia, because of the existence of several series of stock traded on different exchanges, and because the Court found that the institutional investor with the largest financial interest was subject to unique claims and defenses, it appointed an individual as co-Lead Plaintiff.  The Court's rationale for making such an appointment was that, because the institutional investor was subject to unique defenses, if it were later disqualified from representing the Class, the individual could still continue to oversee the litigation.  Here, however, no proof has been offered by any movant demonstrating that KLD is subject to unique claims or defenses, and there is no argument that foreign-market-purchasers exist or that any sub-class of investors will not be adequately represented by the presumptive Lead Plaintiff, KLD.

Similarly, in *Weisz,* 2002 U.S. Dist. LEXIS 27831, a California action, that Court found, after disqualifying the presumptive Lead Plaintiff and several other high-loss movants, that neither of the two remaining Lead Plaintiff applicants was "particularly ideal," and neither was viewed as being capable of managing the litigation effectively.  The *Weisz* Court, therefore, appointed both an individual and an institution as co-Lead Plaintiffs.  Here, the presumptive Lead Plaintiff (KLD) has not been disqualified, and there is no reason to believe that KLD lacks the experience or expertise necessary oversee this Action.  As a sophisticated investment advisor, KLD is ideally suited to manage this case effectively.

In *Malasky v. IAC/InteractiveCorp*, 2004 U.S. Dist. LEXIS 25832 (S.D.N.Y. Dec. 20, 2004), the exact opposite situation existed than the one at bar.  In *IAC/Interactive*, the Court was concerned that an individual who was presumptively Lead Plaintiff would be unable to effectively oversee that litigation and, therefore, it appointed an *institutional investor* – with

5

smaller losses – as co-Lead Plaintiff, to make up for this perceived deficiency. This argument cannot be applied to KLD which has losses almost 40 times greater than the losses of Singa and which, as stated herein and previously, has demonstrated its adequacy and typicality – neither of which have been rebutted by any proof.

Also, unlike *Tice v. Novastar Fin.*, 2003 U.S. Dist. LEXIS 16800 (W.D. Mo. Aug. 23, 2004), an opinion imported from the Western District of Missouri, here there are no key factual differences between the claims of the institutional and individual plaintiffs in question. Accordingly, it is unnecessary, ineffective, and inefficient to appoint co-Lead Plaintiffs. Here, there are no factual differences between the claims of Singa and KLD, or between KLD and any member of the Class.[1]

For the reasons stated herein and previously, and because appointment of unknown co-Lead Plaintiffs in this Action would needlessly complicate the leadership structure and management of the litigation; and because there is nothing to indicate that a co-Lead Plaintiff structure would benefit the class, Singa's motion should be denied.

## II. Monarch Should Not Be Appointed Lead Plaintiff

### A. Monarch Has Not Rebutted The Presumption KLD Is Most Adequate Lead Plaintiff

Like Singa, Monarch offers not one *fact* that can serve as *proof* to rebut the presumption in favor of KLD, the movant with the largest financial interest in the relief sought. In fact,

---

[1] In Note 4 of its Opposition Motion, Singa also states that it should be appointed – despite its small loss – because of its selection of counsel. Singa's position again belies the clear mandate of the PSLRA because choice of counsel does not rebut the presumption of adequacy afforded KLD. *See infra*, *In re Cavanaugh*, 306 F.3d 726, 733 (9th Cir. 2002). Moreover, Kahn Gauthier Swick, LLC is a firm composed of several seasoned class action and securities fraud attorneys, with significant experience litigating securities fraud class actions, well suited to prosecute this Action, and Singa has again offered not one iota of proof to rebut the presumption that Lead Plaintiff's selection of counsel should be ratified. In fact, again, Singa's position is not even logically consistent, because even if he was correct – which he is not – his position would justify only the appointment of co-Lead Counsel and not his appointment as a co-Lead Plaintiff.

because Monarch, like Singa, can offer no fact to rebut this presumption, they instead attack KLD's selection of counsel, an impermissible means of rebuttal. Monarch's attack too, however, suffers from fatal defects and its motion too must be denied.

