**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re OPTIONABLE
SECURITIES LITIGATION

No. 07 Civ. 3753 (LAK)

**MONARCH CAPITAL FUND LTD.'S REPLY**
**IN FURTHER SUPPORT OF ITS MOTION TO APPOINT**
**LEAD PLAINTIFF AND LEAD COUNSELOPPOSITION TO**

Movant Monarch Capital Fund Ltd. ("Monarch") respectfully submits this reply in

further support of its motion to appoint lead plaintiff and lead counsel.

**INTRODUCTION**

The opposition of the KLD Investment Management LLC ("KLD") reveals the

extraordinary fact that KLD's claimed "losses" are actually the aggregated losses of an

unknown number of individual account holders that KLD manages for a fee.  Simply put,

KLD is a paid money manager for others, and, unlike every other member of the class, it

never owned any shares of Optionable, Inc. ("Optionable") and will not be part of any

recovery in the case other than as a pass through to this unknown number of individual

account holders.  Monarch, by contrast, is an institutional investor that invested in

Optionable shares during the class period for its own account and incurred the largest

legitimate (*i.e.*, non-aggregated) losses of all competing movants.  These facts, coupled

with the fact that KLD came to the case in following an on-line solicitation made by

lawyers in search of a client, show that unique defenses applicable to KLD and its

unknown account holders are certain to be a focus of the litigation, to the detriment of the

class of investors who actually owned the shares, have skin in the game, and do not suffer

from such unique issues.  With the largest legitimate loss of all competing movants,

Monarch should be appointed as lead plaintiff and its chosen counsel as lead counsel.

## KLD IS A PAID MONEY MANAGER AND NEVER OWNED ANY SHARES

KLD is a fee-based money manager that provides advice to clients and then

processes trades on behalf of clients.  KLD does not run a unified fund that owned

Optionable shares for itself or that treats all investors *pro rata* to their investment.

Instead, KLD purchased Optionable shares for individual clients, with the shares

allocated to "individual client accounts."  KLD Opp. Mem. (Dkt. No. 49) at 5, n.2; *see*

*also* Exhibit A to the Second Declaration of James S. Notis (the "Second Notis Decl.")

(From KLD's website: "KLD exists to manage other people's money.").  KLD now seeks

to aggregate the losses of this unknown number of individual client accounts to claim that

it has the largest losses of all competing movants.

KLD's attempt to aggregate the individual client losses in order to seek

appointment as lead plaintiff should be rejected here for many reasons.  Fundamentally,

KLD has chosen not to disclose the number or type of clients who are the actual injured

parties here (to whom KLD owes fiduciary duties), and there is no evidence how those

injured parties view this litigation, assuming that they are even aware of it.  KLD's

individual account holders are an unrelated group of different types of investors that will

have different and possibly conflicting views of the litigation, may have invested

different portions of their portfolio in Optionable stock, and also may not remain clients

of KLD throughout the course of the litigation.  *See, e.g., Smith v. Suprema Specialties*,

206 F.Supp.2d 627, 634-35 (D.N.J. 2002) (rejecting effort of money manager to

aggregate losses of 22 clients); *see also In re Turkcell Iletisim Hizmetler, A.S. Securities*

*Litig.*, 209 F.R.D. 353, 358 (S.D.N.Y. 2002) ("it is likely that Northern Trust, for whom BPI invested the money, would have standing to sue… The fact that BPI was not the legal purchaser of Turkcell stock prevents them from suing on behalf of its investors."). The class will plainly be harmed when such issues unique to KLD and its clients become the focus of the litigation.

KLD has also failed to establish that it has actual authority to bring the litigation for these unnamed clients, as its complete reliance on a lead plaintiff certification to demonstrate such authority is insufficient.  *See, e.g.*, *Weisz v. Calpine Corp.*, 2002 WL 32818827, at *6 (N.D. Cal. Aug. 19, 2002) (lead plaintiff certification insufficient to establish that investment manager was "authorized by its clients to bring securities law claims on their behalf.").

