**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re OPTIONABLE, INC. SECURITIES LITIGATION | ) ) ) ) ) DOCKET NUMBER: 07-cv-3753-LAK ) ) ) HON. LEWIS A. KAPLAN ) ) ) |

**KLD INVESTMENT MANAGEMENT LLC's SURREPLY IN RESPONSE TO NEW ISSUES RAISED ON REPLY BY MONARCH CAPITAL FUND, LTD.**

Presumptive Lead Plaintiff KLD Investment Management LLC ("KLD") respectfully requests leave to file this surreply memorandum to address new and unanticipated issues raised for the first time in the reply brief of Monarch Capital Fund Ltd. ("Monarch").  Courts in this Circuit have made it clear that they disfavor the raising of new issues on reply. *See, e.g.*, *Rowley v. City of New York*, 2005 U.S. Dist. LEXIS 22241 (S.D.N.Y. 2005); *United States v. Letscher,* 83 F. Supp. 2d 367, 377 (S.D.N.Y. 1999); *Domino Media, Inc. v. Kranis,* 9 F. Supp. 2d 374, 387 (S.D.N.Y. 1998). However, when new issues are raised in reply, the courts have also held that a surreply may be submitted to respond to the new issues. *Lee v. Coughlin,* 26 F. Supp. 2d 615, 617, n.2 (S.D.N.Y. 1998) (allowing plaintiff a chance to submit a surreply to a new issue raised in defendant's reply); *Dietz v. Damas*, 948 F. Supp. 198, 200 (E.D.N.Y. 1996) (defendants permitted to file a surreply after plaintiff raised new issues in their reply).  Here, after filing a 2-page opposition brief that did not cite a single case as authority, Monarch thereafter filed an 8-

1

page reply brief raising new issues for the first time.  For the reasons discussed herein, KLD will be prejudiced if it is not permitted to address these issues by filing this surreply.

Monarch, through its counsel Gardy & Notis ("Gardy"), attacks KLD's typicality based on nothing more than the fact that KLD is a sophisticated investor that does its own research on potential investments.  Gardy's argument fails.  The Private Securities Litigation Reform Act ("PSLRA") was expressly intended to invite large, sophisticated investors to seek to be lead plaintiffs in securities cases.  H.R. Conf. Rep. No. 104-369, at 32 (1995).  Monarch also makes a distasteful attack on the adequacy of KLD's choice of counsel, Kahn Gauthier Swick, LLC ("KGS").  In this Circuit, and others, courts—in deference to the express mandates of the PSLRA—do not disturb a lead plaintiff's selection of counsel except in the rarest of circumstances.  As discussed herein, KGS, KLD's choice of counsel is more than adequate.  *See*, *e.g.*, *In re Cavanaugh*, 306 F.3d 726, 734 (9th Cir. 2002); *In re Nortel Networks Corp. Sec. Litig.*, 2002 U.S. Dist. LEXIS 1633, *2 (S.D.N.Y. Feb. 4, 2002).

Monarch argues that KLD is subject to unique defenses "insofar as KLD's investment decisions are based on insider contact at the company rather than public information equally available to all other investors."  Monarch Reply at 3.  The fact that KLD, like many sophisticated investors and virtually all institutional investors, conducts its own due diligence does not subject it to any unique defenses.  The fraud on the market theory applies to KLD, just as it applies to the other member of the Class.  *See*, *e.g.*, *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 506 (9th Cir. 1992); In *re Data Access Sec. Litig.*, 843 F.2d 1537 (3d. Cir. 1988).  KLD is typical in this regard**.**  *See also Levie v. Sears*, 2007 U.S. Dist. LEXIS 52335 (N.D. Ill. July 17, 2007) ("[T]he roster of shareholders of every large, publicly traded corporation includes institutional investors, short-sellers, arbitragers, etc. The fact that these traders have divergent

motivations in purchasing shares should not defeat the fraud-on-the-market presumption absent convincing proof that price paid no part whatsoever in their decision making.")

In accordance with the fraud on the market doctrine, there is a presumption that the investor indirectly relied on the alleged misstatement by relying on the stock price set by the market. *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 506 (9th Cir. 1992). *See also Basic Inc. v. Levinson*, 485 U.S. 224, 249-50 (1988). The presumption applies "equally to 'a professional investor, the class members as amateurs, and indeed, those who choose stock by means of a ouija board or by throwing darts at the list.'" *Koladner v. Michael Stores*, 172 F.R.D. 200, 205 (N.D. Tex. 1997), quoting *Kolin v. American Plan Corp.*, 1986 U.S. Dist. LEXIS 27057, *26 (E.D.N.Y. April 8, 1986). In *Koladner*, the court held reliance can be presumed at the class certification stage and noted that a sophisticated investor who "gathers and evaluates information on his own" or even has "access to information not available to the general public" is a proper class representative, not subject to unique defenses. *Koladner*, 172 F.R.D. at 204-205. *See also Cross v. 21st Century Holding Co.*, 2004 U.S. Dist. LEXIS 2283, 00 Civ. 4333 (MBM)(S.D.N.Y. Feb. 18, 2004) ("Plaintiffs here have based their claim on the fraud-on-the-market theory and…there is no indication that [class representative's] sophistication means that his claim arises any less from the same course of events and raises the same legal liabilities as every other member of the putative class."). Thus, the presumption that KLD is the most adequate lead plaintiff has not been, and—on this record—cannot be, rebutted. KLD meets the threshold requirements of adequacy and typicality under Rule 23. *See*, *e.g.*, *Weinberg v. Atlas Air Worldwide Holdings, Inc.*, 216 F.R.D. 248, 252 (S.D.N.Y. 2003).

