also begun an inquiry into the company.

**These probes include looking at the possible grant of warrants to key Nymex energy traders as well as the company's decision not to disclose that its former chief executive, Kevin Cassidy, served prison time in the 1990s following a conviction for using money that should have been sent to the IRS for personal expenditures. Cassidy stepped down on May 1.**

Lawyers from the SEC's enforcement division also have looked at Optionable's relationship with Sleepy Hollow Coffee Roasters Inc., a coffee company that's jointly owned by Cassidy and President Ed O'Connor.

Just over a month ago, Optionable was trading for just under $7.50 a share and was sporting a $27 million investment from the Nymex in exchange for a 19 percent stake in the company.

But when BMO - which accounted for 30 percent of its business - disclosed a $400 million trading loss from bad valuations provided by Optionable, investors began bailing out. Soon after, its chairman and founder, Mark Nordlicht, unexpectedly resigned.

The rush by investors out of Optionable turned into a stampede when BMO said it was suspending its business relationship with the company. BMO later revised its trading loss to $618 million.

Then Nymex began making noises about suing to get its money back. A Nymex official who served on the board has stepped down. [Emphasis added].

51. On August 14, 2007, NYMEX announced it would write down $26 million of its $28.9 million investment in OPEX that quarter.

52. On November 13, 2007, Optionable reported in its 8-K that Defendant Helmig was terminated from Optionable effective November 6, 2007.

## DEFENDANTS' GAAP AND SEC VIOLATIONS

53. During the Class Period, defendants represented that Optionable's financial statements were prepared in conformity with GAAP. However, defendants used improper accounting practices in violation of GAAP and SEC reporting to artificially inflate the price of Optionable's stock.

54. As set forth in Financial Accounting Standards Board ("FASB") Statements of Concepts ("Statement") No. 1, one of the fundamental objectives of financial reporting is that it provide accurate and reliable information concerning an entity's financial performance during the period being presented. Statement No. 1, paragraph 42.

55. As set forth in SEC Rule 4-01(a) of SEC Regulation S-X, "[f]inancial statements filed with the [SEC] which are not prepared in accordance with [GAAP] will be presumed to be misleading or inaccurate." 17 C.F.R. § 210.4-01(a)(1). As noted by the AICPA professional standards, "the fair presentation of financial statements in conformity with GAAP is an implicit and integral part of management's responsibility."

### Defendants Materially Understated Business Volume Conducted with BMO

56. During the Class Period, Defendants failed to disclose that BMO actually accounted for roughly 80% or more of the Company's revenues. Accordingly, the financial vulnerability of BMO withdrawing its relationship with Optionable was materially understated.

57. According to paragraph 21 and 22 of Statements of Position ("SOP") No. 94-6, *Disclosure of Certain Significant Risks and Uncertainties*:

> Vulnerability from concentrations arises because an entity is exposed to risk of loss greater than it would have had it mitigated its risk through diversification. Such risks of loss manifest themselves differently, depending on the nature of the concentration, and vary in significance.
>
> Financial statements should disclose the concentrations described in paragraph .22 if, based on information known to management prior to issuance of the financial statements, all of the following criteria are met:
> a. The concentration exists at the date of the financial statements;
> b. The concentration makes the enterprise vulnerable to the risk of a near-term severe impact.
> c. It is at least reasonably possible that the events that could cause the severe impact will occur in the near term.

58. Defendants knew or recklessly disregarded that they were ignoring the guidance in SOP 94-6 concerning group concentrations. SOP 94-6 states that "[]Group concentrations exist if a number of counterparties or items that have similar economic characteristics collectively expose the reporting entity to a particular kind of risk." SOP 94-6 ¶ 22. Because Optionable earned revenues at the hand of BMO from the counterparty - the revenue earned from BMO must be doubled. These transactions alone equated to approximately 60% of Optionable revenues. Further, Optionable also earns incentive fees – paid to the Company from NYMEX. These fees are paid for directing these deals (a large portion of which were transacted with BMO) to NYMEX. As a result, approximately 80% (or more) of Optionable's 1Q revenues were directly related to BMO.

59. Defendants violated GAAP by failing to disclose the Company's vulnerabilities from concentrations arising from roughly 80% or more of the Company's revenues being attributable to BMO, its counterparties, and the resulting incentives.

### Violations of SEC Regulations

60. During the Class Period, Defendants violated SEC Rules by failing to disclose that revenue was not sustainable, as a result of its mispricing of deals with BMO. Defendants failed to disclose that OPEX's contribution to the Company's revenue "mix" would be diluted because BMO's contribution to Optionable's revenue was greater than the 30% reported – and was actually closer to 80% once incentives and counterparty transactions are taken into account.

