UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------X
                                          :
In re OPTIONABLE SECURITIES               :        07 Civ. 3753 (LAK)
LITIGATION                                :
                                          :
                                          :
--------------------------------------------------------------X


# MEMORANDUM OF LAW IN SUPPORT OF
## MARK NORDLICHT'S MOTION TO DISMISS THE
## CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

Eliot Lauer
Daniel R. Marcus
Rachael Yocum
**CURTIS, MALLET-PREVOST, COLT**
 **& MOSLE LLP**
101 Park Avenue
New York, New York  10178-0061
Tel:  (212) 696-6000
Fax:  (212) 697-1559

*Attorneys for Defendant Mark Nordlicht*

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT .................................................................................... 1

STATEMENT OF FACTS........................................................................................ 4

ARGUMENT ......................................................................................................... 6

    I.    PLAINTIFFS FAIL TO STATE A CLAIM AGAINST  NORDLICHT UNDER SECTION 10(b) OF THE EXCHANGE ACT ........................................ 6

        A.    The Complaint Fails to Adequately Plead Any  Material Misstatements or Omissions by Nordlicht.................................................. 6

            (i)    Optionable Fully and Accurately Disclosed the Proportion of Revenue It Received From BMO ............................................... 7

            (ii)    The Non-Disclosure of Cassidy's Convictions Does Not Give Rise to a Claim Under Section 10(b) ..................................... 9

            (iii)    Plaintiffs Fail to Plead Any Facts to Support the Allegation that OPEX Was a "Sham" that Enabled Optionable to Commit Fraud .............................................................................. 10

            (iv)    The Statements Regarding Optionable's Code of Business and Ethics Were Not False and Misleading.................................. 14

        B.    The Complaint Fails to Adequately Plead that Nordlicht Acted with Scienter .............................................................................. 14

    II.    PLAINTIFFS FAIL TO STATE A CONTROL PERSON CLAIM AGAINST NORDLICHT UNDER SECTION 20(a) OF THE EXCHANGE ACT............................................................................................... 18

    III.    THE COMPLAINT FAILS TO STATE A CLAIM AGAINST NORDLICHT UNDER SECTION 20A OF THE EXCHANGE ACT ................ 22

CONCLUSION .................................................................................................. 25

# TABLE OF AUTHORITIES

**Page**

**Cases**

Acito v. IMCERA Group, Inc.,
    47 F.3d 47 (2d Cir. 1995)..................................................................................... 16

Backman v. Polaroid Corp.,
    910 F.2d 10 (1st Cir. 1990)................................................................................... 10

Boguslavsky v. Kaplan,
    159 F.3d 715 (2d Cir. 1998).................................................................................. 19

Brody v. Transitional Hospitals Corp.,
    280 F.3d 997 (9th Cir. 1997) ........................................................................... 24, 25

Buban v. O'Brien,
    No. 94-0331, 1994 WL 324093 (N.D. Cal. Jun. 22, 1994)..................................... 23

Cortec Indus., Inc. v. Sum Holding L.P.,
    949 F.2d 42 (2d Cir. 1991)...................................................................................... 4

Davidoff v. Farina,
    No. 04-7617, 2005 WL 2030501 (S.D.N.Y. Aug. 22, 2005).............................. 13, 20

DeMarco v. Robertson Stephens Inc.,
    318 F. Supp. 2d 110 (S.D.N.Y. 2004).................................................................... 23

I. Meyer Pincus & Assocs., P. C. v. Oppenheimer & Co.,
    936 F.2d 759 (2d Cir. 1991).................................................................................... 4

In re Advanta Corp. Secs. Litig.,
    180 F.3d 525 (3d Cir. 1999)................................................................................... 18

In re AOL Time Warner,
    381 F. Supp. 2d 192 (S.D.N.Y. 2004).................................................................... 20

In re Axis Capital Holdings Ltd. Sec. Litig.,
    456 F. Supp. 2d 576 (S.D.N.Y. 2006).................................................................... 12

In re Bayer AG Sec. Litig.,
    2004 WL 2190357 .............................................................................................. 21

In re BISYS Securities Litigation,
    397 F. Supp. 2d 430 (S.D.N.Y. 2005).................................................................... 12

In re Deutsche Telekom AG Sec. Litig.,
    No. 00 Cv. 9475 (SHS), 2002 WL 244597 (S.D.N.Y. Feb. 20, 2002) .................... 20

In re eSpeed, Inc. Sec. Litig.,
    475 F. Supp. 2d 266 (S.D.N.Y. 2006).................................................................... 10

In re GeoPharma, Inc. Sec. Litig.,
    No. 04-9463 (SAS), 2005 WL 2431518 (S.D.N.Y. Sept. 30, 2005) ....................... 19

In re Gilat Satellite Networks, Ltd.,
    No. 02-1510, 2005 WL 2277476 (E.D.N.Y. Sept. 19, 2005) ................................. 10

In re Global Crossing, Ltd., Sec. Litig.,
    322 F. Supp. 2d 319 (S.D.N.Y. 2004).................................................................. 20, 21

In re Global Crossing, Ltd., Sec. Litig,
    No. 02-910 (GEL), 2005 WL 1907005 (S.D.N.Y. Aug. 8, 2005) ........................... 20

In re Health Mgmt Sys., Inc. Sec. Litig.,
    No. 97-1865, 1998 WL 283286 (S.D.N.Y. June 1, 1998) ...................................... 14

In re Initial Public Offering Sec. Litig.,
   241 F. Supp. 2d 281 (S.D.N.Y. 2003)..................................................................... 12, 20

In re Interpublic Sec. Litig.,
   No. 02-6527 (DLC), 2003 WL 21250682 (S.D.N.Y. May 29, 2003)........................ 15

In re Livent Sec. Litig.,
   78 F. Supp. 2d 194 (S.D.N.Y. 1999)....................................................................... 22

In re Merrill Lynch & Co.,
   273 F. Supp. 2d 351 (S.D.N.Y. 2003)....................................................................... 4

In re MTC Elec. Techs. Shareholders Litig.,
   898 F. Supp. 974 (E.D.N.Y. 1995)........................................................................... 6

In re Nokia Oyj (Nokia Corp.) Sec. Litig.,
   423 F. Supp. 2d 364 (S.D.N.Y. 2006)..................................................................... 10

In re Oxford health Plan Sec. Litig.,
   187 F.R.D. 133 (S.D.N.Y. 1999) ........................................................................... 25

In re Parmalat Sec. Litig.,
   497 F. Supp. 2d 526 (S.D.N.Y. 2007)..................................................................... 20

In re Parmalat Sec. Litig.,
   375 F. Supp. 2d 278 (S.D.N.Y. 2005)..................................................................... 20

In re Sierra Wireless, Inc. Sec. Litig.,
   482 F. Supp. 2d 365 (S.D.N.Y. 2007)................................................................ 12, 13

In re Twinlab Corp. Sec. Litig.,
   103 F. Supp. 2d 193 (E.D.N.Y. 2000) ................................................................... 22

In re Verifone Sec. Litig.,
   784 F. Supp. 1471 (N.D. Cal. 1992), aff'd 11 F.3d 856 (9th Cir. 1993) ................ 25

In re Yukos Oil Co. Securities Litigation,
   No. 04-5243 (WHP), 2006 WL 3026024 (S.D.N.Y. Oct 25, 2006) ....................... 20

