UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re OPTIONABLE SECURITIES LITIGATION | ) No. 07-cv-3753 (LAK)<br>)<br>) DECLARATION OF LIAM O'BRIEN<br>)<br>) |

I, Liam O'Brien, declare under the penalty of perjury, as follows:

1.  I am the managing partner of the law firm of McCormick & O'Brien, LLP, counsel for Defendant Edward J. O'Connor. I submit this Declaration in support of Defendant Edward J. O'Connor's Motion to Dismiss the Amended Consolidated Complaint.

2.  Attached hereto as Exhibit A is a true and correct copy of Optionable, Inc.'s Form 8-K, dated January 22, 2007.

Dated: February 19, 2008

/s/    Liam O'Brien

Exhibit A

Case 1:07-cv-03753-LAK  Document 97  Filed 02/19/2008  Page 2 of 11

# Optionable Inc (OPBL)

465 COLUMBUS AVENUE
SUITE 280
VALHALLA, NY 10595
914-773-1100
http://www.optionable.com

# 8-K

ENTRY INTO A MATERIAL DEFINITIVE AGREEMENT
Filed on 01/22/2007 – Period: 01/22/2007
File Number 000-51837



LIVEDGAR Information Provided by Global Securities Information, Inc.
800-669-1154
www.gsionline.com

UNITED STATES
SECURITIES AND EXCHANGE COMMISSION
WASHINGTON, D.C. 20549

FORM 8-K

CURRENT REPORT
Pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934

Date of Report (Date of earliest event reported): January 22, 2007

Optionable, Inc.

(Exact Name of Registrant as Specified in Its Charter)

| Delaware | 000-51837 | 52-2219407 |
|---|---|---|
| (State or other jurisdiction of incorporation) | (Commission File Number) | (I.R.S. Employer Identification No.) |

555 Pleasantville Road, South Building, Suite 110 Briarcliff Manor, NY 10150

(Address of Principal Executive Offices, Including Zip Code)

(914) 773-1100

(Registrant's Telephone Number, Including Area Code)

Not Applicable

(Former Name or Former Address, if Changed Since Last Report)

Check the appropriate box below if the Form 8-K filing is intended to simultaneously satisfy the filing obligation of the registrant under any of the following provisions:

|_| Written communications pursuant to Rule 425 under the Securities Act (17 CFR 230.425)

|_| Soliciting material pursuant to Rule 14a-12 under the Exchange Act (17 CFR 240.14a-12)

|_| Pre-commencement communications pursuant to Rule 14d-2(b) under the Exchange Act (17 CFR 240.14d-2(b))

|_| Pre-commencement communications pursuant to Rule 13e-4(c) under the Exchange Act (17 CFR 240.13e-4(c))

TABLE OF CONTENTS

Item 1.01. Entry into a Material Definitive Agreement
Item 8.01. Other Events
Item 9.01. Financial Statements and Exhibits
Signature
Exhibit Index

Item 1.01. Entry into a Material Definitive Agreement

On January 22, 2007, Optionable, Inc. (the "Company"), Mark Nordlicht, its Chairman of the Board, Kevin Cassidy, its Vice Chairman and Chief Executive Officer, and Edward O'Connor, its President (collectively, the "Founding Stockholders"), and NYMEX Holdings, Inc. (the "Investor") entered into a binding term sheet (the "Term Sheet") pursuant to which Messrs. Nordlicht, Cassidy and O'Connor have agreed to sell 7,000,000, 1,491,448 and 1,800,000 shares, respectively, of common stock of the Company, par value $0.0001 per share (the "Common Stock"), to the Investor. This aggregate of 10,291,448 shares (the "Purchased Shares") represents nineteen percent (19%) of the currently outstanding shares of Common Stock on a fully diluted basis (without giving effect to the warrant discussed below). The purchase price to be paid by the Investor for the Purchased Shares is $2.69 per share. Pursuant to the Term Sheet, the Company has agreed to issue the warrant described below to the Investor, in consideration of the Investor's agreement to engage in certain joint marketing and cobranding activities and to provide hosting of Company servers and assistance in joint technology development. In addition, the Investor and the Company agreed to certain arrangements with respect to OTC products which the Company clears through the clearport system.

The warrant to be issued by the Company (the "Warrant") will permit the Investor to purchase a number of shares of Common Stock sufficient to increase the Investor's ownership of the Company's Common Stock to an amount not to exceed 40% of the Company's then outstanding Common Stock on a fully diluted basis, based on the assumption that the Investor has retained ownership of the Purchased Shares. The Warrant will be exercisable from time to time for a period of 18 months from the closing date of the transactions contemplated by the Term Sheet at an exercise price per share equal to $4.30 (the "Exercise Price"). The Warrant will not contain a cashless exercise feature. The Exercise Price will be subject to certain customary adjustments to protect against dilution.

The transactions contemplated by the Term Sheet will be evidenced by definitive agreements (the "Definitive Agreements") which will contain representations, warranties, covenants, indemnities and conditions precedent customary and appropriate for this type of transaction including, but not limited to, representations, warranties, covenants and indemnities from each of the Founding Stockholders, the Company and the Investors.