In its two-page Opposition motion, Monarch fails to identify any manner in which KLD is either inadequate to serve as Lead Plaintiff or atypical of the Class. In fact, Monarch readily admits that its losses are smaller than the losses of KLD, yet it claims that KLD should not be appointed because of alleged issues surrounding the filing of another complaint in this Action, for another of its chosen counsel's clients. Monarch Opposition at 2. While Monarch boldly states that the purported issues that it identified "will likely become the focus of the litigation," it provides no rhyme or reason as to why any actions that relate to a client who has chosen not to be appointed Lead Plaintiff in this Action – having suffered substantially smaller losses than KLD – would have any bearing on KLD's application for appointment as Lead Plaintiff here.[2]

The PSLRA and Fed. R. Civ. P. 23 specify that only proof of inadequacy or atypicality will rebut the presumption afforded the Lead Plaintiff movant with the largest financial interest in the Action. Since Monarch could not aver such proof to rebut this adequacy, it instead has resorted to attacking KLD's selection of counsel. Here, however, the inquiry is not into the adequacy or typicality of counsel but into that of lead movant, and Courts have routinely held that selection of counsel is only one relatively weak indicator of a movant's fitness. *Cavanaugh*, 306 F.3d at 733("[T]he court must keep firmly in mind that the inquiry is not into the adequacy

---

[2] Despite purporting to be a legal memorandum, Monarch's Opposition motion fails to cite one legal opinion to support its unfounded attacks on Counsel's method of pre-filing investigation. Moreover, Monarch's position can only be viewed as hypocritical and ill-conceived given that Monarch has done nothing to serve the Class in this litigation other than filing its motion for Lead Plaintiff, and it has only benefited from the investigation into the claims against Optionable, Inc. and the filing of a detailed and well-pled Complaint – each conducted and prepared by KLD's selected Counsel, Kahn Gauthier Swick, LLC, who initiated this action and who filed first Notice thereof.

or fitness of counsel but into the adequacy of plaintiff, and the choice of counsel is only an indicator – and a relatively weak one at that – of plaintiff's fitness.")

In fact, selection of counsel is among the weakest attacks that can be made to rebut the adequacy and typicality of a movant, and choice of counsel will serve to rebut the presumption of adequacy *only* in the most extreme circumstances – and *only* where *proof* is offered, demonstrating that counsel is incapable of litigating an action or where the choice of counsel presents conflicts of interest that make it impossible for a movant to serve as Lead Plaintiff. *Id* at 733("...such information is relevant only to determine whether the presumptive lead plaintiff's choice of counsel is so irrational, or so tainted by self-dealing or conflict of interest, as to cast genuine and serious doubt on that plaintiff's willingness or ability to perform the functions of lead plaintiff..."), citing *In re Cendant* 264 F.3d 201, 266 (3d.Cir. 2001), cert. denied, 535 U.S. 929 (2002).

Monarch offers no proof and makes no credible arguments whatsoever that KLD's choice of counsel is irrational, or that KGS has engaged in self-dealing, is conflicted, lacks resources, or is not otherwise qualified to represent the Class.

**B. Monarch Still Has Not Established Their Authority in This Action**

In addition to failing to rebut the presumption in favor of appointing KLD as Lead Plaintiff in this Action, Monarch has also failed to demonstrate that it has *any* financial interest in the relief sought by the Class. Monarch is an investment advisor which has *clients* who purport to have suffered losses of $863,000 in Optionable, Inc. stock, which Monarch attempts to claim as its own. Monarch, however, has *still* failed to establish that it acted as a "single investor" or that its clients gave it the legal authority to sue or seek Lead Plaintiff status on their behalf. *Turkcell*, 209 F.R.D. at 357-58(holding that investment advisor which did not purchase

8

securities on its own behalf lacked standing to claim their clients' financial interest); *eSpeed*, 232 F.R.D. at 98(declining to appoint investment advisor who had not shown "single person" or attorney-in-fact" requirements); *Weisz*, 2002 U.S. Dist. LEXIS at *19-*24(same).