Finally, KLD is also subject to unique defenses insofar as KLD's investment decisions are based on insider contact at the company rather than public information available equally to all other investors.  Developing a personal "rapport" with company management is part of KLD's investment philosophy and is touted to potential investors as a reason to pay KLD's investment fees.  *See* Second Notis Decl. Ex. B (From KLD's website: "Personal contact is conducted with prospective companies.  In many cases, I conduct personal visits to these companies to 'get a feel' for the candor of the executives. I have long felt that quality and amount of information is better achieved by a personal visit.  A personal visit also establishes rapport."); Ex. C ("While reviewing company financial reports is very important, KLD believes that personal contact is equally important.").

Monarch, by contrast, is a single entity that purchased Optionable stock for itself and has incurred a direct injury. Monarch's losses of $863,000, while lower than the aggregated losses of KLD's clients, is nonetheless a substantial loss. Monarch is therefore highly motivated to represent the Class, and any recovery achieved will go directly to Monarch, whereas KLD itself will get nothing, and the individual account holders at KLD may not have the same economic motivation to ensure proper representation for the class.

### KLD'S SELECTION OF COUNSEL IN RESPONSE TO A SOLICITATION PRESS RELEASE

The class will likewise be harmed when issues of KLD's selection of counsel become the focus of the litigation.

First, KLD came forward as a proposed lead plaintiff in response to a pre-emptive press release issued by its counsel, Kahn Gauthier & Swick, to attract a client to commence litigation. The press release from Kahn Gauthier & Swick stated that it had "initiated an investigation into Optionable, Inc.," and that shareholders should call or e-mail the firm to discuss their legal rights, even though Kahn Gauthier & Swick had not filed a lawsuit at the time. *See* Second Notis Decl. Ex. E.

Second, after finding Alexander Fleiss as a client in response to the press release, Kahn Gauthier & Swick ran to the courthouse and filed a lawsuit for Mr. Fleiss alleging that Optionable violated Section 11 of the Securities Act, 15 U.S.C. §77k, in connection with a May 2005 IPO, even though Mr. Fleiss did not have a valid Section 11 claim as a matter of law because the price of Optionable stock did not drop below the IPO price. *See* 15 U.S.C. §77k(e) (generally limiting damages to a drop below the IPO price). Kahn

Gauthier & Swick then immediately issued another press release to announce that it had now filed a case against Optionable, and to warn investors while other other law firms may issue press releases "announcing" the case, only Kahn Gauthier & Swick has actually filed the case. *See* Second Notis Decl. Ex. F (informing potential lead plaintiffs that "It is critically important that interested parties carefully evaluate any other firm that may be competing with [Kahn Gauthier & Swick] to prosecute the Optionable class action."). Kahn Gauthier & Swick then dropped Mr. Fleiss as a proposed lead plaintiff in favor of KLD.

Third, Kahn Gauthier & Swick also appears to have overstated the firm's experience in securities class action litigation in connection with KLD's lead plaintiff motion. Kahn Gauthier & Swick is a firm that primarily handles mass tort cases and not securities litigation. While its firm resume lists certain older securities cases in which plaintiffs achieved significant victories, those cases were actually litigated by the Milberg Weiss firm. Kahn Gauthier & Swick is apparently claiming credit for those results because Michael Swick was formerly a Milberg Weiss associate when those cases were being litigated, even though he is not listed in the reported decisions from those cases. This lack of candor of KLD's counsel (ironic in case in which it is alleged that Optionable's CEO defrauded investors by failing to accurately disclosed his own background) was noted by Judge McMahon in a similar securities class action, *Bhojwani v. Pistioulis*, No. 06 Civ. 1361 (CM) (KNF) (SDNY) ("*Top Tankers*"):

> Finally, the court questions the adequacy of the [Kahn] Gauthier Law Firm to serve as lead counsel, in view of what appear to be, at best, inflated statements about the firm's role in the *In re Merck, Inc. Securities, Derivative and ERISA Litigation*, MDL Docket No. 1658 (D.N.J.), and about the allegedly "instrumental" role of Kahn Gauthier partner Michael

A. Swick (a former associate in the Milberg Weiss Firm) in the *In re Oxford Health Plans, Inc., Securities Litigation*, MDL Docket No. 122 (CLB)(S.D.N.Y.).