The PSLRA vests authority in the lead plaintiff to select and retain counsel to represent the Class, subject to the Court's approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v) and 15 U.S.C. §

77z-1(a)(3)(B)(v). Thus, this Court should not disturb lead plaintiff's choice of counsel unless necessary to "protect the interests of the class." 15 U.S.C. §78u(a)(3)(B)(iii)(II)(aa) and 15 U.S.C. § 77z-1(a)(3)(B)(iii)(II)(aa). In accordance with the statute, courts in this Circuit and others have made it clear that lead plaintiff's choice of counsel should be approved except in the rarest of circumstances. For example, the Ninth Circuit has held that, once appointed, the lead plaintiff's selection of class counsel is, in the absence of a choice of counsel facially incapable of prosecuting the action, to be respected, and that choice should be approved. *In re Cavanaugh*, 306 F.3d at 734. *See also In re Nortel Networks Corp. Sec. Litig.*, 2002 U.S. Dist. LEXIS at *2 ("Pursuant to the PSLRA, the Court should not disturb the lead plaintiff's choice of class counsel unless "necessary to protect the interests of the class." Statement of Managers, "The Private Securities Litigation Reform Act of 1995," 141 Cong. Rec. H13691-08, at H13700). *Accord, In re Cendant Corp. Litig.*, 264 F.3d 201, 274 (3d. Cir. 2001) ("the court should generally employ a deferential standard in reviewing the lead plaintiff's [choice of counsel].").

KGS is more than adequate to represent the class and its attorneys have significant experience with securities litigation. *See* Declaration of Kim E. Miller in Support of the Motion of KLD Investment Management, LLC to Consolidate Related Actions, to Appoint Lead Plaintiff and to Approve Proposed Lead Plaintiff's Choice of Counsel, ("Miller Decl.") at Ex. C. Monarch bases its distasteful attack on dicta in a recent, unpublished memorandum decision by Judge McMahon in *Bhojwani v. Pistiolis*, No. 06 Civ. 1361 (CM)(KNF) (S.D.N.Y. July 30, 2007). In that case, the indicted Milberg Weiss law firm and its proposed co-lead counsel Gardy argued for the first time on reply in the lead plaintiff briefing that KGS attorneys had overstated their role, in the firm resume, in two past cases (*In re Merck & Co. Sec. Litig.* and *Oxford Health Plans, Inc. Sec. Litig.*) — just as Gardy attempts to do again here.

4

In *Bhojwani,* KGS made the now-regrettable strategic choice not to seek leave to file a surreply in response to these distasteful *ad hominum* attacks on the lawyers because Gardy, *which had initially filed as co-counsel with KGS in the very same action*, and Milberg Weiss provided no evidentiary support for their claim. Selecting neither KGS's nor Milberg/Gardy's clients as lead plaintiff, Judge McMahon did not adopt the magistrate judge's report and recommendation on lead plaintiff. Without oral argument, the Court appointed, based on matters unrelated to the adequacy of chosen counsel, a different proposed lead plaintiff. The issue of counsel's adequacy was not reached. The court posed the same question raised by Milberg/Gardy about KGS's resume, but the language relating thereto was dicta lacking evidentiary support.

KGS had no opportunity to rebut Milberg/Gardy's claims in *Bhojwani*. As the Declaration of Lewis S. Kahn in Further Support of KLD Investment Management LLC's Motion for Appointment as Lead Plaintiff ("Kahn Decl.") demonstrates, the representations in KGS's resume as submitted in *Bhojwani v. Pistiolis, et al.*, 06-cv-13761 (S.D.N.Y.), concerning its role in *Merck,* are accurate. Attached to the Kahn Decl. as Ex. A is the February 26, 2004 order by Judge Kurt Englehardt appointing KGS as liaison counsel in the matter. After nearly two years of litigation in Louisiana where KGS was liaison counsel, and after further disclosures by Merck that led to the filing of additional lawsuits, the Judicial Panel on Multi-District Litigation transferred the Louisiana securities fraud case to the District of New Jersey—which KGS had noted at the time in its firm biography and website. *See* Kahn Decl at ¶ 2. Naturally, KGS—a firm with offices solely in Louisiana and New York—could not have been liaison counsel in New Jersey as it does not have an office in New Jersey. Therefore, Milberg/Gardy's argument in *Bhojwani* on this issue makes no sense.