61. Item 7 of Form 10-K and Item 2 of Form 10-Q, Management's Discussion and Analysis of Financial Condition and Results of Operations ("MD&A") require the issuer to furnish information required by Item 303 of Regulation S-K [17 C.F.R. 229.303]. In discussing results of operations, Item 303 of Regulation S-K requires the registrant to:

> [d]escribe any known trends or uncertainties that have had or that the registrant reasonably expects will have a material favorable or unfavorable impact on net sales or revenues or income from continuing operations.

62. The Instructions to Paragraph 303(a) further state:

> The discussion and analysis shall focus specifically on material events and uncertainties known to management that would cause reported financial information not to be necessarily indicative of future operating results . . .

63. The SEC, in its May 18, 1989 Interpretive Release No. 34-26831, has indicated that "a disclosure duty exists [under Item 303] where a trend, demand, commitment, event or uncertainty is both presently known to management and is reasonably likely to have a material effect on the registrant's financial condition or results of operations."

64. Nonetheless, Optionable's Class Period Forms 10-KSB and 10-QSB failed to disclose that the Company's resulting increases in revenue were not sustainable, as a result of, among other things, the mispricing of deals with BMO. The materiality of the mispricing is evidenced by the fact that the Company lost its largest customer BMO, lost several other customers and expected minimal future revenues from its brokerage services. The Company disclosed in the 10-QSB for 2Q:07, in pertinent part, the following:

> 1) the apparent loss of its most significant customer; 2) a decline in business from other brokerage customers which management believes is related to customer concerns over the events, and unfavorable publicity related thereto, which led to

the loss of its most significant customer . . . .

**The Company believes that revenues from its brokerage services will be minimal under its existing structure. While the Company is not discontinuing its brokerage services, it will most likely need to acquire the operations of a brokerage firm or firms, and hire their personnel, if it is to expand its current operations.** [Emphasis added].

65. Defendants failed to disclose that OPEX's contribution to the Company's revenue "mix" would be diluted because BMO's contribution to Optionable's revenue was greater than the 30% reported – and was actually closer to 80% once incentives and counterparty transactions are taken into account. Each of the foregoing factors were reasonably likely to have a material adverse effect on Optionable's operating results, and necessary for a proper understanding and evaluation of the Company's operating performance and an informed investment decision.

### Defendants Failed To Maintain Internal Controls Over Financial Reporting

66. Optionable suffered from a serious lack of internal controls and procedures in place as evidenced by the Company's failure to disclose Defendant Cassidy's criminal history, BMO's actual contribution to the Company's revenue, and Optionable's dramatic mispricing of options with BMO, among others. These failures to disclose clearly fail to evidence any purported "compliance with laws, rules and regulations, conflicts of interest, insider trading … reporting any illegal or unethical behavior, and compliance procedures."

67. Throughout the Class Period, Defendants misrepresented in each of Optionable's Form 10-KSB and 10-QSB filed with the SEC that the Company "prepares its financial statements in conformity with generally accepted accounting principles in the U.S." Moreover, in each Form 10-QSB and 10-KSB that Optionable filed with the SEC during the Class Period, the Individual Defendants certified Optionable's financial condition and internal controls over financial reporting.

68. Yet contrary to Defendants' "certifications" and SEC requirements, Defendants failed to implement and maintain adequate internal controls, thereby causing GAAP and SEC violations. The Company's internal control failures adversely and materially impacted the Company's future revenue and earnings prospects. Indeed, its internal control failures caused the Company (a) to lose its most significant customer; (b) to suffer a decline in business from other brokerage customers; and (c) to create a structure where the Company believes that the Company's revenues from its brokerage services will be minimal.

23

## CAUSATION AND ECONOMIC LOSS

69. During the Class Period, defendants engaged in a fraudulent scheme that misled the investing public, thereby inflating the price of the Company's securities, by publicly issuing materially false and misleading statements and omitting to disclose material facts necessary to make defendants' statements not false and misleading. The adverse true facts that Defendants caused to be concealed included, *inter alia*: that the Company significantly understated its reliance on BMO; that Optionable provided grossly mispriced trades for BMO transactions on the OPEX; that the Company's OPEX platform was not viable; and that the Company's CEO had multiple fraud-based felony convictions. When defendants' prior misrepresentations and fraudulent conduct were disclosed to the market, the prices of Optionable's securities fell precipitously as the prior artificial inflation came out. As a result of their purchases of Optionable's securities during the Class Period, Plaintiffs and the Class suffered economic loss, *i.e.*, damages under the federal securities laws.

70. Defendants' false and misleading statements had the intended effect and caused Optionable's common stock to trade at artificially inflated levels throughout the Class Period, reaching as high as $8.62 per share on February 13, 2007.