Jackson v. National Life Insurance Co. v. Merrill Lynch & Co.,
   32 F.3d 697 (2d Cir. 1994)..................................................................................... 23

Kalin v. Xanboo, Inc.,
   No. 04-5931 (KMK), 2007 WL 273546 (S.D.N.Y. Jan. 31, 2007) ......................... 20

Lanza v. Drexel & Co.,
   479 F.2d 1277 (2d Cir. 1973).................................................................................. 20

Marcus v. Frome,
   275 F. Supp. 2d 496 (S.D.N.Y. 2003)..................................................................... 15

Miller v. Lazard,
   473 F. Supp. 2d 571 (S.D.N.Y. 2007)..................................................................... 13

Mishkin v. Ageloff,
   No. 97-2690 (LAP), 1998 WL 651065 (S.D.N.Y. Sept. 23, 1998) .................... 20, 21

Novak v. Kosaks,
   216 F.3d 300 (2d Cir. 2000).............................................................................. 12, 16

Rombach v. Chang,
   355 F.3d 164 (2d Cir. 2004).................................................................................... 19

Ronconi v. Larkin,
   253 F.3d 423 (9th Cir. 2001) .................................................................................. 18

Schick v. Ernst & Young,
    141 F.R.D. 23 (S.D.N.Y. 1992) ........................................................... 14

SEC v. First Jersey Sec., Inc.,
    101 F.3d 1450 (2d Cir. 1996), cert. denied, 522 U.S. 812 (1997) ........... 19

SEC v. Texas Gulf Sulphur Co.,
    401 F.2d 833 (2d Cir. 1968), cert. denied, 394 U.S. 976 (1969) ............. 10

Shapiro v. Cantor,
    123 F.3d 717 (2d Cir. 1997) .................................................................. 6

Shields v. Citytrust Bancorp, Inc.,
    25 F.3d 1124 (2d Cir. 1994) .................................................................. 16

Tellabs, Inc. v. Makor Issues & Rights, Ltd.,
    127 S. Ct. 2499, 168 L.Ed.2d 179 (2007) ............................................. 15

Wilson v. Comtech Telecommunications Corp.,
    648 F.2d 88 (2d Cir. 1981) .............................................................. 23, 25

Winkler v. NRD Mining, Ltd.,
    198 F.R.D. 355 (E.D.N.Y. 2000) ........................................................... 6

Wright v. Ernst & Young LLP,
    152 F.3d 169 (2d Cir. 1998) .................................................................. 6


**Statutes**

15 U.S.C. § 78t-1 ......................................................................... 19, 23

15 U.S.C. § 78u-4 .................................................................... 6, 12, 15

17 C.F.R. § 228.401 ............................................................................ 9

17 C.F.R. § 229.401 ............................................................................ 9

Fed. R. Civ. P. 9(b) ............................................................................ 1

## PRELIMINARY STATEMENT

Plaintiffs in this putative class action assert three claims under the Securities Exchange Act of 1934 against Optionable, Inc. ("Optionable"), several of Optionable's executives, and Optionable's former non-executive chairman Mark Nordlicht. The claims against Nordlicht are: (i) a securities fraud claim under Section 10(b) based on alleged misstatements in Optionable's 2006 Form 10-KSB (the only statement attributable to Nordlicht); (ii) a "control person" claim under Section 20(a) that seeks to hold Nordlicht vicariously liable for the alleged securities fraud committed by Optionable; [1] and (iii) a claim under Section 20A, which seeks to hold Nordlicht liable for selling stock while allegedly in possession of material nonpublic information regarding Optionable.

As set forth below, the Consolidated Amended Class Action Complaint ("Complaint") fails to satisfy the pleading requirements of Fed. R. Civ. P. 9(b) and the Private Securities Litigation Reform Act ("PSLRA") with respect to each of the three claims against Nordlicht. Accordingly, the Complaint should be dismissed as against Nordlicht.

*Plaintiffs Fail to Plead Facts that State a Claim Under Section 10(b)*

Only one of the public statements made by Optionable – the company's 2006 Form 10-KSB – is attributed to Nordlicht, and although Plaintiffs allege in conclusory fashion that the 2006 10-KSB contained material misstatements and omissions, Plaintiffs fail to set forth particularized facts as required under Rule 9(b) and the PSLRA. Furthermore, Plaintiffs' Section 10(b) claim against Nordlicht fails because the Complaint does not plead particularized facts

---

[1] As set forth in Defendant Optionable, Inc.'s Memorandum in Support of Motion to Dismiss, which Nordlicht hereby incorporates by reference, Plaintiffs fail to plead an underlying violation of Section 10(b) by Optionable.

sufficient to raise an inference – and certainly not a strong inference – that Nordlicht acted with an intent to defraud, as required by the PSLRA. Plaintiffs make several conclusory allegations regarding "Defendants" as a group, but allege no substantive facts demonstrating that Nordlicht as an individual acted with scienter. With respect to the one statement in the Complaint attributed to Nordlicht – the 2006 Form 10-KSB – Plaintiffs allege no facts indicating that Nordlicht had any knowledge that statements contained within the 10-KSB were in any way false or misleading.

Similarly, Plaintiffs' allegations regarding Nordlicht's sale of stock to NYMEX Holdings, Inc. ("NYMEX") fail to raise a strong inference that Nordlicht acted with scienter, *i.e.*, with an intent to defraud, since it is clear that maximizing his own immediate profit was not Nordlicht's primary motivation for the transaction. This sale of stock – at a price well below the market price at the time – was part of a corporate transaction involving Optionable and NYMEX, pursuant to which NYMEX committed to, *inter alia*, hosting Optionable's OPEX trading platform in NYMEX's data center, working with Optionable to interconnect OPEX with NYMEX's own electronic gateway to trading and clearing services, and developing a joint marketing plan to benefit Optionable and NYMEX. Following the sale to NYMEX, Nordlicht retained substantial ownership of Optionable stock and made no sales of stock, even as Optionable's stock price more than doubled during the class period.

*The Complaint Fails to Plead a Control Person Claim Against Nordlicht*

Plaintiffs' control person claim against Nordlicht fails because Plaintiffs do not plead an underlying violation of Section 10(b) by Optionable, the entity allegedly controlled by Nordlicht. The control person claim also fails because Plaintiffs have not adequately pleaded that Nordlicht was a culpable participant in any alleged violation of Section 10(b) by Optionable.

The Complaint contains no facts showing that Nordlicht, who was the <u>non-executive</u> chairman of Optionable's board of directors for much of the class period, participated in – or even knew of – any alleged fraud at Optionable.

*Plaintiffs Cannot State a Claim Under Section 20A*

Plaintiffs' claim under Section 20A fails for several reasons:

*First*, because the Complaint does not adequately plead an underlying violation of the Exchange Act against Nordlicht (<u>see</u> pp. 6-27, <u>infra</u>), there can be no claim under Section 20A against him.

*Second*, no member of the Class has standing to assert a Section 20A claim against Nordlicht. Section 20A provides a private right of action to persons who purchase a particular security "contemporaneously" with sales by company insiders who possess material nonpublic information. However, the right to seek damages under Section 20A is limited to persons who could have purchased the shares that were sold by the insiders. In this case, the shares sold by Nordlicht could <u>not</u> have been purchased by members of the Class because Nordlicht's shares were not traded in the open market; rather, those shares were sold through a private purchase agreement between Nordlicht and NYMEX Holdings, Inc. ("NYMEX") – at a price significantly below the market price. Because no member of the Class could possibly have traded with Nordlicht, Plaintiffs lack standing to assert a Section 20A claim.