The closing of the transactions contemplated by the Term Sheet is subject to certain conditions precedent set forth in the Term Sheet, including, (i) the Investor being satisfied, in its sole and reasonable discretion, with its legal, accounting, regulatory, business and other due diligence investigation of the Company, which will be completed prior to the execution of the Definitive Agreements, (ii) the execution and delivery of mutually acceptable Definitive Agreements within sixty (60) days of the date of the execution of the Term Sheet, (iii) the delivery of mutually acceptable employment agreements with key Company management and executives, other than Mr. Cassidy, which will include customary non-competition and non-solicitation provisions, and the delivery of a mutually acceptable non-competition agreement with Mr. O'Connor and (iv) Mr. Nordlicht's agreement to waive any obligation on the part of the Company to make any prepayment of principal or to begin paying interest upon amounts due to Mr. Nordlicht under the Loan Agreement between him and the Company, dated March 22, 2004, as a result of any exercise by the Investor of the Warrant.

If the Investor does not inform the Company within 3 weeks of being provided substantial access to due diligence that it is satisfied with its due diligence review and that it intends to proceed with the transaction, the Company and the Founding Stockholders will be entitled, in their sole discretion, to terminate the transaction by written notice to the Investor.

Effective upon closing of the transactions contemplated by the Term Sheet and for so long as the Investor owns at least 5,145,724 shares of Common Stock, the Investor will be entitled to designate one (1) person (reasonably acceptable to the Company) that the Company is required to nominate as a member of the Company's board of directors (the "Investor Director"), and each of the Founding Stockholders shall be required to vote their shares in favor of the election of the Investor's designation. For so long as the Investor owns at least 5,145,724 shares of Common Stock, the Investor will be required to vote its shares in favor of each individual nominated for election as a member of the Company's board of directors by the nominating committee of the Company. For so long as the Investor owns at least 5,145,724 shares of Common Stock and subject to certain permitted threshold amounts, the consent of the Investor Director (which may not be unreasonably withheld) will be required before the Company may take certain actions including (i) issuances of shares of a class of stock ranking senior to the Common Stock, (ii) acquisitions of businesses or assets, (iii) entry into related party transactions, (iv) the payment of dividends on, or the optional redemption of, capital stock or the issuance of debt and (v) entry into any business which is not similar, ancillary or related to any of the businesses in which the Company is currently engaged.

For so long as the Investor owns at least 5,145,724 shares of Common Stock: (i) each of the Founding Stockholders and the Investor will have a right of first refusal to purchase or subscribe for their pro rata percentage of shares in certain subsequent sales by the Company of Common Stock and/or certain other securities convertible into or exchangeable for Common Stock, (ii) each of the Founding Stockholders and the Investor will have certain rights of first refusal with respect to proposed sales of Common Stock by the others and (iii) before they may accept any offer by an independent third party to acquire fifty percent (50%) or more of the total voting power of the Common Stock or voting stock of the Company, the Founding Stockholders and the Company will be required to provide notice of such offer to the Investor and permit the Investor a period of 10 days to make its own offer.

In connection with the Purchased Shares, the Company will enter into a registration rights agreement with the Investor which, among other things, will provide the Investor, subject to standard exceptions, with (i) unlimited "piggyback" rights subject to standard underwriter lock-up and cutback provisions and (ii) the right to two demand registrations for underwritten offerings or take downs off of a shelf registration statement, provided that (A) a minimum of $5,000,000 of Common Stock are offered in such a demand registration or take down and (B) the Company shall not be obligated to effectuate more than one underwritten offering pursuant to a demand registration by the Investor in any six-month period. In addition, if the Company is eligible to register its securities on Form S-3 (or any successor form then in effect), the Investor will be entitled to unlimited registrations on Form S-3 (or any successor form then in effect), including shelf registrations, provided that (x) a minimum of $5,000,000 of Common Stock are offered in such an S-3 registration and (y) the Company will not be obligated to effect more than two S-3 registrations in any twelve month period. An S-3 registration will not count as a demand registration, unless such registration is for an underwritten offering.

The Investor will enter into a standstill agreement with the Company pursuant to which the Investor, with certain limited exceptions, will agree not to purchase any additional shares of the Company's Common Stock until the one year anniversary of the closing date of the transactions contemplated by the Term Sheet.

The closing of the transactions contemplated by the Term Sheet is expected to occur as soon as reasonably practicable after the date of execution of the Term Sheet. The provisions of the Term Sheet are subject to, among other things, satisfactory completion of due diligence by the Investor. There can be no assurance that the transactions contemplated by the Term Sheet will close.

Item 8.01. Other Events

On January 22, 2007, Optionable, Inc. issued a press release announcing that it entered into the Term Sheet. A copy of that press release is filed as Exhibit 99.1 hereto.

Item 9.01. Financial Statements and Exhibits

(d) Exhibits

The following exhibits are furnished as part of this report:

| | |
|---|---|
| Exhibit 99.1 | Press Release dated January 22, 2007, announcing that Optionable, Inc. entered into the Term Sheet |

Page 4 of 6

## SIGNATURE

Pursuant to the requirements of Section 13 or 15 (d) of the Securities Exchange Act of 1934, the Registrant has duly caused this report to be signed on its behalf by the undersigned, thereto duly authorized.