Notably, Monarch does not even attempt to claim that it: (i) obtained attorney-in-fact authority from its clients to bring suit on behalf of its clients; (ii) is authorized to claim its clients' investment losses as its own; or (iii) possesses an actual financial interest in the relief sought. *See Smith v. Suprema Specialties*, 206 F. Supp. 2d 627, 634-35 (D.N.J. 2002)("The clients' mere grant of authority to an investment manager to invest on its behalf does not confer authority to initiate suit on its behalf."); *Turkcell*, 209 F.R.D. at 357-58.

Again, at the very least, if Monarch had wished to be appointed Lead Plaintiff based upon others' losses, it should have ***timely*** presented evidence that the clients who suffered the losses lawfully empowered Monarch to move for Lead Plaintiff. *See eSpeed*, 232 F.R.D. at 98.[3]

## III.  KLD Should Be Appointed Lead Plaintiff

### A. KLD Is the Presumptive Lead Plaintiff and That Presumption Has Not Been Rebutted

KLD suffers none of the fatal defects evidenced by other movants, and no movant has offered any proof to rebut the adequacy or typicality of KLD that would prevent it from serving as Lead Plaintiff in this Action. KLD suffered losses of approximately $3,752,667.30, it has "the largest financial interest in the relief sought by the class" among class members seeking to be

---

[3] Any attempt by Monarch at this stage of the litigation to cure its fatal defects must also be ignored because Monarch should not be allowed to offer new evidence of its adequacy or typicality that was not presented in prior briefing, and which would prejudice KLD by denying it adequate time to analyze such supplemental information and to reply to any submission in a timely manner. *See, U.S. Underwriters Ins. Co. v. Falcon Constr. Corp.*, 2006 U.S. Dist. LEXIS 79329, *9-*10 (S.D.N.Y. Oct 30, 2006)( "The Court need not consider a new argument raised for the first time in a reply brief, as arguments presented in this fashion deny the opposing party a fair opportunity to respond.")

appointed Lead Plaintiff (*See* 15 U.S.C. § 77z-1(a)(3)(B)(iii)(bb) and 15 U.S.C. § 78u-4(a)(3)(B)(iii)(bb)), and has clearly established that it meets the requirements of Fed. R. Civ. P. 23.  Furthermore, KLD has submitted ample documentation to the effect that it acted as a "single investor" and has attorney-in-fact authority to bring this suit, qualifying it to move as an investment advisor for Lead Plaintiff.  *See, e.g.,* KLD Certification ¶7.

No other movant has been able to rebut ***with proof*** the presumption that KLD is the most adequate lead plaintiff in this action.  Accordingly, this Court should approve KLD's motion for appointment as Lead Plaintiff and ratify its selection of Lead Counsel.

## **CONCLUSION**

For all of the foregoing reasons, KLD respectfully requests that this Court: (i) consolidate all future related actions; (ii) appoint KLD to serve as Lead Plaintiff in this consolidated Action; (iii) approve KLD's selection of Kahn Gauthier Swick as Lead Counsel for the Class; and (iv) grant such other and further relief as the Court may deem just and proper.

Dated: Aug 6, 2007                              Respectfully submitted,

                                                KAHN GAUTHIER SWICK, LLC

                                                /s/ Kim E. Miller_____

                                                Michael A. Swick (MS-9970)
                                                Kim E. Miller (KM-9669)
                                                12 East 41st Street, 12th Floor
                                                New York, NY 10017
                                                Telephone: (212) 696-3730
                                                Facsimile: (504) 455-1498

                                                -and-

10

KAHN GAUTHIER SWICK, LLC
Lewis S. Kahn
650 Poydras St., Suite 2150
New Orleans, Louisiana 70130
Telephone (504) 455-1400
Facsimile: (504) 455-1498

*Counsel for KLD Investment Mgmnt. LLC
and Proposed Lead Counsel for the Class*

**CERTIFICATE OF SERVICE**

    I hereby certify that this Motion was filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and paper copies will be sent to those indicated as non-registered participants on Aug 6, 2007.

                                       /s/ Kim E. Miller_____
                                       Kim E. Miller