Memorandum Decision, dated July 30, 2007, at 5 (Second Notis Decl. Ex. D).[1]

## THE CHALLENGES TO MONARCH AND ITS COUNSEL ARE UNFOUNDED

The efforts of the competing lead plaintiff motions of KLD and Ramesh Singa to challenge Monarch's appointment of lead plaintiff are inapposite and/or easily refuted.

First, Mr. Singa's losses of roughly $146,000 are far smaller than Monarch's $863,000 losses, and the Court should decline to adopt Mr. Singa's proposal to force a lead plaintiff "group" consisting of an institution like Monarch and an individual like Mr. Singa, and decline Mr. Singa's counsel's proposal to add it as an additional lead counsel. Mr. Singa's counsel suggests that Monarch's counsel should not be appointed as sole lead counsel because it has fewer attorneys than Mr. Singa's counsel, but that argument is meritless. Although Monarch's counsel is a small firm, its partners have over 35 years of combined experience in litigating federal securities fraud class actions and have been the lead attorneys in some of the largest recoveries for shareholders.[2] The creation of an

---

[1]    KLD's counsel removed the *Merck* and *Oxford* cases from their firm resume but still claim credit for Milberg Weiss' settlements in *Sunbeam*, *Computer Associates* and *Lucent* cases. *See* Dkt. No. 40, Ex. C. Monarch's counsel, Gardy & Notis, LLP, was listed on the original complaint filed by Kahn Gauthier & Swick in *Top Tankers*. The client in the case was from Kahn Gauthier & Swick, and Gardy & Notis, LLP did not move for lead plaintiff in the case and has not taken an active role in the lead plaintiff process.

[2]    Mark Gardy and James Notis were each partners in the firm formerly known as Abbey Gardy, LLP, and have vast experience in litigating securities class actions. For instance, Mr. Notis lead Abbey Gardy, LLP as sole lead counsel in the *BankAmerica* securities class action, a heavily litigated case that lasted six years, included 75 depositions, produced five reported decisions (including two appeals to the Eighth

6

artificial lead plaintiff and/or lead counsel "group" will not benefit the class here.  *See In re eSpeed, Inc. Securities Litig.*, 232 F.R.D. 95, 99 (S.D.N.Y. 2005) ("Appointing a group of unrelated investors lead plaintiff could lead to fragmentation and the problem of determining whose voice reigns when the group cannot agree.").

Second, to the extent that KLD challenged Monarch's authority in bringing litigation, Monarch has submitted a declaration from its principal confirming its authority.  *See* Second Notis Decl. Ex. G.  Monarch is a single investor, run by a principal with investment control and full authority to bring the litigation, and, with the largest single losses among the competing movants, is ideally suited to represent the class as lead plaintiff.

---

Circuit), and resulted in a $490 million settlement just three months before the start of trial.  Since forming Gardy & Notis, LLP, the firm has been appointed as lead or co-lead counsel in other high-profile securities class actions, including *Rice v. Lafarge North America Inc.*, Civil No. 268974-V, Circuit Court for Montgomery County (Business and Technology Court), Maryland ($383 million settlement) and *In re ARAMARK Corporation S'holders Litig.*, Consol. C.A. No. 2117-N, Delaware Court of Chancery ($266 million settlement), and was recently appointed by Judge Sprizzo as co-lead counsel in *In Re Sears Holdings Corporation Securities Litig.*, No. 06 Civ. 4053 (SDNY) (JES).