As to the *Oxford* case, whatever disagreements Mr. Swick, the KGS partner at issue, and one of his former firms, Milberg Weiss, may have about the importance of his role in that long-resolved case do nothing to diminish Mr. Swick's years of experience as a plaintiffs' attorney in the securities class action arena. Of course, in *Bhojwani*, Gardy, who has professed no involvement in *Oxford*, merely adopted the argument of Milberg Weiss regarding this issue. In any event, in order to avoid an unnecessary sideshow regarding this truly distasteful issue, and to avoid the irrelevant parsing of resumes of the various firms in the plaintiffs' bar, KGS simply removed the references to the *Oxford* case from its resume. *See* Miller Decl. Ex. C.

Gardy's attack on KGS is particularly disingenuous in light of the fact that Gardy filed an initial complaint in the *Bhojwani* case with KGS, Kahn Decl. at Ex. B, but then switched allegiances to join forces with Milberg Weiss. Despite Gardy's bold representation in its reply brief that it "did not move for lead plaintiff in [*Bhojwani*]," Gardy indeed filed a motion for lead plaintiff in that case, along with Milberg Weiss. *See* Notice of Motion of the Top Tankers Investors Group for Consolidation, Appointment as Lead Plaintiff and Approval of Selection of Lead Counsel, attached to Kahn Decl. as Ex. C. Thereafter, Gardy had no qualms, just one week after attacking KGS in the *Bhojwani* reply brief, in joining with KGS to make a motion on behalf of proposed lead plaintiff in the *In re Hornbeck Securities Litig.*, 07-cv-408 (E.D. La.) (Kahn Decl. at Ex. D), or to continue to utilize KGS as its liaison counsel in the *Hornbeck* matter. *Id.* at Ex. E. If Gardy truly believed the argument it makes here, and that it made in *Bhojwani,* regarding KGS, it should not have made a motion with KGS in *Hornbeck* to be proposed co-lead counsel for the proposed lead plaintiff, and should not have agreed to an arrangement where KGS was ultimately selected as the liaison counsel in that action. *See* Kahn Decl. Ex. E (Stipulation dated May 1, 2007 and Order adopting Stipulation dated May 8, 2007).

Further, since KGS understands that lawyers routinely include cases on their resumes that they worked on while at their prior law firms, KGS, for instance, has no complaint that Mr. Gardy and Mr. Notis both include cases on Gardy's firm resume that were litigated while they were at their prior law firm, Abbey & Ellis (a.k.a. Abbey Gardy & Squitieri; a.k.a. Abbey Gardy, LLP; a.k.a Abbey Spanier Rodd & Abrams). Therefore, Mr. Notis' representations in Gardy's firm resume regarding his role in *BankAmerica* while at a prior firm should not give cause to question his veracity or integrity.[1]

In furtherance of its Rule 11 obligation to investigate prior to filing a complaint in this action, KGS issued a press release announcing its investigation and seeking information in accordance with Louisiana ethics rules. As Gardy did not file a complaint, it is unclear what the results of its investigation (if any) were, or if it instead relied upon the investigation of counsel, like KGS, who investigated and thereafter filed complaints. KLD retained KGS on or about July 2, 2007, the date of its certification, well after the initial complaint was filed by KGS and just prior to the statutory deadline for making a lead plaintiff motion.

The presumption that Lead Plaintiff KLD is the most adequate plaintiff has not been and cannot be rebutted. Therefore, KLD should be appointed lead plaintiff and, in accordance with the PSLRA and caselaw, lead plaintiff's choice of KGS as its counsel should be approved.

Dated:  August 10, 2007                                       Respectfully submitted,

---

[1] With regard to *In re ARAMARK Corp. S'holders Litig.*, Consol. C.A. No. 2117-N, Delaware Court of Chancery, Gardy notes that it was "lead or co-lead counsel," implying that it was responsible for the $266M settlement amount. However, as set forth in the stipulation of settlement, the litigation was just a "factor" taken into consideration for the price increase. See ARAMARK stipulation of settlement, Kahn Decl. Ex. F at p 3. As evidence of the firm's contribution in that case, the total attorneys' fee was "not to exceed $2.1 million in the aggregate." *See id*. at p. 10.

KAHN GAUTHIER SWICK, LLC

/s/ Kim E. Miller

Michael A. Swick (MS-9970)
Kim E. Miller (KM-9669)
12 East 41st Street, 12th Floor
New York, NY 10017
Telephone: (212) 696-3730
Facsimile: (504) 455-1498

-and-

KAHN GAUTHIER SWICK, LLC
Lewis S. Kahn
650 Poydras St., Suite 2150
New Orleans, Louisiana 70130
Telephone (504) 455-1400
Facsimile: (504) 455-1498

*Counsel for KLD Investment Management, LLC and Proposed Lead Counsel for the Class*

**CERTIFICATE OF SERVICE**

  I hereby certify that this Surreply was filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and paper copies will be sent to those indicated as non-registered participants on August 10, 2007.

                /s/ Kim E. Miller_____
                Kim E. Miller