71. As a direct result of the truth being revealed through defendants' disclosures, articles, and press releases as described in detail herein, on April 27, 2007, May 9, 2007, and May 14, 2007, Optionable's common stock price fell precipitously (from an opening price of $7.20 on April 27 to a close of $5.65 on April 28, from an opening price of $3.015 on May 9 to a close of $0.845 on May 10, and finally from an open of $0.84 on May 11 to close at $0.425 on May 14). These drops removed the inflation from the price of Optionable's securities, causing real economic loss to investors who had purchased the Company's securities during the Class Period.

72. The more than 90% decline in the price of Optionable's common stock after these disclosures came to light was a direct result of the nature and extent of defendants' fraud finally being revealed to investors and the market. The timing and magnitude of Optionable's common stock price decline negates any inference that the loss suffered by Plaintiffs and the Class was caused by changed market conditions, macroeconomic or industry factors or Company-specific facts unrelated to the defendants' fraudulent conduct. The economic loss, *i.e.*, damages, suffered by Plaintiffs and the Class was a direct result of defendants' fraudulent scheme to artificially inflate the prices of

Optionable's securities and the subsequent significant decline in the value of Optionable's securities when defendants' prior misrepresentations and other fraudulent conduct were revealed.

73. During the same period in which Optionable's share price fell approximately 90% as a result of defendants fraud being revealed, the Standard & Poor's 500 securities index was relatively unchanged. The economic loss, i.e. damages suffered by Plaintiffs and other members of the Class, was a direct result of defendants' fraudulent scheme to artificially inflate the price of Optionable's stock and the subsequent significant decline in the value of the Company's shares when defendants' prior misstatements and other fraudulent conduct was revealed.

### Applicability of Presumption of Reliance: Fraud on the Market Doctrine

74. At all relevant times, the market for Optionable's securities was an efficient market for the following reasons, among others:

(a) Optionable's stock met the requirements for listing, and was listed and actively traded on the Over the Counter Bulletin Board ("OTCBB"), a highly efficient and automated market;

(b) As a regulated issuer, Optionable filed periodic public reports with the SEC and OTCBB;

(c) Optionable regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services, as well as through web-based communications via the Company website; and

(d) Trading during the Class Period reacted both to the Company's release of positive news, and to the disclosure of the fraud committed by the Company; the market promptly digest information, evidencing its efficiency. After the January 22, 2007 8-k and press release, for example, Optionable common stock rose almost 60% in two days from an opening price on January 22, 2007 of $4.11 per share to close on January 24, 2007 at $6.51 per share. Likewise, upon the news that BMO suspended all of its business relationships with Optionable pending the results of a full external review, the value of Optionable shares plummeted from an opening price of $4.79 on May 8, 2007 to a c losing price of $0.85 on May 10, 2007 – an 85% loss in value.

75. As a result of the foregoing, the markets for Optionable's securities promptly digested current information regarding Optionable from all publicly available sources and reflected such information

in the prices of the securities. Under these circumstances, all purchasers of Optionable's securities during the Class Period suffered similar injury through their purchase of Optionable's securities at artificially inflated prices and a presumption of reliance applies.

## CLASS ACTION ALLEGATIONS

76. Plaintiffs bring this action as a class action pursuant to Fed. R. Civ. P. Rule 23(a) and (b)(3) and behalf of a class consisting of all those who purchased the publicly-traded securities of Optionable between January 22, 2007 and May 14, 2007, inclusive, and who were damaged thereby (the "Class"). Excluded from the Class are defendants, officers and directors of the Company, members of their immediate families and their legal representatives, heirs, successors, or assigns and any entity in which defendants have or had a controlling interest. The members of the class are so numerous that joinder of all members is impracticable. Plaintiffs' claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law complained of herein. Plaintiffs will fairly and adequately protect the interests of the Class and have retained counsel competent and experienced in class and securities litigation. Common questions of law and fact predominate and include: (i) whether the securities laws were violated by defendants' acts as alleged herein; (ii) whether statements made by defendants to the investing public during the Class Period misrepresented material facts about the business and operations of Optionable; (iii) whether the prices of Optionable's publicly traded securities were artificially inflated during the Class Period; and (iv) to what extend the members of the Class have sustained damages and the proper measure of damages. Plaintiffs' claims are typical of those of the Class. Prosecution of individual actions would create a risk of inconsistent adjudications. Plaintiffs will adequately protect the interests of the Class. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## CLAIMS FOR RELIEF
### COUNT I
**Violations of 10(b) of the Exchange Act and Rule 10b-5 Against All Defendants**

77. Plaintiffs incorporate each and every allegation above as if stated herein.

78. During the Class Period, Defendants carried out a plan, scheme, and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public regarding Optionable's business, operations and management and the intrinsic value of Optionable's securities;

(ii) enable Defendants Cassidy, O'Connor, and Nordlicht to sell 10,758,886 shares of their personally-held Optionable stock for gross proceeds of nearly $29 million; and (iii) cause Plaintiffs and members of the Class to purchase Optionable's publicly traded securities at artificially inflated prices. In furtherance of this unlawful scheme defendants each took the actions set forth herein.