*Third*, the Section 20A claim against Nordlicht fails because Plaintiff Boyer's purchases of Optionable stock were not "contemporaneous" with Nordlicht's sales. Nordlicht contracted to sell his shares – and NYMEX contracted to purchase the shares – on January 22, 2007, nearly three months prior to Plaintiff Boyer's purchases. The fact that Nordlicht's shares may have been transferred to NYMEX on April 10, 2007 (the date on which Plaintiff Boyer

allegedly purchased shares of Optionable), does not make his sale contemporaneous with Plaintiff Boyer's open-market purchases. Because Plaintiff Boyer's purchases were not contemporaneous with Nordlicht's sales, Boyer cannot assert a claim against Nordlicht under Section 20A.

## STATEMENT OF FACTS

As reflected in the Complaint and in Optionable's public filings,[2] Optionable is an energy derivatives brokerage based in Valhalla, New York. (See Complaint ¶ 5). The Company provides services to a range of market participants worldwide, including brokerage firms, financial institutions, energy traders, and hedge funds. (See id.).

Mark Nordlicht is an investment adviser who manages several hedge funds. Though Nordlicht served as chairman of Optionable's board of directors during much of the four-month class period, he was never employed by Optionable, never served in an executive capacity at the company, and was not involved in the company's day-to-day operations during the class period.

On January 22, 2007, Optionable, along with its then-CEO Kevin Cassidy, its President Ed O'Connor, and Nordlicht, entered into a binding term sheet with NYMEX, pursuant to which NYMEX agreed to cooperate with Optionable in building Optionable's business, and Messrs. Nordlicht, Cassidy and O'Connor sold to NYMEX 19% of Optionable's common stock at a per-share price of $2.69. (See Complaint ¶ 9, attached as Exhibit A to the Affidavit of Eliot Lauer ("Lauer Aff."); Lauer Aff., Exh. 2 (Form 8-K dated January 22, 2007)). On April 10,

---

[2]  In support of the memorandum, Nordlicht relies not only on the allegations contained in Plaintiffs' complaint, but on various public filings which this Court may consider on a motion to dismiss.  See Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 48 (2d Cir. 1991); I. Meyer Pincus & Assocs., P. C. v. Oppenheimer & Co., 936 F.2d 759, 762 (2d Cir. 1991); In re Merrill Lynch & Co., 273 F. Supp. 2d 351 (S.D.N.Y. 2003). Nordlicht submits these public filings as exhibits attached to the Affidavit of Eliot Lauer ("Lauer Aff.").

2007, Nordlicht, Cassidy, and O'Connor formally transferred the shares that they had agreed to sell to NYMEX in January. (See Complaint ¶ 25).

On March 23, 2007, Optionable issued its 2006 Form 10-KSB. (See Complaint ¶ 13). That 10-KSB, which was signed by Nordlicht and several other Optionable officers and directors, is the only statement contained in the Complaint that is attributed to Nordlicht. Plaintiffs allege that the 2006 10-KSB contains several material misstatements and omissions.

On April 27, 2007, Optionable's largest customer, Bank of Montreal ("BMO"), announced in a press release that it had experienced losses estimated between $350 million to $450 million (Canadian dollars). (See Complaint ¶ 34). On May 8, 2007, BMO announced it was suspending its business relationship with and its trading through Optionable "pending the results of a full external review of certain trading losses incurred by BMO." (Complaint ¶ 39). On May 10, a newspaper article highlighted BMO's then-estimated $350 million to $450 million (Canadian dollars) of trading losses and described a report issued to BMO in late April 2007 by Deloitte and Touche LLP ("Deloitte"). (See Complaint ¶ 43). In the May 10 news article, an anonymous source who was purportedly "familiar with the report" stated that the Deloitte report indicated that there had been "serious mismarking" of BMO's book of natural gas options, and that an "*some* of the prices in BMO's mismarked book of trades were provided" by Optionable. See id. (emphasis added).

The Complaint, however, is devoid of any facts indicating that any of BMO's losses occurred because of anything Optionable did, or because anyone at Optionable intentionally or recklessly provided unreliable quotes to BMO.

**ARGUMENT**

I.    **PLAINTIFFS FAIL TO STATE A CLAIM AGAINST
      NORDLICHT UNDER SECTION 10(b) OF THE EXCHANGE ACT**

    A.    **The Complaint Fails to Adequately Plead Any
            Material Misstatements or Omissions by Nordlicht**

        The PSLRA requires that "the complaint shall specify each statement alleged to

have been misleading, the reason or reasons why the statement is misleading, and, if an

allegation regarding the statement or omission is made on information and belief, the complaint

shall state with particularity all facts on which that belief is formed . . ." 15 U.S.C. § 78u-4(b)(1).

In order to state a claim for a primary securities violation, "the misrepresentation must be

attributed to that specific actor at the time of public dissemination." Wright v. Ernst & Young

LLP, 152 F.3d 169, 175 (2d Cir. 1998); see also Shapiro v. Cantor, 123 F.3d 717, 720-21 (2d

Cir. 1997); Winkler v. NRD Mining, Ltd., 198 F.R.D. 355, 366 (E.D.N.Y. 2000).  Allegations

that a defendant "was responsible" for another person's false misrepresentation are not sufficient

to state a claim for a primary securities fraud violation.  As the Second Circuit has held:

> A defendant must actually make a false or misleading statement in
> order to be held liable under Section 10(b).  Anything short of such
> conduct is merely aiding and abetting, and no matter how
> substantial that aid may be, it is not enough to trigger liability
> under Section 10(b).

Shapiro, 123 F.3d at 720 (quoting In re MTC Elec. Techs. Shareholders Litig., 898 F. Supp. 974,

987 (E.D.N.Y. 1995)).

        In this case, there is only one public statement – Optionable's 2006 Form 10-KSB

– that is actually attributed to Nordlicht.  (See Complaint ¶ 13-24).  And while Nordlicht did

indeed sign Optionable's 2006 10-KSB, two of the alleged misstatements within the 10-KSB are

directly attributed to persons other than Nordlicht.  (See id. ¶¶ 19, 23).  Specifically, Item 8A

("Controls and Procedures") and the Certifications "Pursuant to Section 302 of the Sarbanes-

Oxley Act of 2002" are attributed directly and exclusively to Optionable's then-CEO Kevin

Cassidy and its CFO Marc-Andre Boisseau. (See id.). Accordingly, there are only four alleged

misstatements contained in the 2006 10-KSB that are attributable to Nordlicht. Those alleged

misstatements are:

> (i) the statement that BMO accounted for 24% and 18% of Optionable's revenues during 2006 and 2005, respectively, which is alleged to be false and misleading because, according to the Complaint, "BMO actually accounted for roughly 80% or more of the Company's revenues" (Id. ¶¶ 13-14; 61, 64);
>
> (ii) the biography of Optionable's then-CEO Kevin Cassidy, which did not disclose that Cassidy had been convicted of credit card fraud in 1997 and tax evasion in 1993 (see id. at ¶¶ 15-16);
>
> (iii) statements regarding OPEX, Optionable's electronic brokerage platform, which are alleged to be "materially false and misleading" because, according to Plaintiffs, OPEX was "not a viable platform" and "enabled defendants to commit fraud" through the "mispricing of options for BMO" (Id. at ¶¶ 17-18); and
>
> (iv) the statement regarding Optionable's Code of Business Conduct and Ethics, which is alleged to have been "materially false and misleading when made because there were insufficient controls and procedures in place as evidenced by the Company's failure to disclose Cassidy's criminal history, the Company's overwhelming dependence on a single client (BMO) . . . , and Optionable's gross mispricing of options with BMO." (Id. ¶¶ 21-22).