Dated: January 22, 2007

Optionable, Inc.

By:   /s/ Marc-Andre Boisseau
By: Marc-Andre Boisseau
Chief Financial Officer

Page 5 of 6

## EXHIBIT INDEX

| | |
|---|---|
| Exhibit 99.1 | Press Release dated January 22, 2007, announcing that Optionable, Inc. entered into the Term Sheet |

Page 6 of 6

# Optionable Inc (OPBL)

465 COLUMBUS AVENUE
SUITE 280
VALHALLA, NY 10595
914-773-1100
http://www.optionable.com

# EX-99.1

PRESS RELEASE
8-K Filed on 01/22/2007 - Period: 01/22/2007
File Number 000-51837



LIVEDGAR® Information Provided by Global Securities Information, Inc.
800-669-1154
www.gsionline.com

Optionable

NEWS RELEASE for January 22, 2007

OPTIONABLE ANNOUNCES NYMEX HOLDINGS
TO PURCHASE 19 PERCENT OF OUTSTANDING SHARES OF THE COMPANY

Briarcliff Manor, NY, January 22, 2007 - Optionable, Inc. (OTCBB: OPBL) ("Optionable" or the "Company"), a leading provider of natural gas and other energy derivatives brokerage services, announced today that it and three of its founding stockholders have executed a binding term sheet for an agreement with NYMEX Holdings, Inc. (NYSE:NMX) ("NYMEX") concerning certain cooperative technology initiatives, the acquisition of a 19 percent stake in Optionable by NYMEX from its three founding stockholders and the issuance to NYMEX of a warrant which would permit it to increase its stake.

Optionable CEO Kevin Cassidy said, "This strategic relationship between Optionable and NYMEX, the world's largest exchange for the trading of energy futures and options contracts, will propel our growth in energy and other commodity markets. The combination of having NYMEX as a stakeholder in our success and the development of joint technology programs will enhance our high standing within the energy and other commodities derivatives community. The transaction was structured to allow NYMEX to be a stakeholder in Optionable without immediate dilution to existing shareholders, and to allow Optionable's existing management to retain a high percentage of ownership in the Company. We believe that this cooperation between both companies will be extremely favorable to our business, and consequently will be well-received by our existing and potential clients."

NYMEX Chairman Richard Schaeffer said, "We are excited to invest in Optionable and to work with its management to expand NYMEX's position in the options space. As we reflect on the success that NYMEX ClearPort has achieved and look for new areas of growth for the future, we recognize that options trading, both open outcry and electronic, will be a significant component of that future growth. OPEX technology is uniquely positioned to help us achieve our goals. We remain committed to working with the voice brokerage community, which provides significant volume and open interest to NYMEX contracts, in helping them grow their business."

Closing of the transaction, which is expected to occur within sixty days, is subject to NYMEX Board of Directors satisfaction with its reasonable due diligence review and completion of necessary definitive documentation.

About Optionable
Optionable, Inc. is a leading provider of natural gas and other energy derivatives trading and brokerage services, headquartered in Briarcliff Manor, NY. The company provides its services to brokerage firms, financial institutions, energy traders and hedge funds nationwide. In addition to the traditional voice brokerage business, Optionable developed an automated derivatives trading platform. OPEX(R) is a real-time electronic trade matching and brokerage system designed to improve liquidity and transparency in the energy derivatives market. For more information about Optionable and OPEX please visit www.optionable.com.

About NYMEX Holdings, Inc.
NYMEX is the parent company of the New York Mercantile Exchange, Inc., the world's largest physical commodity exchange. NYMEX offers futures and options trading in energy and metals contracts and clearing services for more than 250 off-exchange energy contracts.

Through a hybrid model of open outcry floor trading and electronic trading on CME Globex(R) and NYMEX ClearPort(R), NYMEX offers crude oil, petroleum products, natural gas, coal, electricity, gold, silver, copper, aluminum, platinum group metals, and soft commodities contracts for trading and clearing virtually 24 hours each day.

For more information on NYMEX or the New York Mercantile Exchange, Inc., please visit www.nymex.com.

Safe Harbor Statement
This release contains forward-looking statements which are made pursuant to the safe harbor provisions of Section 21E of the Securities Exchange Act of 1934. The forward-looking statements in this release do not constitute guarantees of future performance. Those statements involve a number of factors that could cause actual results to differ materially, including risks associated with market acceptance of OPEX, our ability to retain key employees, reliance of strategic relationships, intense and increasing competition, concentration of services revenues related to natural gas derivatives, increased governmental regulations as well as other risks detailed in the Company's filings with the Securities and Exchange Commission. Optionable assumes no obligation to update any forward-looking information contained in this press release or with respect to the announcements described herein.

Contact Information:

Rudy Barrio (investors)
Allen & Caron Inc
Tel: 212 691 8087
Email: r.barrio@allencaron.com

or

Brian Kennedy (media)
Allen & Caron Inc
Tel: 212 691 8087
Email: brian@allencaron.com