## <u>CONCLUSION</u>

For the foregoing reasons and as set forth in Monarch's opening and opposition papers and based on all prior pleadings and proceedings herein, the Court should appoint Monarch Capital Fund Ltd. as lead plaintiff and its counsel as lead counsel and deny the competing motions for lead plaintiff.

Dated: August 6, 2007

                                    Respectfully submitted,

                                    GARDY & NOTIS, LLP


                                    By:    s/ James S. Notis
                                            James S. Notis (JN-4189)
                                    440 Sylvan Avenue, Suite 110
                                    Englewood Cliffs, New Jersey 07632
                                    Tel: 201-567-7377
                                    Fax: 201-567-7337

                                    *Attorneys for Movant*
                                    *Monarch Capital Fund Ltd.*

## CERTIFICATE OF SERVICE

Notice of this filing will be sent to all counsel of record by operation of the Court's electronic filing system as follows:

Kim Elaine Miller
Email: kimmiller225@yahoo.com
KAHN GAUTHIER SWICK, LLC

*Counsel for plaintiff Alexander Fleiss and movant KLD Investment Management, LLC*

Ronen Sarraf
Email: ronen@sarrafgentile.com
SARRAF GENTILE, LLP

*Counsel for plaintiff Jagdish Patel*

Evan J Smith
Email: esmith@brodsky-smith.com
BRODSKY & SMITH, L.L.C.

*Counsel for plaintiff Edward Peters and movant the Desai Group*

Jeffrey Philip Campisi
Email: jcampisi@kaplanfox.com
KAPLAN FOX & KILSHEIMER LLP

*Counsel for plaintiff Gerald Manowitz and movant the VLK Group*

Catherine A. Torell
Email: ctorell@cmht.com
Steven Jeffrey Toll
Email: stoll@cmht.com
COHEN, MILSTEIN, HAUSFELD & TOLL, P.L.L.C.

*Counsel for plaintiff Stanley T. Bock*

Jack Gerald Fruchter
Email: JFruchter@FruchterTwersky.com
ABRAHAM FRUCHTER & TWERSKY LLP

David Avi Rosenfeld
Email: drosenfeld@lerachlaw.com
Mario Alba, Jr.
Email: malba@lerachlaw.com
Samuel Howard Rudman
Email: srudman@lerachlaw.com
LERACH, COUGHLIN, STOIA, GELLER, RUDMAN & ROBBINS, LLP

*Counsel for plaintiff Jonathan Glaubach and movant Doris Lee Ho*

Robert M. Roseman
Email: rroseman@srk-law.com
SPECTOR, ROSEMAN & KODROFF, P.C.

*Counsel for movant Marc A. Hembrough*

Catherine A. Torell
Email: ctorell@cmht.com
COHEN, MILSTEIN, HAUSFELD & TOLL, P.L.L.C.

*Counsel for movant Ramesh M. Singa*

Christine Schessler Poscablo
Email: CSPoscablo@kelleydrye.com
Kevin James Smith
Email: ksmith@kelleydrye.com
Mark Scott Gregory
Email: mgregory@kelleydrye.com
Thomas Benjamin Kinzler
Email: tkinzler@kelleydrye.com
KELLEY DRYE & WARREN, LLP

*Counsel for defendant Optionable Inc.*

Lawrence Robert Gelber
Email: gelberlaw@aol.com

*Counsel for defendant Kevin Cassidy*

Peter Joseph Pizzi
Email: ppizzi@connellfoley.com
CONNELL FOLEY LLP

*Counsel for defendant Albert Hemig*

s/ James S. Notis
James S. Notis (JN 4189)
GARDY & NOTIS, LLP
440 Sylvan Avenue, Suite 110
Englewood Cliffs, New Jersey 07632
Tel: 201-567-7377
Fax: 201-567-7337

2