79. Defendants: (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Optionable's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

80. Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business, operations and future prospects of Optionable as specified herein.

81. These defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Optionable's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about Optionable and its business operations and future prospects in the light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of Optionable's securities during the Class Period.

82. Each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts: the Individual Defendants: (i) were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) by virtue of their responsibilities and activities as senior officers and/or directors of the Company were privy to and participated in the creation, development and reporting of the

Company's internal budgets, plans, projections and/or reports; (iii) enjoyed significant personal contact and familiarity with the other defendants and was advised of and had access to other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) were aware of the Company's dissemination of information to the investing public which they knew or recklessly disregarded was materially false and misleading.

83. Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Optionable's operating condition and future business prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by defendants' overstatements and misstatements of the Company's business, operations and earnings throughout the Class Period, defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover the truth.

84. As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market prices of Optionable's securities were artificially inflated during the Class Period. In ignorance of the fact that market prices of Optionable's publicly-traded securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by defendants, or upon the integrity of the market in which the securities trade, and/or on the absence of material adverse information that was known to or recklessly disregarded by defendants but not disclosed in public statements by defendants during the Class Period, plaintiff and the other members of the Class acquired Optionable's securities during the Class Period at artificially high prices and were damaged thereby.

85. At the time of said misrepresentations and omissions, Plaintiffs and the Class were ignorant of their falsity, and believed them to be true. Had Plaintiffs and the other members of the Class and the marketplace known the truth regarding Optionable's financial results, which were not disclosed by defendants, plaintiff and other members of the Class would not have purchased or otherwise acquired

their Optionable's securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

86. By virtue of the foregoing, defendants have violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

87. As a direct and proximate result of defendants' wrongful conduct, Plaintiffs and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

## COUNT II
### Violations of Section 20(a) of the Exchange Act Against the Individual Defendants

88. Plaintiffs repeat and reallege each and every allegation contained above.

89. The Individual Defendants acted as controlling persons of Optionable within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements which plaintiff contends are false and misleading. The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

90. Each defendant had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

91. Optionable and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' wrongful conduct, Plaintiffs and the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## COUNT III
### Violations of Section 20A of the Exchange Act Against Individual Defendants Cassidy, Nordlicht, and O'Connor

92. Plaintiff Boyer repeats and realleges each and every allegation contained above.

93. On or about April 10, 2007, Defendants Cassidy, Nordlicht, and O'Connor sold Optionable common stock contemporaneously with Plaintiff Boyer's purchases of common stock.

94. At the time of these contemporaneous purchases and sales, Defendants were in possession of material nonpublic information including that that the Company had provided false trading information to BMO; that BMO accounted for 80% or more of Optionable's revenues; that Cassidy had an undisclosed criminal history; that OPEX was not a viable trading platform; and that a D&T forensic audit was underway that would soon expose Defendants' fraud and wrongdoing.

95. Defendants Cassidy, Nordlicht, and O'Connor are liable to Plaintiff Boyer and the Class for their violations of Section 20A of the Exchange Act.

## BASIS OF ALLEGATIONS

Plaintiffs have alleged the foregoing based upon the investigation of Plaintiffs' Counsel, which included, *inter alia*, a review of SEC filings by Optionable, regulatory filings and reports, analysts' reports and advisories about the Company, press releases and other public statements issued by the Company, BMO, and NYMEX, and media reports about the Company, as well as interviews with persons with knowledge. Plaintiffs believe that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray for judgment declaring this action to be a proper class action; awarding damages, including interest; and such other relief as the Court may deem proper

## JURY TRIAL DEMANDED

Plaintiffs hereby demand a trial by jury.

Dated: January 17, 2008

KAHN GAUTHIER SWICK, LLC

Kim E. Miller (KM-6996)
12 East 41st Street, 12 Floor
New York, NY 10017
Telephone: (212) 696-3730

- and -

Lewis S. Kahn
650 Poydras Street, Suite 2150
New Orleans, LA  70130
Telephone: (504) 455-1400
Facsimile:  (504) 455-1498

**Lead Counsel for the Class**

# Exhibit A

May 14 2007 11:25AM   KEG GRAPHICS                 7148470726                    p.2

## CERTIFICATION IN SUPPORT OF APPLICATION FOR LEAD PLAINTIFF

Gregg A Boyer (name) ("plaintiff") declares, as to the claims asserted under the federal securities law, that:

1. Plaintiff has fully reviewed the facts of the complaint(s) filed in this action alleging violations of the securities laws and plaintiff is willing to serve as a lead plaintiff in this case and all other related cases that may be consolidated with it.