The Complaint fails to plead with particularity that any of these four statements

was false or misleading.[3]

> (i)    Optionable Fully and Accurately Disclosed the
>        Proportion of Revenue It Received From BMO

The Complaint does not adequately support the allegation that Optionable's 2006

10-KSB misrepresented the company's dependence on BMO when it accurately reported the

percentage of its revenues that came directly from BMO in 2005 and 2006. In fact, the only

factual allegations offered to support that claim relate to Optionable's financial results for the

---

[3]  As set forth in Argument Section I.B., infra, the Complaint also fails to plead particularized facts sufficient to raise a strong inference of scienter on the part of Nordlicht.

first quarter of 2007. (See Complaint ¶ 14). However, in no event would that allegation support

Plaintiffs' claim that Optionable's prior year's financial report was misleading. Plaintiffs offer

no facts showing that Optionable's disclosures regarding 2005 and 2006 – the financial periods

actually covered by the 2006 Form 10-KSB – were materially misstated.

In addition, although Plaintiffs allege that Optionable failed to disclose the extent

of its dependence on maintaining BMO as a customer, as well as the fact that counterparty trades

involving BMO brought in revenue from other customers, Optionable's public filings clearly

explained the nature of its business, including the fact that it received commissions from both of

the counterparties on bilateral over-the-counter trades. Optionable not only disclosed the portion

of revenue it received from BMO in the "Customer Concentration" section of the 2006 Form 10-

KSB, it also fully disclosed that, in the event it lost BMO as a customer and could not replace it,

revenues from BMO – as well as from other customers who were counterparties to transactions

involving BMO – were at risk:

> One of our clients accounted for 24% of our revenue during
> 2006 [BMO]. *On OTC transactions, we bill our services to*
> *both counterparties. Accordingly, if this client would not*
> *have entered into a portion of all of the OTC transactions in*
> *which they were involved, our 2006 revenues could have*
> *been lower if we wouldn't have been able to find a suitable*
> *counterparty to replace them in such transactions.*

(See Lauer Aff., Exh. 3 (2006 Form 10-KSB) at p. 19 (emphasis added)).

Nor was the statement regarding the percentage of 2005 and 2006 revenues

attributable to BMO misleading based on a failure to disclose incentive payments received by

Optionable from NYMEX. (See Complaint ¶ 14). In fact, the Form 10-KSB explicitly disclosed

that Optionable "receive[d] incentives from NYMEX which accounted for 19% of our revenues

during 2006," and that "the incentives are earned based on a percentage of the total revenues

received by the exchange [that are] attributable to our volume of transactions." (See Lauer Aff.,

Exh. 3 (2006 Form 10-KSB) at 23). The Company also cautioned that "we cannot guarantee that

we will continue to receive the level of such incentives in the future, if at all. If we do not

receive these incentives, our revenues will decrease." (See id. at 23). Accordingly, there is

simply no truth to Plaintiffs' allegation that Optionable's 2006 Form 10-KSB failed to disclose

the NYMEX incentive payments.

> (ii)    The Non-Disclosure of Cassidy's Convictions
> Does Not Give Rise to a Claim Under Section 10(b)

Although Plaintiffs criticize Optionable for not disclosing that Mr. Cassidy had

been convicted 14 years before the class period for income tax evasion and 10 years before the

class period for credit card fraud, Optionable acted appropriately in not disclosing the

convictions. Item 401 of Regulation S-B and Regulation S-K requires companies to disclose

certain legal proceedings during the past five years that are "material to an evaluation of the

ability and integrity" of its officers and directors, including a conviction in a criminal

proceeding. 17 C.F.R. § 228.401(a), (d); 17 C.F.R. § 229.401(a), (f). Item 9 of Form 10-KSB

requires the information required by Item 401. Because Mr. Cassidy's convictions were both

older than five years, neither was a required disclosure under Item 9.

Furthermore, the fact that the Form 10-KSB did not disclose Mr. Cassidy's

convictions did not render any statement by Optionable false or misleading. Plaintiffs allege that

the description of Mr. Cassidy in the Form 10-KSB was misleading because it did not disclose

his convictions. However, the quoted portion of the statement merely gives Mr. Cassidy's

history with the Company beginning in March 2001, and identifies his primary job

responsibilities. (See Complaint ¶ 15). Nothing about those accurate descriptions for a period

beginning in 2001 could be rendered misleading by failure to include discussions of Mr.

Cassidy's activities at times long before 2001. See Backman v. Polaroid Corp., 910 F.2d 10, 16

(1st Cir. 1990) (company only obligated to make such disclosures as necessary to make its statements complete and not misleading, and not obligated to disclose other information even if it would be "interesting" to investors) (citing SEC v. Texas Gulf Sulphur Co., 401 F.2d 833, 862 (2d Cir. 1968), cert. denied, 394 U.S. 976 (1969)).[4]

> (iii)    Plaintiffs Fail to Plead Any Facts to Support the Allegation that OPEX Was a "Sham" that Enabled Optionable to Commit Fraud

Plaintiffs allege that Optionable's statements about its OPEX electronic trading platform were false and misleading because OPEX was a "sham" that was not "viable." (Complaint ¶ 10, 18, 29). However, allegations of product problems must be pleaded with particularity. See, e.g., In re eSpeed, Inc. Sec. Litig., 475 F. Supp. 2d 266, 292-93 (S.D.N.Y. 2006) (allegation that product was not viable failed because plaintiff did not allege "*when* or by direct quote *what*" defendant was told by source about the alleged problems); In re Gilat Satellite Networks, Ltd., No. 02-1510, 2005 WL 2277476, at *18 (E.D.N.Y. Sept. 19, 2005) (product defect allegations unclear because sources failed to specify extent of problems or to identify any internal reports or memoranda concerning the problems); In re Nokia Oyj (Nokia Corp.) Sec. Litig., 423 F. Supp. 2d 364, 406 (S.D.N.Y. 2006) (conclusory allegations that defendant knew that product was not fully competitive failed). Here, Plaintiffs fail to allege – even in conclusory fashion – a single technical or operational problem with the platform, or Nordlicht's knowledge of any problem.