2. Plaintiff did not purchase securities of Optionable, Inc. at the direction of counsel or in order to participate in a private action under the federal securities laws.

3. Plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.

4. During the Class Period, plaintiff has executed transactions in the securities of Optionable, Inc. as follows. See Attached Schedule.

5. In the last three years, plaintiff has not sought to serve as a representative party on behalf of a class in an action filed under the federal securities laws, except as indicated herein.

6. Plaintiff will not accept payment for serving as a lead plaintiff beyond its pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the Class as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated: May 14, 2007

_____
Plaintiff

TD AMERITRADE - 88211278                                                                   05/14/2007 09:36 AM



# History & Statements

| Transactions | Statements | Confirmations | Tax Center |

**Type:** [All transactions types]
**Symbol(s):** OPBL — Symbol lookup
(separate symbols with commas)

**View last:** 1 day  7 days  14 days  60 days
**View date/range**
from: [October] [15] [2006]
to: [December] [31] [2006]   [View] or [Download]

**Account Balances**
10/15/2006 Cash balance   ---
12/31/2006 Cash balance   ---
**Net change**   ---

**Request Account Documents**
Duplicate statement
Duplicate trade confirmation(s)
Duplicate tax document
Annual trade summary

### Search results for 10/15/2006 to 12/31/2006

| Date/Time | Description | Amount | Net Cash Balance |
|---|---|---|---|
| 12/19/2006 | Bought 1000 OPBL @ 2.8 | -2,809.95 | --- |
| 12/20/2006 | Bought 500 OPBL @ 2.8 | -1,409.95 | --- |
| 12/20/2006 | Bought 500 OPBL @ 2.7 | -1,359.95 | --- |
| 12/26/2006 | Bought 500 OPBL @ 2.8 | -1,409.95 | --- |

Contact Us  |  TD AMERITRADE Holding Corp.
Minimum Requirements  |  Privacy  |  Security Center  |  Forms & Agreements

Unauthorized access and use is prohibited. Usage is monitored. TD AMERITRADE, Division of TD AMERITRADE, Inc., member NASD/SIPC. TD AMERITRADE is a trademark jointly owned by TD AMERITRADE IP Company, Inc. and The Toronto-Dominion Bank. © 2007 TD AMERITRADE IP Company, Inc. All rights reserved. Used with permission.

As your agreement for the receipt and use of market data provides, the securities markets (1) reserve all rights to the market data that they make available; (2) do not guarantee that data; and (3) shall not be liable for any loss due either to their negligence or to any cause beyond their reasonable control.

YOUR RECEIPT AND USE OF THIS SERVICE IS SUBJECT TO THE TERMS AND CONDITIONS OF YOUR ELECTRONIC AGREEMENT WITH TD AMERITRADE.

May 14 2007 11:26AM   KEG GRAPHICS                    7148470726                    p.5

TD AMERITRADE - 88211278                                                    05/14/2007 12:21 PM



## History & Statements

| Transactions | Statements | Confirmations | Tax Center |

**Account Balances**

1/1/2007 Cash balance   ---
3/16/2007 Cash balance  ---
Net change              ---

Type: All transaction types
Symbol(s): OPBL    Symbol lookup
(separate symbols with commas)

View last: 1 day  7 days  14 days  60 days
View date/range
from: January  1  2007
to:   March    16 2007    [View]  or  [Download]

Request Account Documents
Duplicate statement
Duplicate trade confirmation(s)
Duplicate tax document
Annual trade summary

### Search results for 1/1/2007 to 3/16/2007

| Date/Time | Description | Amount | Net Cash Balance |
|---|---|---|---|
| 01/05/2007 | Bought 500 OPBL @ 3.08 | -1,549.95 | --- |
| 01/08/2007 | Bought 500 OPBL @ 3.73 | -1,874.95 | --- |
| 01/10/2007 | Bought 500 OPBL @ 3.79 | -1,904.95 | --- |
| 01/11/2007 | Bought 1000 OPBL @ 3.85 | -3,859.95 | --- |
| 01/16/2007 | Bought 1000 OPBL @ 3.82 | -3,827.00 | --- |
| 01/18/2007 | Sold 1000 OPBL @ 3.81 | 3,802.88 | --- |
| 01/23/2007 | Bought 1000 OPBL @ 4.75 | -4,757.00 | --- |
| 01/23/2007 | Sold 1000 OPBL @ 4.95 | 4,942.84 | --- |
| 01/24/2007 | Bought 1000 OPBL @ 6.38 | -6,387.00 | --- |
| 01/25/2007 | Sold 200 OPBL @ 5.99 | 1,190.96 | --- |
| 01/25/2007 | Sold 800 OPBL @ 5.995 | 4,795.85 | --- |
| 01/25/2007 | Sold 1000 OPBL @ 6.15 | 6,142.81 | --- |
| 01/26/2007 | Bought 1000 OPBL @ 5.85 | -5,857.00 | --- |
| 01/29/2007 | Sold 250 OPBL @ 5.45 | 1,355.45 | --- |
| 01/29/2007 | Sold 750 OPBL @ 5.46 | 4,094.87 | --- |
| 01/30/2007 | Sold 1000 OPBL @ 5.545 | 5,537.82 | --- |
| 01/31/2007 | Bought 1000 OPBL @ 5.85 | -5,857.00 | --- |
| 02/01/2007 | Bought 1000 OPBL @ 6.1 | -6,107.00 | --- |