Plaintiffs also offer no facts supporting the existence of any "scheme" to misprice options, much less any facts showing that the OPEX system facilitated such a "scheme" or "caused" BMO to sustain "massive trading losses" (Complaint ¶ 18). Despite the seriousness of

---

[4]  In addition, as set forth in Argument Section IV.A. of Defendant Optionable's Memorandum of Law, Plaintiffs cannot maintain a Section 10(b) claim based on the omission of Cassidy's convictions from the Form 10-K because the first alleged disclosure of the convictions occurred <u>after</u> the alleged inflation had been removed from Optionable's stock price. (See Optionable Memo. at pp. 23-24).

this charge, Plaintiffs fail to support it with a single reliable source, a single description of a

written or oral communication between Optionable and BMO, or a single description of an

internal Optionable document, meeting, or conversation. Indeed, there are only three allegations

even purporting to link Optionable with any wrongdoing at BMO. Plaintiffs allege that:

(i) Kevin Cassidy had a "personal relationship" with two individuals at BMO (see Complaint ¶

7); (ii) David Lee (the BMO trader responsible for the bank's losses) and his sister received

payments from Optionable; and (iii) the internal investigation of BMO's trading losses prepared

by Deloitte revealed that "some" of the prices that appeared in BMO's mismarked book of trades

had been provided by Optionable. (See Complaint ¶ 43). However, these allegations – all of

which are sourced to anonymous individuals – fail to provide a sufficient factual basis for a

securities fraud claim.

       *First*, although Plaintiffs allege that Mr. Cassidy had a "personal relationship"

with Mr. Lee and Robert Moore (BMO's Executive Managing Director of Commodity Pricing),

the existence of friendships does not remotely suggest that Mr. Cassidy intentionally mispriced

options in order to help Mr. Lee hide his trading losses from his employer. It should also be

noted that no source is offered for the allegation regarding the relationship between Mr. Cassidy

and the individuals at BMO. As a matter of law, allegations in securities fraud complaints made

on information and belief[5] must identify, at a minimum, the source of the information (e.g. a

witness, a document, etc.). See 15 U.S.C. § 78u-4 (if allegation is made on information and

belief, complaint must state with particularity "all facts on which that belief is formed"); In re

Initial Public Offering Sec. Litig., 241 F. Supp. 2d 281, 354-55 (S.D.N.Y. 2003). Thus, the

---

[5] All allegations in the Complaint necessarily are made on information and belief, as the named Plaintiff
does not purport to have first-hand knowledge.

allegation regarding the purported "personal relationship" fails to satisfy the pleading requirements of the PSLRA.

*Second*, the allegation that Mr. Lee and his sister "received payments from Optionable," which is sourced to Confidential Witness #1 (Complaint ¶ 7), does not lend any support to the Plaintiffs' claim that Optionable was involved in some kind of "mispricing scheme" with BMO. No information is supplied to show that this confidential witness – alleged to be an "analyst who followed Optionable" (Complaint ¶ 7) – was in a position to know about financial dealings between the Company and Mr. Lee or his sister. See In re Sierra Wireless, Inc. Sec. Litig., 482 F. Supp. 2d 365, 376 (S.D.N.Y. 2007); Novak v. Kosaks, 216 F.3d 300, 314 (2d Cir. 2000); see also In re BISYS Securities Litigation, 397 F. Supp. 2d 430, 442 (S.D.N.Y. 2005) (Kaplan, J.) (Plaintiff's burden of describing informants not met when "Court cannot infer that [ ] witnesses possess the information contained in their alleged statements"). Furthermore, Plaintiffs fail to allege any facts regarding the nature or amount of any "payments," much less facts that suggest the "payments" were material, improper, or in any way related to a "mispricing scheme." See In re Axis Capital Holdings Ltd. Sec. Litig., 456 F. Supp. 2d 576, 591-92 (S.D.N.Y. 2006) (dismissing conspiracy allegations for plaintiffs' failure to allege facts from which to infer that payments defendant made to third party were improper).

*Finally*, the allegation that "some" of the prices that appeared in BMO's natural gas options book had been provided by Optionable does not support Plaintiffs' claim that Optionable conspired with BMO to "grossly mismark" options. (See Complaint ¶ 43). This allegation comes from newspaper article about an audit of BMO's book of natural gas options performed by Deloitte. (See Complaint ¶ 43). Relying on an unnamed source identified only as someone "familiar with [Deloitte's] report," the newspaper article reported that "some" of the

prices for "mismarked" transactions in BMO's book had been provided by Optionable. (Id.) However, as discussed above, where the source of information is an anonymous individual, sufficient information must be provided so that a court can assess whether that individual is in a position to know the information ascribed to him or her. In re Sierra Wireless, 482 F. Supp. 2d at 376.[6] As a matter of law, the conclusory statement in the media report that the anonymous individual was "familiar" with the Deloitte report does not satisfy this standard. See id. ; Miller v. Lazard, 473 F. Supp. 2d 571, 586 (S.D.N.Y. 2007) (news articles cited must themselves include sufficiently particularized facts). Accordingly, the allegation about the Deloitte report may not be considered. See id.

In addition, the allegation is far too vague to satisfy the specificity requirements of the PSLRA. Not a single "mismarked" BMO transaction where pricing information was allegedly provided by Optionable is identified. Nor is any information provided about the aggregate number of such transactions or the dollar amount of any discrepancies. Nor do Plaintiffs say what the "right" prices should have been. Absent any specificity as to the transactions that were involved in the supposed "mispricing" "scheme," or even as to the overall magnitude of the supposed errors, the allegation is too conclusory to comply with the PSLRA or Rule 9(b). See Davidoff v. Farina, No. 04-7617, 2005 WL 2030501 (S.D.N.Y. Aug. 22, 2005) (court could not determine materiality of alleged wrongful conduct absent specifics about particular transactions); In re Health Mgmt Sys., Inc. Sec. Litig., No. 97-1865, 1998 WL 283286, *2 (S.D.N.Y. June 1, 1998) (allegations that defendant was having difficulty collecting payments

---

[6] Unnamed sources in media reports must satisfy the same standard as anonymous confidential witnesses. See Miller v. Lazard, 473 F. Supp. 2d at 586 (news articles cited must themselves include sufficiently particularized facts). Without any information verifying the source was in a position to know and accurately convey the contents of the Deloitte report, the Court must reject the allegation. In re Sierra Wireless, 482 F. Supp. 2d at 376.

failed as "conclusory" and "wholly insufficient" because plaintiffs failed to provide specifics

regarding the alleged transactions, including, *inter alia*, which customers were involved and the

nature of the customer's supposed payment problems); <u>Schick v. Ernst & Young</u>, 141 F.R.D. 23,

27 (S.D.N.Y. 1992) (allegations that accountants "significantly overstated" assets of company in

prospectus did not adequately particularize the alleged misrepresentations and omissions where

plaintiff failed to allege amount of purported overstatement).

      (iv)    The Statements Regarding Optionable's Code
              <u>of Business and Ethics Were Not False and Misleading</u>

      Plaintiffs allege that the statements in Optionable's 10-KSB regarding the

company's Code of Business Conduct and Ethics were false and misleading because "there were

insufficient controls and procedures in place as evidence by" the failure to disclose Cassidy's

convictions, the "overwhelming dependence" on BMO, and the "gross mispricing of options

with BMO." (Complaint ¶ 22). However, as set forth above in Sections I.A.(i), (ii), (iii), the

Complaint does not adequately allege the existence of a mispricing scheme; Optionable

accurately reported its relationship with BMO; and Optionable was not required to disclose

Cassidy's convictions. Accordingly, there is no support for Plaintiffs' allegations that the

statements regarding Optionable's Code of Business Conduct and Ethics were materially

misstated.