TD AMERITRADE - 88211278                                                05/14/2007 12:21 PM

| Date | Transaction | Amount | |
|---|---|---|---|
| 02/02/2007 | Sold 1000 OPBL @ 6.03 | 6,022.81 | --- |
| 02/05/2007 | Bought 1000 OPBL @ 6.08 | -6,087.00 | --- |
| 02/07/2007 | Bought 500 OPBL @ 5.8 | -2,907.00 | --- |
| 02/07/2007 | Sold 1000 OPBL @ 5.58 | 5,572.82 | --- |
| 02/07/2007 | Sold 1500 OPBL @ 5.5 | 8,242.74 | --- |
| 02/09/2007 | Bought 500 OPBL @ 6.73 | -3,372.00 | --- |
| 02/09/2007 | Bought 1000 OPBL @ 7.05 | -7,057.00 | --- |
| 02/09/2007 | Bought 1000 OPBL @ 7.14 | -7,147.00 | --- |
| 02/09/2007 | Sold 500 OPBL @ 6.975 | 3,480.39 | --- |
| 02/12/2007 | Bought 1000 OPBL @ 7.08 | -7,087.00 | --- |
| 02/13/2007 | Bought 1000 OPBL @ 8.745 | -8,752.00 | --- |
| 02/13/2007 | Bought 1000 OPBL @ 8.4 | -8,407.00 | --- |
| 02/13/2007 | Sold 1000 OPBL @ 8.15 | 8,142.74 | --- |
| 02/14/2007 | Bought 20 OPBL @ 8.435 | -175.70 | --- |
| 02/14/2007 | Bought 140 OPBL @ 8.51 | -1,191.40 | --- |
| 02/14/2007 | Bought 360 OPBL @ 8.515 | -3,065.40 | --- |
| 02/14/2007 | Bought 500 OPBL @ 8.52 | -4,267.00 | --- |
| 02/14/2007 | Bought 1000 OPBL @ 8.19 | -8,197.00 | --- |
| 02/14/2007 | Bought 1980 OPBL @ 8.44 | -16,711.20 | --- |
| 02/14/2007 | Sold 1000 OPBL @ 7.935 | 7,927.75 | --- |
| 02/14/2007 | Sold 1000 OPBL @ 7.94 | 7,939.75 | --- |
| 02/20/2007 | Bought 200 OPBL @ 8 | -1,607.00 | --- |
| 02/21/2007 | Bought 300 OPBL @ 7.9 | -2,377.00 | --- |
| 02/21/2007 | Bought 500 OPBL @ 7.78 | -3,897.00 | --- |
| 02/22/2007 | Sold 1000 OPBL @ 7.115 | 7,107.78 | --- |
| 02/22/2007 | Sold 1000 OPBL @ 7.11 | 7,109.78 | --- |
| 02/23/2007 | Bought 1000 OPBL @ 8.04 | -8,047.00 | --- |
| 02/23/2007 | Sold 1000 OPBL @ 7.89 | 7,882.75 | --- |
| 02/27/2007 | Bought 1000 OPBL @ 7.25 | -7,257.00 | --- |
| 02/27/2007 | Sold 1000 OPBL @ 7.78 | 7,772.76 | --- |
| 02/27/2007 | Sold 1000 OPBL @ 7.2 | 7,192.77 | --- |
| 02/28/2007 | Bought 500 OPBL @ 7.52 | -3,767.00 | --- |
| 02/28/2007 | Bought 500 OPBL @ 7.16 | -3,587.00 | --- |
| 03/01/2007 | Sold 2000 OPBL @ 7 | 13,992.57 | --- |
| 03/02/2007 | Bought 250 OPBL @ 6.95 | -1,744.50 | --- |
| 03/02/2007 | Bought 250 OPBL @ 6.85 | -1,719.50 | --- |