    **B.**      **The Complaint Fails to Adequately
Plead that Nordlicht Acted with Scienter**

      The Complaint is also deficient in that it fails to plead that Nordlicht acted with

scienter under the PSLRA's strict pleading requirements. 15 U.S.C. § 78u-4(b)(2) provides:

> In any private action arising under this chapter in which the
> plaintiff may recover money damages only on proof that the
> defendant acted with a particular state of mind, the complaint shall,
> with respect to each act or omission alleged to violate this chapter,

state with particularity facts giving rise to a strong inference that
the defendant acted with the required state of mind.

See also In re Interpublic Sec. Litig., No. 02-6527 (DLC), 2003 WL 21250682, at *10 (S.D.N.Y.

May 29, 2003). "Scienter" means an intent to "deceive, manipulate, or defraud, or at least

knowing misconduct." Marcus v. Frome, 275 F. Supp. 2d 496, 501 (S.D.N.Y. 2003).

The Supreme Court has recently clarified the pleading requirements under the

PSLRA, holding that to qualify as "strong," an inference of scienter "must be more than merely

'reasonable' or 'permissible' – it must be cogent and compelling . . . and at least as compelling

as any opposing inference one could draw from the facts alleged." Tellabs, Inc. v. Makor Issues

& Rights, Ltd., 127 S. Ct. 2499, 2510, 168 L.Ed.2d 179, 187-88 (2007).

The Complaint in this case is devoid of any substantive factual allegations

indicating that Nordlicht acted with an intent to deceive or defraud. Plaintiffs make several

conclusory allegations regarding "Defendants" as a group (see Complaint ¶¶ 78-83), but alleges

no substantive facts demonstrating that Nordlicht as an individual acted with scienter. With

respect to the one statement in the Complaint attributed to Nordlicht – the 2006 10-KSB –

Plaintiffs allege no facts indicating that Nordlicht had any knowledge that statements contained

within the 10-KSB were in any way false or misleading. Rather, the Complaint simply alleges

that the statements were materially false and misleading, and then makes a conclusory allegation

that the group of "Defendants" was aware that Optionable had disseminated information which

the group "knew or recklessly disregarded was materially false or misleading. [sic]" (See id.

¶¶ 13-24, 82).

Such allegations fail to plead the requisite state of mind for a claim under Section

10(b). See, e.g., Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1129 (2d Cir. 1994)

(conclusory allegations that company's CEO and COO "knew or were reckless in not knowing"

that bank's reported loan reserve was inadequate failed to satisfy pleading requirement for scienter).  Plaintiffs cannot satisfy the heightened pleading requirements of the PSLRA simply by alleging that Nordlicht was part of the group of "high-level executives or directors" at Optionable who, "by virtue of their responsibilities as senior officers and directors," were aware of the company's alleged false statements "or acted with reckless disregard for the truth." (Complaint ¶ 82-83); see Acito v. IMCERA Group, Inc., 47 F.3d 47, 53 (2d Cir. 1995) (allegations that defendants "must have known" of facts merely because of their positions as corporate officers did not pass muster because a defendant's "lack of clairvoyance" did not amount to securities fraud).  Rather, Plaintiffs must allege specific information that Nordlicht – who served as non-executive chairman and was not involved in the company's day-to-day operations – possessed specific information alerting him to the falsity of the alleged misstatements.  See Novak, 216 F.3d at 309 (where plaintiffs contend defendants had access to contrary facts, they must specifically identify the reports or statements containing this information).  Because Plaintiffs fail to allege any substantive facts showing that Nordlicht had any knowledge of the alleged falsity of the statements attributed to him, the Complaint fails to plead that Nordlicht acted with scienter.

        Nor can Plaintiffs rely on Nordlicht's private sale of shares to NYMEX to raise the required strong inference of scienter.  When all the facts concerning the stock sale are weighed, and all nonculpable explanations for Nordlicht's conduct are considered, it is clear Plaintiffs have not met the PSLRA's exacting requirements for pleading fraud.

        *First*, the circumstances surrounding the NYMEX transaction clearly demonstrate that maximizing immediate profit was not Nordlicht's primary motivation for entering into the NYMEX agreement.  The NYMEX transaction involved Optionable, NYMEX, Nordlicht,

Cassidy, and O'Connor.  The transaction created a cooperative relationship between Optionable and NYMEX, providing incentives for both companies to help grow the business of the other.  Specifically, NYMEX agreed to: (i) host Optionable's OPEX trading platform in NYMEX's data center; (ii) provide Optionable with "computer and networking hardware, software, bandwidth and ancillary infrastructure and services reasonably necessary to interconnect OPEX with [NYMEX's] ClearPort market gateway to trading and clearing services;" (iii) provide space for up to twenty of the Optionable's brokers on the NYMEX's trading floor; and (iv) develop a joint marketing plan to benefit Optionable and NYMEX.  (See Lauer Aff., Exh. 5 (April 10, 2007 8-K)).  These considerations by NYMEX were aimed at benefiting Optionable, and, by extension, all of Optionable's shareholders (including Plaintiffs).  In addition, as part of the transaction, Nordlicht, Cassidy, and O'Connor sold 19% of Optionable's shares to NYMEX, and Optionable issued warrants to NYMEX that entitled NYMEX to purchase up to 40% of Optionable.  (See id.)  The sale of shares and the issuance of the warrants provided further benefit to Optionable because it created an obvious incentive for NYMEX to cooperate with Optionable in growing Optionable's business.  Given that the focus of the NYMEX transaction was to benefit Optionable (and all of its shareholders), the sale of stock by Nordlicht as part of that transaction does not raise any inference – much less a strong inference – that Nordlicht acted with an intent to defraud.

Second, even after Nordlicht's sale of shares NYMEX, he retained millions of Optionable shares and made no further sales.  See, e.g., In re Advanta Corp. Secs. Litig., 180 F.3d 525, 541 (3d Cir. 1999) (insider's post-sale retention of a "sizable percentage" of company stock undermined inference of scienter).  Indeed, by holding onto the rest of his shares during that period – as the price of Optionable stock rose as high as $8.00 – Nordlicht passed up the

opportunity to collect over $40 million in stock sale proceeds. Thus, the fact that Nordlicht sold

a portion of his shares to NYMEX at $2.69 per share does not allege a motive to commit fraud.

See Ronconi v. Larkin, 253 F.3d 423, 435 (9th Cir. 2001) (even though insiders' stock sales

occurred during the period of alleged inflation, such sales did not raise a strong inference of

scienter when they occurred prior to the most significant increases in the stock price).

      The Complaint alleges no facts raising an inference that Nordlicht acted with

scienter with respect the four statements attributable to him in Optionable's 2006 Form 10-KSB.

Accordingly, Plaintiffs' Section 10(b) claim against Nordlicht should be dismissed.

## II.    PLAINTIFFS FAIL TO STATE A CONTROL PERSON CLAIM AGAINST NORDLICHT UNDER SECTION 20(a) OF THE EXCHANGE ACT

      Count II of the Complaint alleges that Nordlicht and others are liable to the Class

as "control persons" under Section 20(a) of the Exchange Act. However, the conclusory

allegations contained in this claim are wholly inadequate to establish control person liability as

against Nordlicht.

      Section 20(a) of the Exchange Act provides that:

> Every person who, directly or indirectly, controls any person liable
> under any provision of this chapter or of any rule or regulation
> thereunder shall also be liable jointly and severally with and to the
> same extent as such controlled person to any person to whom such
> controlled person is liable, unless the controlling person acted in
> good faith and did not directly or indirectly induce the act or acts
> constituting the violation or cause of action.