TD AMERITRADE - 88211278                                       05/14/2007 12:21 PM

| Date | Transaction | Amount | |
|---|---|---|---|
| 03/05/2007 | Bought 250 OPBL @ 6.655 | -1,670.75 | --- |
| 03/05/2007 | Sold 1250 OPBL @ 6.285 | 7,849.00 | --- |
| 03/05/2007 | Sold 2500 OPBL @ 6.55 | 16,367.49 | --- |
| 03/06/2007 | Bought 475 OPBL @ 6.92 | -3,287.00 | --- |
| 03/06/2007 | Bought 525 OPBL @ 6.885 | -3,621.63 | --- |
| 03/06/2007 | Bought 1000 OPBL @ 6.7 | -6,707.00 | --- |
| 03/07/2007 | Sold 1000 OPBL @ 6.49 | 6,482.80 | --- |
| 03/08/2007 | Bought 500 OPBL @ 6.38 | -3,197.00 | --- |
| 03/08/2007 | Sold 1000 OPBL @ 6.2 | 6,192.80 | --- |
| 03/09/2007 | Bought 100 OPBL @ 6.495 | -656.50 | --- |
| 03/09/2007 | Bought 400 OPBL @ 6.5 | -2,600.00 | --- |
| 03/09/2007 | Bought 500 OPBL @ 6.19 | -3,102.00 | --- |
| 03/13/2007 | Bought 250 OPBL @ 6.125 | -1,538.25 | --- |
| 03/13/2007 | Sold 500 OPBL @ 6.28 | 3,132.90 | --- |
| 03/14/2007 | Bought 250 OPBL @ 5.955 | -1,495.75 | --- |
| 03/14/2007 | Bought 250 OPBL @ 5.92 | -1,487.00 | --- |
| 03/14/2007 | Sold 750 OPBL @ 6.13 | 4,590.35 | --- |
| 03/16/2007 | Bought 250 OPBL @ 6.15 | -1,544.50 | --- |
| 03/16/2007 | Bought 250 OPBL @ 6.125 | -1,538.25 | --- |
| 03/16/2007 | Bought 250 OPBL @ 5.95 | -1,494.50 | --- |
| 03/16/2007 | Bought 500 OPBL @ 6.19 | -3,102.00 | --- |

Contact Us | TD AMERITRADE Holding Corp.
Minimum Requirements | Privacy | Security Center | Forms & Agreements

Unauthorized access and use is prohibited. Usage is monitored. TD AMERITRADE, Division of TD AMERITRADE, Inc., member NASD/SIPC. TD AMERITRADE is a trademark jointly owned by TD AMERITRADE IP Company, Inc. and The Toronto-Dominion Bank. © 2007 TD AMERITRADE IP Company, Inc. All rights reserved. Used with permission.

As your agreement for the receipt and use of market data provides, the securities markets (1) reserve all rights to the market data that they make available; (2) do not guarantee that data; and (3) shall not be liable for any loss due either to their negligence or to any cause beyond their reasonable control.

YOUR RECEIPT AND USE OF THIS SERVICE IS SUBJECT TO THE TERMS AND CONDITIONS OF YOUR ELECTRONIC AGREEMENT WITH TD AMERITRADE.

TD AMERITRADE - 88211278                                               05/14/2007 09:34 AM



# History & Statements

**Transactions** | Statements | Confirmations | Tax Center

Type: All transaction types
Symbol(s): OPBL    Symbol lookup
(separate symbols with commas)

View last: 1 day  7 days  14 days  60 days
View date/range
from: March 15 2007
to:   May 14 2007    View  or  Download

**Account Balances**
3/15/2007 Cash balance   ---
5/14/2007 Cash balance   -$5,699.64
Net change               ---

Request Account Documents
Duplicate statement
Duplicate trade confirmation(s)
Duplicate tax document
Annual trade summary

Search results for 3/15/2007 to 5/14/2007

| Date/Time | Description | Amount | Net Cash Balance |
|---|---|---|---|
| 03/16/2007 | Bought 250 OPBL @ 6.15 | -1,544.50 | --- |
| 03/16/2007 | Bought 250 OPBL @ 6.125 | -1,538.25 | --- |
| 03/16/2007 | Bought 250 OPBL @ 5.95 | -1,494.50 | --- |
| 03/16/2007 | Bought 500 OPBL @ 6.19 | -3,102.00 | --- |
| 03/19/2007 | Bought 750 OPBL @ 5.94 | -4,462.00 | --- |
| 03/19/2007 | Sold 1000 OPBL @ 5.81 | 5,802.91 | --- |
| 03/19/2007 | Sold 1000 OPBL @ 5.651 | 5,643.91 | --- |
| 03/20/2007 | Bought 250 OPBL @ 5.25 | -1,319.50 | --- |
| 03/20/2007 | Bought 250 OPBL @ 5.39 | -1,354.50 | --- |
| 03/20/2007 | Bought 250 OPBL @ 5.05 | -1,269.50 | --- |
| 03/20/2007 | Bought 250 OPBL @ 4.95 | -1,244.50 | --- |
| 03/20/2007 | Sold 1500 OPBL @ 5.25 | 7,867.87 | --- |
| 03/21/2007 | Bought 250 OPBL @ 5.65 | -1,419.50 | --- |
| 03/21/2007 | Sold 500 OPBL @ 5.88 | 2,932.95 | --- |
| 03/22/2007 | Bought 250 OPBL @ 5.85 | -1,469.50 | --- |
| 03/22/2007 | Bought 250 OPBL @ 6.09 | -1,529.50 | --- |
| 03/22/2007 | Bought 250 OPBL @ 6.02 | -1,512.00 | --- |
| 03/26/2007 | Bought 250 OPBL @ 6.42 | -1,612.00 | --- |