15 U.S.C. § 78t(a). The Second Circuit has held that in order to establish a *prima facie* case of

control person liability, a plaintiff must show: (i) a primary violation by the controlled person,

(ii) control of the primary violator by the targeted defendant, and (iii) that the controlling person

was in some meaningful sense a culpable participant in the fraud perpetrated by the controlled

person. Boguslavsky v. Kaplan, 159 F.3d 715, 720 (2d Cir. 1998); SEC v. First Jersey Sec., Inc.,

101 F.3d 1450, 1472 (2d Cir. 1996), <u>cert. denied</u>, 522 U.S. 812 (1997).  The control person claim

against Nordlicht should be dismissed because the Complaint fails to plead either a primary

violation by Optionable (the controlled person) or culpable participation by Nordlicht in

Optionable's alleged fraud.

The first requirement for a control person claim under Section 20(a) is that a

plaintiff must plead a primary violation of Section 10(b) or Rule 10b-5 by the purported

"controlled person."  <u>See</u> <u>First Jersey</u>, 101 F.3d at 1472.  As set forth in Optionable's

Memorandum of Law and as set forth above, the Complaint fails to state a claim of primary

liability against Optionable.  (<u>See</u> Defendant Optionable, Inc.'s Memorandum in Support of

Motion to Dismiss at pp. 9-32; Argument Section I.A., pp. 6-16, <u>supra</u>).  Accordingly, because

no primary violation has been alleged, Plaintiffs' Section 20(a) claim against Nordlicht must be

dismissed. <u>See</u> <u>Rombach v. Chang</u>, 355 F.3d 164, 177-78 (2d Cir. 2004); <u>In re GeoPharma, Inc.</u>

<u>Sec. Litig.</u>, No. 04-9463 (SAS), 2005 WL 2431518, at *12 (S.D.N.Y. Sept. 30, 2005).

The control person claim against Nordlicht also fails because the Complaint does

not allege facts demonstrating that he was, in some meaningful sense, a culpable participant in

any purported fraud at Optionable.  <u>Boguslavsky</u>, 159 F.3d at 720; <u>First Jersey</u>, 101 F.3d at 1472.

The Second Circuit has held that "[t]he intent of Congress in adding [Section 20] … was

obviously to impose liability only on those directors who fall within its definition of control and

who are in some meaningful sense culpable participants in the fraud perpetrated by controlled

persons."  <u>Lanza v. Drexel & Co.</u>, 479 F.2d 1277, 1299 (2d Cir. 1973) (<em>en banc</em>); see also

<u>Mishkin v. Ageloff</u>, No. 97-2690 (LAP), 1998 WL 651065, at *75 (S.D.N.Y. Sept. 23, 1998)

(finding that the heightened pleading standards of the PSLRA apply to claims under Section

20(a)).

Indeed, "the weight of Second Circuit precedent favors the view that a Plaintiff must plead 'culpable participation' to state a Section 20(a) claim, and that such participation must be plead with particularity" pursuant to Rule 9(b). Kalin v. Xanboo, Inc., No. 04-5931 (KMK), 2007 WL 273546, at *12 (S.D.N.Y. Jan. 31, 2007) (collecting cases); see, e.g., In re Yukos Oil Co. Securities Litigation, No. 04-5243 (WHP), 2006 WL 3026024, at *72 (S.D.N.Y. Oct 25, 2006); Davidoff v. Farina, No. 04-7617 (NRB), 2005 WL 2030501 at *16 n.28 (S.D.N.Y. Aug. 22, 2005); In re Global Crossing, Ltd., Sec. Litig., No. 02-910 (GEL), 2005 WL 1907005 at *5 (S.D.N.Y. Aug. 8, 2005); In re Global Crossing, Ltd., Sec. Litig., 322 F. Supp. 2d 319, 349 n.24 (S.D.N.Y. 2004); In re Initial Public Offering Sec. Litig., 241 F. Supp. 2d 281, 392-97 (S.D.N.Y. 2003); In re Deutsche Telekom AG Sec. Litig., No. 00-9475 (SHS), 2002 WL 244597, at *7 (S.D.N.Y. Feb. 20, 2002).

We recognize that this Court has held that plaintiffs need not plead culpable participation to state a claim pursuant to Section 20(a). See In re Parmalat Sec. Litig., 375 F. Supp. 2d 278, 310 (S.D.N.Y. 2005); In re Parmalat Sec. Litig., 497 F. Supp. 2d 526, 532 n.42 (S.D.N.Y. 2007). However, Nordlicht respectfully submits that the rationale underlying the imposition of a Rule 9(b) pleading standard to the "culpable participation" pleading requirement is more persuasive. It is consistent with the Second Circuit's ruling on the elements of a Section 20(a) claim. See In re AOL Time Warner, 381 F. Supp. 2d 192, 233 (S.D.N.Y. 2004) (because the Second Circuit held that culpable participation is an element of a Section 20(a) claim, "this Court will continue to assume that an adequately pled control person liability claim contains specific allegations of culpable participation."). Further, the PSLRA mandates the heightened pleading requirement. See In re Bayer AG Sec. Litig., 2004 WL 2190357, at *16 (pursuant to the PSLRA, "plaintiffs must demonstrate a defendant's culpable state of mind to establish a

claim for control person liability"); see also In re Global Crossing, 322 F. Supp. 2d at 349

("Since culpable participation is an element, the PSLRA's heightened pleading requirements

apply.")

Here, the Complaint makes no effort to plead facts that would support a finding of

culpable participation by Nordlicht in the alleged fraudulent activity. Plaintiffs make only a few

conclusory allegations about Nordlicht, and fail to support those conclusory allegations with any

substantive facts showing that Nordlicht – who was not an executive at the company and had no

role in its day-to-day operations – culpably participated in wrongdoing at Optionable. The

Complaint includes the conclusory allegation that as of January 22, 2007, Nordlicht "knew that

the OPEX trading platform was a sham," and also knew that Optionable's success was dependent

on BMO, which "contributed to more than 80% of Optionable's revenues." (Complaint ¶ 10).

However, the Complaint fails to provide any substantive facts showing that OPEX was "a sham,"

that BMO was responsible for a larger percentage of Optionable's revenues than indicated in the

company's public filings, or that Nordlicht knew that Optionable's disclosures were false or

misleading. (See Argument Section I.A.i, iii., supra ). The mere fact that Nordlicht served as the

company's non-executive chairman does not – in and of itself – adequately allege that Nordlicht

was a culpable participant in any alleged fraud by Optionable. See, e.g., Mishkin v. Ageloff, No.

97-2690 (LAP), 1998 WL 651065, at *24 (S.D.N.Y. Sept. 23, 1998) (dismissing Section 20(a)

claims on the ground that, in order to prevail under Section 20(a), a plaintiff must come forward

with "proof that the defendant acted with a particular state of mind," namely, "particularized

facts of the controlling person's conscious misbehavior as a culpable participant in the fraud"

(citing PSLRA)).