https://wwws.ameritrade.com/cgi-bin/apps/Main                          Page 1 of 3

TD AMERITRADE - 88211278

05/14/2007 09:34 AM

| Date | Transaction | Amount | |
|---|---|---|---|
| 03/26/2007 | Bought 250 OPBL @ 6.47 | -1,624.50 | --- |
| 03/26/2007 | Bought 500 OPBL @ 6.27 | -3,142.00 | --- |
| 03/27/2007 | Sold 500 OPBL @ 6.34 | 3,162.95 | --- |
| 03/28/2007 | Bought 250 OPBL @ 5.955 | -1,495.75 | --- |
| 03/28/2007 | Sold 500 OPBL @ 6.14 | 3,062.95 | --- |
| 03/28/2007 | Sold 750 OPBL @ 5.94 | 4,447.93 | --- |
| 03/29/2007 | Bought 500 OPBL @ 6.38 | -3,197.00 | --- |
| 04/05/2007 | Bought 200 OPBL @ 7.05 | -1,417.00 | --- |
| 04/05/2007 | Bought 500 OPBL @ 6.44 | -3,227.00 | --- |
| 04/05/2007 | Sold 500 OPBL @ 6.65 | 3,317.94 | --- |
| 04/09/2007 | Bought 250 OPBL @ 6.82 | -1,712.00 | --- |
| 04/10/2007 | Bought 50 OPBL @ 7.17 | -358.50 | --- |
| 04/10/2007 | Bought 100 OPBL @ 7.155 | -722.50 | --- |
| 04/11/2007 | Sold 600 OPBL @ 6.99 | 4,186.93 | --- |
| 04/12/2007 | Bought 250 OPBL @ 6.65 | -1,669.50 | --- |
| 04/13/2007 | Bought 250 OPBL @ 7.04 | -1,767.00 | --- |
| 04/16/2007 | Bought 250 OPBL @ 6.4 | -1,607.00 | --- |
| 04/19/2007 | Bought 250 OPBL @ 6.5 | -1,632.00 | --- |
| 04/23/2007 | Bought 300 OPBL @ 6.2 | -1,867.00 | --- |
| 04/24/2007 | Bought 250 OPBL @ 6.27 | -1,567.50 | --- |
| 04/24/2007 | Sold 250 OPBL @ 6.28 | 1,562.97 | --- |
| 04/27/2007 | Bought 200 OPBL @ 6.59 | -1,325.00 | --- |
| 04/30/2007 | Bought 300 OPBL @ 5.81 | -1,750.00 | --- |
| 05/01/2007 | Bought 200 OPBL @ 5.4 | -1,087.00 | --- |
| 05/02/2007 | Sold 500 OPBL @ 4.67 | 2,327.96 | --- |
| 05/02/2007 | Sold 1000 OPBL @ 4.91 | 4,902.92 | --- |
| 05/03/2007 | Sold 1500 OPBL @ 4.27 | 6,397.90 | --- |
| 05/04/2007 | Bought 500 OPBL @ 4.25 | -2,132.00 | --- |
| 05/07/2007 | Bought 500 OPBL @ 4.63 | -2,322.00 | --- |
| 05/14/2007 09:16:09 | Sold 2500 OPBL @ 3.038 | 7,586.63 | --- |
| 05/14/2007 09:16:15 | Bought 1500 OPBL @ 3.11 | -4,672.00 | --- |
| 05/14/2007 09:17:51 | Sold 2500 OPBL @ 1.31 | 3,267.94 | --- |

Contact Us | TD AMERITRADE Holding Corp.
Minimum Requirements | Privacy | Security Center | Forms & Agreements

Unauthorized access and use is prohibited. Usage is monitored. TD AMERITRADE, Division of TD AMERITRADE, Inc., member NASD/SIPC. TD AMERITRADE is a