Similarly, with respect to the 2006 Form 10-KSB (the only statement in the Complaint that is attributed to Nordlicht), Plaintiffs not only fail to provide sufficient substantive facts showing that the statements contained within the 10-KSB were materially false and misleading (see Argument Section I., supra), but also fails to allege any substantive facts showing that Nordlicht knew these statements to be false. The mere fact that he signed one of Optionable's public filings is not a sufficient basis upon which to allege that Nordlicht was a culpable participant in an alleged fraud. See, e.g., In re Twinlab Corp. Sec. Litig., 103 F. Supp. 2d 193, 208 (E.D.N.Y. 2000) (dismissing Section 20(a) claim because "plaintiffs do not specifically allege facts demonstrating that the officers of Twinlab culpably participated in the scheme, rather than, for example, unknowingly approving credible but fraudulent financial reports prepared by subordinates"); In re Livent Sec. Litig., 78 F. Supp. 2d 194, 222 (S.D.N.Y. 1999) (while signing was presumed to reflect control, the court dismissed for failure to plead culpable participation).

Because Plaintiffs' sole count against Nordlicht does not set forth any facts establishing that Nordlicht was, in any meaningful sense, a culpable participant in an alleged fraud by Optionable, the Section 20(a) claim should be dismissed as against Nordlicht.

## III.  THE COMPLAINT FAILS TO STATE A CLAIM AGAINST NORDLICHT UNDER SECTION 20A OF THE EXCHANGE ACT

Count III of the Complaint alleges that on April 10, 2007, Nordlicht, Cassidy, and O'Connor "sold Optionable stock contemporaneously with Plaintiff Boyer's purchases of common stock," and that at the time of these alleged sales, Nordlicht and the others were allegedly in possession of material nonpublic information regarding Optionable. (Complaint ¶¶ 93-94). Plaintiffs claim that as a result of these alleged sales on April 10, 2007, Nordlicht,

Cassidy, and O'Connor are liable to Plaintiff Boyer and the Class under Section 20A of the Exchange Act, 15 U.S.C. § 78t-1. (Id. ¶ 95). This claim fails for several reasons.

*First*, the claim under Section 20A fails as against Nordlicht because the Complaint fails to plead a predicate violation of the Exchange Act by Nordlicht. It is well-settled that in order to allege a claim under Section 20A, a plaintiff must plead a predicate violation of the Exchange Act. See Jackson v. National Life Insurance Co. v. Merrill Lynch & Co., 32 F.3d 697, 703 (2d Cir. 1994) ("the language of the statute is thus quite plain that to state a claim under Section 20A, a plaintiff must plead a predicate violation of the '34 Act or its rules and regulations"); DeMarco v. Robertson Stephens Inc., 318 F. Supp. 2d 110, 126 (S.D.N.Y. 2004) (citing Jackson). However, as set forth above, the Complaint fails to adequately plead a violation by Nordlicht of the Exchange Act. (See Argument Sections I, II, supra). As a result, the Section 20A claim against Nordlicht fails as a matter of law.

*Second*, the Section 20A claim fails because the members of the Class lack standing to assert such a claim against Nordlicht. Section 20A was created in order to give a private right of action to "those who traded the same class of securities 'contemporaneously' with and on the opposite side of the market from [an] insider trader." H.R. Rep. No. 100-910, at 26 (1988), reprinted in 1988 U.S.C.C.A.N. 6043, 6063. The purpose of the statute "is to protect only those who might actually have traded with insiders." Buban v. O'Brien, No. 94-0331, 1994 WL 324093, at *2 (N.D. Cal. Jun. 22, 1994) (citing Wilson v. Comtech Telecommunications Corp., 648 F.2d 88, 95 (2d Cir. 1981)). However, Plaintiff Boyer and the other members of the Class did not purchase shares of Optionable "on the opposite side of the market" from Nordlicht. That is because Nordlicht did not sell any shares of Optionable into the public market. Rather, he sold shares to NYMEX pursuant to a private sale agreement – at a price significantly below

the prices being offered in the open market at the time.  As detailed in Optionable's public

filings, the transfer of shares by Nordlicht to NYMEX resulted from a written stock purchase

agreement signed by Nordlicht, Cassidy, O'Connor, Optionable, and NYMEX.  (See Lauer Aff.,

Exhs. 2, 5 (Form 8-K's filed January 22 and April 10, 2007)).  Nordlicht sold his shares to

NYMEX, pursuant to that private written agreement, at $2.69 per share – well below the open-

market prices of $7.15 and $7.17 paid by Plaintiff Boyer for his 150 shares.  (See id; Complaint

¶ 93 and Exhibit A to the Complaint).  Simply put, because Nordlicht did not trade his shares in

the public market, Plaintiff Boyer and the Class members cannot be said to have been on the

"opposite side of the market" from Nordlicht, and could not possibly have purchased their shares

from Nordlicht.  As a result, the class members lack standing to assert a claim under Section 20A

against him.  See Brody v. Transitional Hospitals Corp., 280 F.3d 997, 1002 (9th Cir. 1997)

(noting the "need to filter out plaintiffs who could not possibly have traded with the insider").

        Third, Nordlicht's sales were not "contemporaneous" with the purchases alleged

in the Complaint.  The Section 20A claim in the Complaint is based on purchases that occurred

on April 10, 2007.  (See Complaint ¶ 93).  However, Nordlicht entered into a binding agreement

to sell his shares on January 22, 2007 – nearly three months prior to those purchases.  (See id.

¶ 9; Lauer Aff., Exh 2 (January 22, 2007 Form 8-K)).  Although Nordlicht did not formally

transfer his shares of Optionable to NYMEX until April 10, 2007, Nordlicht was obligated to sell

the shares at an agreed-upon price – and NYMEX was legally bound to purchase the shares at

that price – as of January 22.  Thus, Nordlicht's sale of shares was not "contemporaneous" with

the April 10, 2007 purchases on which Plaintiff Boyer bases his claim.  Although Section 20A

does not provide a precise temporal definition of "contemporaneous," and although some courts

have found that as many as five days may elapse between two "contemporaneous" trades, see In

re Oxford health Plan Sec. Litig., 187 F.R.D. 133, 144 (S.D.N.Y. 1999), it is well-settled that trades occurring more than two months apart cannot be deemed "contemporaneous." See, e.g., Brody, 280 F.3d at 1002 ("the two-month time period presented by the facts of this case exceeds any possible delineation of a contemporaneous trading period"); Wilson, 648 F.2d at 95 (trades occurring one month apart not contemporaneous); In re Verifone Sec. Litig., 784 F. Supp. 1471, 1489 (N.D. Cal. 1992), aff'd 11 F.3d 856 (9th Cir. 1993) (trades fourteen days apart not contemporaneous). Thus, even if Nordlicht traded his shares in the public market – which he did not – the Section 20A claim against him would still fail because the April 10, 2007 trades on which the claim are based were not contemporaneous with the January 22, 2007 sale of shares by Nordlicht.

## CONCLUSION

The Complaint fails satisfy the pleading requirements of Rule 9(b) and the PSLRA with respect each of the three claims against Nordlicht. Accordingly, the Complaint against Nordlicht should be dismissed.

Dated: New York, New York
February 15, 2008

CURTIS, MALLET-PREVOST,
COLT & MOSLE LLP

By: _____
Eliot Lauer
Daniel R. Marcus
Rachael Yocum
101 Park Avenue
New York, New York 10178-0061
Tel: (212) 696-6000
Fax: (212) 697-1559
*Attorneys for Defendant Mark Nordlicht*