Paul E. Dans
EDWARDS ANGELL PALMER & DODGE LLP
750 Lexington Avenue
New York, NY 10022-1200
(212) 912-2736


**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------x
                                                     :
**In re: OPTIONABLE, INC.**          :          No. 07-cv-3753 (LAK)
**SECURITIES LITIGATION**            :
                                                     :          ORAL ARGUMENT REQUESTED
-----------------------------------------------------x


### DEFENDANT MARC-ANDRE BOISSEAU'S OPENING MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO DISMISS THE CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

# TABLE OF CONTENTS

**PAGE**

PRELIMINARY STATEMENT.............................................................................................. 1

FACTUAL BACKGROUND ............................................................................................... 3

ARGUMENT ....................................................................................................................... 3

I.      RULE 12(b)(6) MOTION TO DISMISS STANDARD ............................................. 3

II.     THE CAC FAILS TO STATE A VIABLE 10b-5 CLAIM AGAINST
        MR. BOISSEAU.......................................................................................................... 3

        A.      Rule 10b-5 Claims Are Subject To The Heightened Pleading
                Requirements of Rule 9(b) And PSLRA Standards ......................................... 3

                1.      Failure To Demonstrate Motive And Opportunity By Mr.
                        Boisseau To Commit The Securities Fraud ......................................... 5

                2.      Failure   To   Plead   Facts   Constituting   "Strong
                        Circumstantial Evidence Of Conscious Misbehavior Or
                        Recklessness" By Mr. Boisseau........................................................... 10

        B.      Other Pleading Deficiencies That Mandate A Dismissal As To
                Mr. Boisseau ................................................................................................... 13

                1.      The Allegations That Optionable Misrepresented Its
                        Dependence On BMO Do Not State A Claim Against Mr.
                        Boisseau Because The Truth Was Fully Disclosed To The
                        Market .............................................................................................. 13

                2.      Failure To State A Claim Against Mr. Boisseau For
                        Nondisclosure Of Mr. Cassidy's Criminal Convictions ................... 16

        C.      The CAC Fails To State A Cause Of Action Against Mr. Boisseau
                For False Sarbanes-Oxley Certifications ........................................................ 18

III.    PLAINTIFFS' SECTION 20(a) CLAIMS MUST BE DISMISSED AS TO
        MR. BOISSEAU.......................................................................................................... 20

CONCLUSION ................................................................................................................... 24

## **TABLE OF AUTHORITIES**

**CASES**                                                                                     **PAGE**

*Abbad v. Amman,*
    285 F. Supp. 2d 411 (S.D.N.Y. 2003)................................................................8

*Acito v. IMCERA Group,*
    47 F.3d 47 (2d Cir. 1995)...................................................................8, 16

*ATSI Communications, Inc. v. Shaar Fund, LTD.,*
    493 F.3d 87 (2d Cir. 2007)......................................................................21

*Chill v. GE,*
    101 F.3d 263 (2d Cir. 1996)...................................................................8, 11

*Ganino v. Citizens Utils. Co.,*
    228 F.3d 154 (2d Cir. 2000).......................................................................5

*Garfield v. NDC Health Corp.,*
    466 F.3d 1255 (11th Cir. 2006)................................................................20

*Glickman v. Alexander & Alexander Svcs., Inc.,*
    1996 WL 88570 (S.D.N.Y. 1996)...........................................................22

*In re Alstom SA Sec. Litig.,*
    406 F. Supp. 2d 433 (S.D.N.Y. 2005)......................................................21

*In re AOL Time Warner, Inc. Sec. & ERISA Litig.,*
    381 F. Supp. 2d 192 (S.D.N.Y. 2004)......................................................21

*In re Axis Capital Holdings Ltd. Sec. Litig.,*
    456 F. Supp. 2d 576 (S.D.N.Y. 2006)........................................................6

*In re BISYS Sec. Litig.,*
    397 F. Supp. 2d 430 (S.D.N.Y. 2005)........................................................9

*In re Cendant Corp. Sec. Litig.*
    76 F. Supp. 2d 539 (D.N.J. 1999) ...........................................................12

*In re Citigroup, Inc. Sec. Litig.,*
    330 F. Supp. 2d 367 (S.D.N.Y. 2004)..............................................7, 9, 22

*In re Criimi Mae, Inc. Sec. Litig.,*
    94 F. Supp. 2d 652 (D. Md. 2000) ..........................................................12

*In re Espeed, Inc. Sec. Litig.*,
   457 F. Supp. 2d 266 (S.D.N.Y. 2006)................................................................5, 6

*In re Global Crossing*,
   2005 WL 2990646 (S.D.N.Y. 2006) ................................................................ 21

*In re Global Crossing, Ltd. Sec. Litig.*,
   2005 WL 1875445 (S.D.N.Y. Aug. 5, 2005)........................................................21

*In re Health Mgmt., Inc., Sec. Litig.*,
   970 F. Supp. 192 (E.D.N.Y. 1997) .......................................................7, 12, 22

*In re Health Mgmt. Sys., Inc. Sec. Litig.*
   1998 WL 283286 (S.D.N.Y. 1998)................................................8, 9, 16, 22

*In re Hypercom Corp. Sec. Litig.*,
   2006 WL 1836181(D. Ariz. July 5, 2006) ....................................................20

*In re IAC/InterActive Corp Sec. Litig.*,
   478 F. Supp. 2d 574 (S.D.N.Y. 2007)...........................................................16

*In re NTL, Inc. Sec. Litig.*,
   347 F. Supp. 2d  15 (S.D.N.Y. 2004)................................................8, 12, 16

*In re Parmalat Sec. Litig.*,
   376 F.Supp.2d 472 (S.D.N.Y. 2005)................................................17, 21, 22

*In re Sierra Wireless, Inc. Sec. Litig.*,
   482 F. Supp. 2d 365 (S.D.N.Y. 2007)...........................................................16

*In re Sotheby's Holdngs, Inc.*,
   2000 WL 1234601 (S.D.N.Y. 2000)..............................................................11

*In re WorldCom Inc., Sec. Litig.*,
   294 F. Supp. 2d 392 (S.D.N.Y. 2003)................................................10, 11, 12

*In re WRT Energy Sec. Litig.*,
   1997 WL 576023 (S.D.N.Y. Sept. 15, 1997)...............................................11

*In re Yukos Oil Co. Sec. Litig.*,
   2006 WL 3026024 (S.D.N.Y. 2006)..............................................................11

*Jacobs v. Coopers & Lybrand, L.L.P.*,
   1999 WL 101772 (S.D.N.Y. 1999).................................................................7

*Kalin v. Xanboo, Inc.*,
   2007 WL 273546 (S.D.N.Y. Jan. 31, 2007)...................................................22

*Kalnit v. Eichler,*
    85 F.Supp.2d 232 (S.D.N.Y. 1999).................................................................4

*Kalnit v. Eichler,*
    264 F.3d 131 (2d Cir. 2001)..........................................................5, 6, 10

*Lentell v. Merill Lynch & Co.,*
    369 F.3d 161 (2d Cir. 2005)..........................................................17

*Miller v. Lazard, Ltd.,*
    473 F.Supp. 2d 571 (S.D.N.Y. 2007)...................................................3, 4

*Mills v. Polar Molecular Corp.,*
    12 F.3d 1170 (2d Cir. 1993)..........................................................7

*Novak v. Kasakas,*
    216 F.3d 300 (2d Cir. 2000)
    *cert. denied,* 531 U.S. 1012 (2000) ...................................................5, 8, 10

*NYMEX v. ICE,*
    497 F.3d 109 (2d Cir. 2007) .........................................................15

*Pension Comm. Of the Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC,*
    446 F.Supp. 2d 163 (S.D.N.Y. 2006)...................................................7

*Rombach v. Chang,*
    355 F.3d 164 (2d Cir. 2004)..........................................................9, 16

*San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Co.,*
    75 F.3d 801 (2d Cir. 1996).........................................................16

*SEC v. First Jersey Sec., Inc.,*
    101 F.3d 1450 (2d Cir. 1996)........................................................21

*Securities and Exchange Commission v. Texas Gulf Sulphur Co.,*
    401 F.2d 833 (2d Cir. 1968),
    *cert. denied,* 394 U.S. 976 (1969) ...................................................17

*Shields v. Citytrust Bancorp, Inc.,*
    25 F.3d 1124 (2d Cir. 1994).........................................................5, 11, 13, 16

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,*
    127 S. Ct. 2499 (2007) .............................................................4, 5

*Tuchman v. DSC Comms. Corp.,*
    14 F.3d 1061 (5th Cir. 1994)......................................................19

## **STATUTES**

Private Securities Litigation Reform Act of 1995,
  15 U.S.C. § 78u-4(b)(2) ................................................................................................1, 4

Securities Exchange Act of 1934,
  15 U.S.C. § 78t(a)........................................................................................... 2, 19, 20

Section 302(a)(5)(A) of Sarbanes-
  Oxley, 15 U.S.C. § 7241 ...............................................................................................17

## **REGULATIONS**

17 C.F.R. § 228.401(a).........................................................................................................17

17 C.F.R. § 228.401(d) ........................................................................................................17

17 C.F.R. § 229.401(a).........................................................................................................17

17 C.F.R. § 229.401(f) .........................................................................................................17

17 C.F.R. § 249.310b ...........................................................................................................18

## **PRELIMINARY STATEMENT**

Pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure and the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4(b)(2) ("PSLRA"), defendant Marc-Andre Boisseau ("Mr. Boisseau") respectfully submits this Opening Memorandum of Law in support of his Motion to Dismiss the Consolidated Amended Class Action Complaint filed by plaintiffs on January 17, 2008 ("Complaint" or "CAC"). The CAC fails, as a matter of law, to allege any viable securities fraud claims.

Mr. Boisseau is, and was at all relevant times, the Chief Financial Officer ("CFO") of Optionable, Inc. ("Optionable" or the "Company"). Unlike the other individual defendants, Mr. Boisseau never served as a director of Optionable, nor did he, at any time, purchase or sell any of the Company's securities. Notwithstanding the unique position of Mr. Boisseau, the CAC fails to plead anything against him with requisite particularity. Indeed, beyond his identification as a defendant, Mr. Boisseau is identified by name only six times in the entire 95-paragraph CAC. Importantly, were it not for his mere title of CFO -- which, without more, is a tenuous and legally inadequate basis for liability -- plaintiffs would have had no independent factual basis to name him as a defendant.

Written as if the stringent pleading requirements in a securities fraud case do not matter, the CAC relies heavily (and inappropriately) on "group" pleading, making it difficult for the individual defendants, particularly Mr. Boisseau, to determine precisely what allegations are directed to whom. That said, the motions to dismiss and accompanying memoranda of law filed by both Optionable and Mr. Boisseau's individual co-defendants adequately expose plaintiffs' multiple pleading deficiencies. Consequently, Mr. Boisseau relies upon, and incorporates herein by reference, each of those memoranda.

This memorandum submitted on behalf of Mr. Boisseau presents arguments that relate specifically to Mr. Boisseau and supplements the arguments set forth in the memoranda filed on behalf of the Company and Mr. Boisseau's individual co-defendants. Only two of the CAC's three counts are asserted against Mr. Boisseau. The first is an alleged violation of Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder (Count I), and the second is an alleged violation of Section 20(a) of the Exchange Act (Count II).

In summary, the CAC should be dismissed as to Mr. Boisseau because of any one of the following *independent* reasons: (i) the CAC does not demonstrate that any statement by Mr. Boisseau was actually false; (ii) the CAC does not demonstrate that any of the "alleged" statements or omissions is material; (iii) there is no casual connection between the liability allegations and plaintiffs' alleged losses; and (iv) importantly, the CAC fails to plead particularized "cogent" facts demonstrating a "strong inference" that Mr. Boisseau acted with a "fraudulent state of mind." The falsity, materiality and causation arguments are thoroughly addressed by the memoranda filed by Optionable and Mr. Boisseau's individual co-defendants, and therefore, this memorandum touches on those issues only in summary fashion. The principal focus of this memorandum is to demonstrate that plaintiffs have failed to satisfy the scienter requirement for the 10b-5 claim and that the Section 20(a) claim fails to state a claim.

## FACTUAL BACKGROUND

Mr. Boisseau relies upon, and incorporates herein by reference, the memoranda, and accompanying exhibits, affidavits and declarations, filed by Optionable and Mr. Boisseau's individual co-defendants in support of their respective motions to dismiss. Any additional factual presentations related specifically to Mr. Boisseau are set forth in the appropriate sections of the legal arguments below.

## ARGUMENT

### I.    RULE 12(b)(6) MOTION TO DISMISS STANDARD

Mr. Boisseau adopts the discussion of the standard applicable to motions to dismiss set forth in the memoranda filed by Optionable and Mr. Boisseau's individual co-defendants as well as all legal arguments set forth therein.

### II.    THE CAC FAILS TO STATE A VIABLE 10b-5 CLAIM AGAINST MR. BOISSEAU

#### A.    Rule 10b-5 Claims Are Subject To The Heightened Pleading Requirements of Rule 9(b) And PSLRA Standards

To state a claim under Section 10 and Rule 10b-5, a plaintiff must allege the following elements:  (i) defendant made a false statement or omitted a material fact; (ii) scienter; and (iii) plaintiff's reliance on defendant's action caused plaintiff injury. *Miller v. Lazard, Ltd.*, 473 F.Supp.2d 571, 579-80 (S.D.N.Y. 2007).  As part of pleading a *prima facie* case of securities fraud, a plaintiff, as part of the scienter element, must allege a state of mind evidencing an intent to deceive, manipulate, or defraud. *Id.* at 580. In the Second Circuit, this can only be done by pleading facts (i) showing that defendants had both motive and opportunity to commit fraud; or (ii) constituting strong circumstantial evidence

of conscious misbehavior or recklessness. *Id.* at 580-81; *Kalnit v. Eichler*, 85 F.Supp.2d 232, 242 (S.D.N.Y. 1999).

Not only must plaintiffs set forth non-conclusory allegations sufficient to satisfy each element of plaintiffs' *prima facie* case, such allegations in a securities fraud case are subject to the onerous pleading requirements of both Federal Rule of Civil Procedure 9(b) as well as the PSLRA.   Under the PSLRA, a plaintiff alleging that a defendant made false and misleading statements must (i) "specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading," 15 U.S.C. § 78u-4(b)(1);[1] and (ii) "state with particularity facts giving rise to a *strong inference* that the defendant acted with the required state of mind [*i.e.,* scienter]." *Id.* at § 78u-4(b)(2) (emphasis added).

Importantly, these pleading requirements are further informed by the U.S. Supreme Court's recent decision in *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499 (2007).   In *Tellabs*, the Court considered the PSLRA's requirement that a private securities plaintiff allege facts giving rise to a "strong inference" that the defendant acted with scienter.   The Court noted that Congress left this term undefined and was therefore compelled to resolve a split in the Circuits as to the proper interpretation of the phrase "strong inference."[2]   The Court concluded that

> [a]n inference of fraudulent intent may be plausible, yet less
> cogent than other, nonculpable explanations for the
> defendant's conduct.   To qualify as "strong" within the
> intendment of [15 U.S.C. § 78u-4(b)(2)], we hold, an

---

[1] The PSLRA also requires that "if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1).

[2] "Our task is to prescribe a workable construction of the 'strong inference' standard. . . ." *Tellabs*, 127 S.Ct. at 2510.

> inference of scienter must be more than merely plausible or
> reasonable – it must be cogent and at least as compelling as
> any opposing inference of nonfraudulent intent.

*Tellabs*, 127 S.Ct. at 2504-05.   In other words, even if plaintiffs satisfy the threshold requirement of coming forward with allegations that are deemed by the Court to be "cogent," which they cannot, the Court must undertake a comparative analysis, taking "into account plausible opposing inferences" that provide nonculpable explanations for the alleged conduct. *Tellabs*, 127 S. Ct. at 2509-10.

What all this means for the present case is that if plaintiffs' supposed culpable inferences are not at least as plausible as nonculpable inferences, the CAC must be dismissed as to Mr. Boisseau. *Id.* at 2511.   As demonstrated below, plaintiffs have not satisfied the scienter element, as informed by *Tellabs*, under either test recognized by the Second Circuit.

### 1.    Failure To Demonstrate Motive And Opportunity By Mr. Boisseau To Commit The Securities Fraud

In the Second Circuit, "[m]otive [entails] concrete benefits that could be realized by one or more of the false statements and wrongful nondisclosures alleged," whereas "[o]pportunity [entails] the . . . likely prospect of achieving concrete benefits by the means alleged." *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1130 (2d Cir. 1994); *Novak v. Kasakas*, 216 F.3d 300, 307 (2d Cir. 2000) *cert. denied*, 531 U.S. 1012 (2000).   "General allegations that the defendants acted in their economic self-interest are not enough," *Ganino v. Citizens Utils. Co.*, 228 F.3d 154, 170 (2d Cir. 2000), and "[m]otives that are generally possessed by most corporate directors and officers do not suffice." *Kalnit v. Eichler*, 264 F.3d 131, 139 (2d Cir. 2001); *In re Espeed, Inc. Sec. Litig.*, 457 F. Supp. 2d

266, 281 (S.D.N.Y. 2006).[3]

As to Mr. Boisseau, plaintiffs have failed to set forth any facts from which one could reasonably infer motive, plausible or otherwise, and have therefore failed to satisfy their burden of alleging a "strong inference" of fraudulent intent. The only statements in the entire CAC that arguably attempt to satisfy the scienter requirement do so in "group" fashion without a single allegation of a motive or opportunity as to Mr. Boisseau. *See, e.g.*, CAC, ¶ 83) ("Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth . . ."). This "group" pleading is defective as to all of the individual defendants, but even more so as to Mr. Boisseau because of his unique position -- to reiterate, he was not a director and never purchased or sold any Optionable securities. What is also missing from the CAC is any particularized facts showing that Mr. Boisseau: (i) knew of any alleged scheme "to grossly misprice options with BMO" (CAC, ¶ 10), (ii) knew of OPEX's purported failings as a "viable platform" (CAC, ¶ 18), (iii) knew of any alleged improper personal relationships between Optionable personnel and BMO traders (CAC, ¶ 49), or (iv) knew any of anything that would demonstrate a fraudulent state of mind.

---

[3]   Thus, "the desire of individual defendants 'to keep their jobs or increase their compensation by artificially inflating stock price' is not sufficient to establish motive," *In re Axis Capital Holdings Ltd. Sec. Litig.*, 456 F. Supp. 2d 576, 594 (S.D.N.Y. 2006). The reason such allegations are deemed deficient is that as they are "too generalized to demonstrate defendants concrete and personal benefit from the alleged fraud." *Kalnit*, 264 F.3d at 139-40 (rejecting claim based on allegation executives and board members kept negative information from shareholders to obtain greater compensation by increasing stock price to protect their positions with the company).

Plaintiffs simply cannot make up for a lack of particularized facts as to Mr. Boisseau by relying upon the group pleading doctrine to satisfy their pleading burden as to Mr. Boisseau.   The scienter requirement can only be met with particularized facts demonstrating a "strong inference" of Mr. Boisseau's fraudulent state of mind to violate the securities laws, which means that plaintiffs must allege that Mr. Boisseau *himself* "personally knew of, or participated in, the fraud." *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993).   In this regard, plaintiffs must allege facts sufficient to show that Mr. Boisseau had knowledge that alleged misstatements and omissions were material and false at the time they were made. *Id.; see also Jacobs v. Coopers & Lybrand, L.L.P.*, 1999 WL 101772 *16-17 (S.D.N.Y. 1999); *Pension Comm. Of the Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, 446 F. Supp. 2d 163, 180 (S.D.N.Y. 2006) (bare allegations of inside information insufficient without allegations defendant had control over content of statements). The CAC is devoid of any such allegations.

Here, plaintiffs simply plead, in conclusory fashion and without particularized factual allegations, that Mr. Boisseau had direct and supervisory involvement in the day-to-day operations of Optionable.   However, such conclusory allegations are insufficient to plead scienter because an individual's mere position as an officer (or even as a board member, which Mr. Boisseau was not) standing alone, is insufficient to support an inference of scienter. *In re Citigroup, Inc. Sec. Litig.*, 330 F. Supp. 2d 367, 381-382 (S.D.N.Y. 2004); *see also In re Health Mgmt., Inc., Sec. Litig.*, 970 F. Supp. 192, 204 (E.D.N.Y. 1997).

As to Mr. Boisseau, plaintiffs do not and cannot point to increased executive compensation as a motive (a theory repeatedly rejected by courts in any event[4]), and plaintiffs do not and could not allege that Mr. Boisseau purchased and sold any Optionable securities during the alleged Class Period. Rather, the gravamen of plaintiffs' "theory" is that the defendants, collectively, engaged in a so-called scheme which allowed Optionable to keep BMO as a client for a longer period of time when they knew of, and failed to disclose, NYMEX's plans to expand its relationship with CME. Of course, this "theory" is ineffective as to Mr. Boisseau because it is not supported by any alleged *benefit* to Mr. Boisseau for his supposedly keeping material information from the investing public. Again, this is precisely the sort of generalized corporate benefit that courts consistently reject. *See Chill v. GE*, 101 F.3d 263, 268 (2d Cir. 1996).[5]

Finally, plaintiffs cannot rely on the stock sales by defendants Cassidy, Nordlicht, and O'Connor to satisfy the scienter request against Mr. Boisseau. While plaintiffs suggest that such sales of stock constitute motive and opportunity on the part of defendants Cassidy, Nordlicht, and O'Connor, Mr. Boisseau neither purchased nor sold any shares of Optionable as part of the NYMEX transaction, at any other time during the Class Period, or ever. *In re Health Management Systems, Inc. Sec. Litig.*, 1998 WL 283286 at * 6

---

[4] *Novak*, 216 F.3d at 307 (plaintiffs could not proceed based on motives possessed by virtually all insiders, including desire to maintain a high stock price to increase compensation); *Acito v. IMCERA Group*, 47 F.3d 47, 54 (2d Cir. 1995) ("existence, without more, of executive compensation dependent upon stock value does not give rise to a strong inference of scienter").

[5] Plaintiffs' defective pleading is nothing more than "fraud by hindsight," which is inactionable under the federal securities laws. *In re NTL, Inc. Sec. Litig.*, 347 F. Supp. 2d 15, 26-27 (S.D.N.Y. 2004). Plaintiffs have done little more than charge the individual defendants with failing to disclose knowledge of future events, ignoring the law that "lack of clairvoyance simply does not constitute securities fraud." *Abbad v. Amman*, 285 F. Supp. 2d 411, 415 (S.D.N.Y. 2003).

(S.D.N.Y. 1998) (no inference of scienter where, during the class period, seven defendants sold on average in excess of 20% of their holdings, but one defendant (the CFO) sold no shares and actually bought shares along with one other defendant); *see also Rombach v. Chang*, 355 F.3d 164, 177 (2d Cir. 2004) (scienter not alleged where defendants never sold stock or profited in any way during relevant period and, instead, purchased company's stock after price collapsed, were among company's largest shareholders and shared the pain when company failed); *In re BISYS Sec. Litig.*, 397 F. Supp. 2d 430, 440 (S.D.N.Y. 2005) (two individual defendants actually purchased more stock during the class period than they sold).

To establish scienter through motive and opportunity, plaintiffs must allege -- but have not alleged -- that Mr. Boisseau "'benefited in some concrete and personal way from the purported fraud,' such as by profiting from insider sales at artificially inflated prices." *In re Citigroup, Inc. Sec. Litig.*, 330 F. Supp. 2d at 380; *see also In re BISYS Sec. Litig.*, 397 F. Supp. 2d at 442 ("must demonstrate the presence of 'concrete benefits that could be realized by one or more of the false statements and wrongful nondisclosures alleged' as well 'the means and likely prospect of achieving concrete benefits by the means alleged.'"). Simply put, the Section 10(b) claim must be dismissed.

Thus, plaintiffs have failed to allege motive cognizable under Second Circuit law. Plaintiffs' reliance on generalized allegations of motive and opportunity fail to give rise to a "strong inference" of scienter under settled PLSRA pleading standards.

2.    **Failure To Plead Facts Constituting "Strong Circumstantial Evidence of Conscious Misbehavior Or Recklessness" By Mr. Boisseau**

To establish a "cogent and compelling" allegation of recklessness or conscious misbehavior, a plaintiff must allege particularized facts showing "deliberate illegal behavior" and "conduct which is highly unreasonable and which represents an extreme departure from the standards of ordinary care to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it." *In re WorldCom*, 294 F. Supp. 2d 392, 412 (S.D.N.Y. 2003); *Novak v. Kasakas*, 216 F.3d at 308. The particular facts surrounding the accused individuals as well as the particular facts of the operations of the company at issue are crucial in determining what is "highly unreasonable" and what would constitute "an extreme departure from the standards of ordinary care," *Kalnit*, 264 F.3d at 138. Here, the CAC makes no specific factual allegations about Optionable's business or Mr. Boisseau's role; instead, the CAC contains boilerplate assertions against all of the individual defendants. (*See, e.g.*, CAC, ¶¶ 82-83).

Although the CAC asserts that "defendants," and presumably Mr. Boisseau, "knew" various undisclosed facts, no particularized facts as to Mr. Boisseau are actually set forth in the CAC to support that claim. Plaintiffs simply fail to set forth the content of any of the "information" to which Mr. Boisseau supposedly had access. As observed in *In re Worldcom*, "[i]f plaintiffs rely on allegations that the defendants had access to fact[s] contradicting their public statements, plaintiffs must *specifically identify* the reports or

statements containing this information." 294 F. Supp. 2d at 412 (emphasis added).[6]  The
CAC does not first, identify specific "red flags" that might have indicated inappropriate
quotes provided by Optionable to BMO for marking its book to market, and then second,
connect them to Mr. Boisseau with cogent allegations demonstrating a fraudulent state of
mind. *See Chill*, 101 F.3d at 269 (defendant ignored significant "red warning flags" that
its subsidiary was engaging in sham trades to inflate profits on a massive scale).  This is
fatal; presumptions or allegations of theoretical knowledge do not give rise to an inference
of scienter even for a management executive with his hands on the operations of the
company. *See In re Sotheby's.*, 2000 WL 1234601 at *7-8 (S.D.N.Y. 2000) ("[C]ourts
have routinely rejected the attempt to plead scienter based on allegations that because of
defendants' board membership and/or their executive managerial positions, they had
access to information concerning the company's adverse financial outlook."); *In re WRT
Energy Sec. Litig.*, 1997 WL 576023 *14 (S.D.N.Y. Sept. 15, 1997) ("allegations of access
standing alone do not constitute strong circumstantial evidence of conscious misbehavior
or recklessness").

---

[6]  *See also In re Yukos Oil Co. Sec. Litig.*, 2006 WL 3026024 * 20 (S.D.N.Y. 2006)
(dismissing securities fraud claim where conclusory allegations that executives had
"access" to internal documents and undisclosed information found to be "insufficient as a
matter of law to establish [executive's] conscious misbehavior and recklessness"); *In re
Sotheby's Holdings, Inc.*, 2000 WL 1234601 *8-9 ("[C]onclusory allegations – that
defendants 'knew but concealed' some things, or 'knew or were reckless in not knowing'
other things – do not satisfy the requirements of Rule 9(b), such allegations are 'so broad
and conclusory as to be meaningless.'") (*quoting Shields.*, 25 F.3d at 1129).

Were plaintiffs to have their way, they would impose strict liability on Mr. Boisseau and eviscerate the scienter requirement of securities fraud claims. *See e.g. In re Health Mgt.*, 970 F. Supp. at 205 (if court were to infer scienter merely from "senior management position," "the executives of virtually every corporation in the United States would be subject to fraud allegations"). That is not the law. While the CAC alleges that Mr. Boisseau signed the 2006 10-KSB filed on March 23, 2007 (CAC, ¶¶ 13 and 67), this signature alone is insufficient to allege scienter. *See In re WorldCom*, 294 F. Supp. 2d. at 418-19 (plaintiff failed to allege scienter despite fact that audit committee members signed 10-K forms); *In re Criimi Mae, Inc. Sec. Litig.*, 94 F. Supp. 2d 652, 661 (D. Md. 2000) (inference that defendants who signed company's public filings "must have known" statements at issue were false did not establish scienter); *In re Cendant Corp. Sec. Litig.* 76 F. Supp. 2d 539, 547 (D.N.J. 1999) (allegations that officer/director signed public disclosures do not establish scienter, even coupled with allegations of daily involvement in company). Consequently, plaintiffs have failed to allege facts constituting strong circumstantial evidence that Mr. Boisseau consciously or recklessly engaged in fraudulent acts. Instead, plaintiffs have pled an inactionable fraud by hindsight claim. *In re NTL*, 347 F. Supp. 2d at 26-27.

Given the absence of any factual allegations that Mr. Boisseau himself had motive and opportunity to commit fraud, or that he consciously or recklessly engaged in fraudulent acts, plaintiffs have failed to state a claim for a violation of Section 10(b) and Rule 10b-5 promulgated thereunder. Moreover, plaintiffs fail to allege implausibility for the logical non-fraudulent inferences of what actually happened during the Class Period and that defendants, including Mr. Boisseau, had the normal run-of-the mill non-fraudulent

intent that Optionable would succeed in its business. Indeed, plaintiffs' factual allegations, when considered in conjunction with the additional information Optionable and Mr. Boisseau's individual co-defendants have provided to the Court, support inferences of non-fraudulent conduct that are far more persuasive than any inference of scienter.

**B.    Other Pleading Deficiencies That Mandate A Dismissal As To Mr. Boisseau**

      **1.    The Allegations That Optionable Misrepresented Its Dependence on BMO Do Not State A Claim Against Mr. Boisseau Because The Truth Was Fully Disclosed To The Market**

Plaintiffs try to make much of, and quote extensively from, a May 1, 2007 Optionable conference call with financial analysts and investors to support their claim that Optionable "downplay[ed] the significant risk that the loss of revenue from BMO represented." (CAC, ¶ 27). The CAC breaks the conference call down into five categories: (i) "Relationship Between David Lee and Optionable"; (ii) "Nordlicht Resignation"; (iii) "BMO: Exposure for Optionable; Contemporary Risk"; (iv) "Status of BMO/Optionable Relationship"; and (v) "OPEX Technology and Platform." Statements attributable to Mr. Boisseau fall into only _one_ of the five categories -- "BMO: Exposure for Optionable; Contemporary Risk" -- which statements, in their entirety, are as follows:

> ANALYST: ... Can you give us a sense, in terms of the exposure, in terms of the first quarter from BMO, in terms of their revenue?
>
> BOISSEAU: Well, they accounted for 30% of our revenues.
>
> ANALYST: And is it fair to say that, the right way to look at this from your vantage point that it's more than that, the exposure's more than that because of the counter party risk? Or is that the wrong way to think about it?
>
> HELMIG: This is Albert Helmig. There is no counter party, because they're clear transactions.

ANALYST: I'm sorry, not counter party risks, but in terms of overall transactions, they are -- because you, two-thirds or three-quarters of your trades are done a counter party basis, I'm in the understanding that that, the overall exposure to transactions that are related with BMO is higher than 30%. Is that fair to say?

CASSIDY: You really can't make a statement that way, because not all of those transactions are brokered by counter party.

ANALYST: Well, what I'm trying to figure out is how much of your growth is attributed to BMO. …

BOISSEAU: I think we have to be careful when we analyze. Just forget about BMO, but any given client in our industry. What happens is that, when two market participants enter into a trade, it doesn't mean that because one of them would not make the trade that there's not another one that would enter into it or that would enter into a similar trade. So, whether it's BMO or any other client that we have, it doesn't necessarily mean that because it's BMO or a third client that makes the trade, that we wouldn't be able to make another one with a different client. Now, I can't tell you that those would be, that we can replace any given client for a hundred percent of the trade. But there is enough market participants to enter into a trade to accommodate them.

ANALYST: Right. So, if BMO today ceased to exist, do you think you would still, you would be able to capture at lease more than half?

BOISSEAU: First of all, I think this is a hypothetical question. I don't think that BMO is going away. They certainly didn't indicate that they're going away. They're a solid company. They have a strong financial position.

***

ANALYST: Okay. I mean, is business good right now? Is it [the problems with BMO] creating some volatility which is bringing new players in?

CASSIDY: We haven't seen any trend change.

(CAC, ¶ 27).

Despite all the quoting, plaintiffs fail to plead how Mr. Boisseau's statements on the call were materially false and misleading when made, or even false at all. Moreover, it is plain from the face of both Optionable's and NYMEX's public filings that these

statements were true. During the analyst call, Mr. Boisseau stated that BMO accounted for 30% of Optionable's revenue and he also explained the significance of counterparty transactions. Both of these statements are true, and are consistent with Optionable's public filings. *See* Optionable Form 10-KBS for the period ended December 31, 2006 at 19 (disclosing that on over-the-counter transactions, Optionable bills its "service to both counterparties"); March 23, 2007 Form 10-KSB at 20 (stating that if BMO "would not have entered into a portion or all of the OTC transactions in which they were involved, our 2006 revenues could have been lower if we wouldn't have been to find a suitable counterparty to replace them in such transactions"). Moreover, as the Second Circuit recognized in *NYMEX v. ICE*, there is no counterparty credit risk because the clearing facility "becomes the buyer to every seller and the seller to every buyer." 497 F.3d 109 at 111 n.1 (2d Cir. 2007). No other statements on the subject are attributable to Mr. Boisseau, and while the statements attributable to Mr. Boisseau standing alone fail to state a claim, all doubt is removed when those statements are considered in conjunction with other statements and disclosures made by Optionable. Indeed, it simply cannot be ignored that Optionable fully disclosed the nature of its business, fully disclosed the percentage of its revenues that came directly from BMO, including the quarter by quarter growth of Optionable's business with BMO, and fully disclosed that BMO's presence as a customer helped Optionable generate commissions from participants in trades with BMO. Moreover, after BMO ceased to rely upon Optionable for brokerage and execution, the OTC options market continued to thrive with BMO as a participant.

In a classic attempt at "fraud by hindsight," plaintiffs point out that Optionable earned "99% less net revenues in 3Q:07 -- after it lost BMO as a client -- as it did just two

quarters prior in 1Q:07." (CAC, ¶ 31).   However, this does not establish that Mr.

Boisseau's statements were intentionally false when made.   Courts have repeatedly

rejected such defective efforts. *See, e.g., In re Sierra Wireless, Inc. Sec. Litig.*, 482 F.

Supp. 2d 365, 373 (S.D.N.Y. 2007); *In re IAC/InterActive Corp Sec. Litig.*, 478 F. Supp.

2d 574, 587 (S.D.N.Y. 2007); *In re Health Management Systems, Inc. Sec. Litig.*, 1998 WL

283286 * 5 (S.D.N.Y. 1998); *Acito v. IMCERA Group*, 47 F.3d 47, 53 (2d Cir. 1995); .

"[L]ack of clairvoyance," no matter how much plaintiffs would like this Court to hold

otherwise, does not constitute fraud. *In re NTL, Inc. Sec. Litig.*, 347 F. Supp. 2d at 26-27.[7]

### 2.   Failure To State A Claim Against Mr. Boisseau For Nondisclosure Of Mr. Cassidy's Criminal Convictions

Plaintiffs' allegations regarding the nondisclosure of Mr. Cassidy's convictions fail

as a matter of law for the simple reason that plaintiffs have not even alleged that Mr.

Boisseau actually knew about both of Mr. Cassidy's convictions.   Again, this securities

fraud claim must be dismissed as to Mr. Boisseau.

Plaintiffs' allegations regarding the nondisclosure of Mr. Cassidy's convictions fail

for yet another reason.   Optionable was under no duty to disclose Mr. Cassidy's prior

convictions, the most recent of which was 10 years prior to the Class Period. (CAC, ¶ 16).

---

[7]  Furthermore, the alleged comments of all the defendants, taken collectively, fall within the category of generalized statements of corporate optimism that courts routinely reject as a basis for securities fraud claims. *See, e.g., Rombach*, 355 F.3d at 174-75; *Shields*, 25 F.3d at 1129 ("People in charge of an enterprise are not required to take a gloomy, fearful or defeatist view of the future" and "misguided optimism is not a cause of action, and does not support an inference of fraud"); *In re Sierra Wireless, Inc. Sec. Litig.*, 482 F. Supp. 2d at 373; *San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Co.*, 75 F.3d 801, 811 (2d Cir. 1996).   In fact, it is well recognized that In *re Sierra Wireless, Inc. Sec. Litig.*, 482 F. Supp. 2d at 373 (broadly optimistic pronouncements about the future of the business are expressions of puffery and corporate optimism that do not give rise to securities violations).

Even if Mr. Cassidy had been an officer at that time of the relevant public filings, the Company still was not obligated to disclose the convictions.  Item 401 of Regulation S-B and Regulation S-K requires companies to disclose certain legal proceedings within the past *five years* only if they are "material to an evaluation of the ability and integrity" of its officers and directors, including a conviction in a criminal proceeding.  17 C.F.R. § 228.401(a), (d); 17 C.F.R. § 229.401(a), (f).  Item 9 of Form 10-KSB requires the information required by Item 401.  Because Mr. Cassidy's convictions were both older than five years, neither would have been required disclosures under Item 9.  *Securities and Exchange Commission v. Texas Gulf Sulphur Co.*, 401 F.2d 833, 862 (2d Cir. 1968), *cert. denied*, 394 U.S. 976 (1969).  Even if Mr. Cassidy's convictions were disclosable, which they were not, plaintiffs failed to allege any nexus between the nondisclosure and their alleged losses.  *In Re Parmalat Sec. Litig.*, 376 F.Supp.2d 472, 510 (S.D.N.Y. 2005) (Kaplan, J.) (citing *Lentell v. Merill Lynch & Co.*, 369 F.3d 161, 175 (2d Cir. 2005) (noting that "[t]o plead loss causation, the complaint must allege facts that support an inference that [the defendant's] misstatements and omissions concealed the circumstances that bear upon the loss suffered such that plaintiffs would have been spared all or an ascertainable portion of that loss absent the fraud").

Plaintiffs also allege that the nondisclosure of Mr. Cassidy's convictions is a violation of Section 302 of the Sarbanes-Oxley Act of 2002.  (CAC, ¶¶ 23-24).  Section 302(a)(5)(A) of Sarbanes-Oxley, 15 U.S.C. § 7241, requires certification that signing officers of companies filing "reports under section 13(a) or 15(d)" of the Exchange Act have disclosed to the company's auditors and audit committee "any fraud...that involves management...."  Optionable uses Form 10-KSB for its annual and transitional reports

under section 13 or 15(d) of the Exchange Act, *see* 17 C.F.R. § 249.310b, and, as set forth above, Item 9 of Form 10-KSB requires the information required by Item 401. Because, as explained above, Optionable met the requirements of Item 401, it also met its obligations under Section 302 of Sarbanes-Oxley. No less significantly, the CAC fails to allege that Mr. Cassidy's convictions were (i) related or material to Optionable's business, (ii) related to or had any impact on Optionable's earnings, or (iii) were related to the oil and gas derivatives business, the securities industry, the commodities industry, or the tasks Mr. Cassidy performed for Optionable. Indeed, Mr. Cassidy's convictions took place well before Optionable even existed. (*See* CAC, ¶ 16). Therefore, the nondisclosure of Mr. Cassidy's convictions is not a violation of Sarbanes-Oxley, and there is no liability to Mr. Boisseau for having signed the Sarbanes-Oxley certifications.

**C.    The CAC Fails To State A Cause Of Action Against Mr. Boisseau For False Sarbanes-Oxley Certifications**

The inadequacy of the substantive underpinings of this securities class action aside, because plaintiffs have no facts demonstrating Mr. Boisseau's culpability, in an effort to try to take advantage of Mr. Boisseau's title as CEO, plaintiffs allege that he filed false Sarbanes-Oxley certifications. (CAC, ¶¶ 23-24). Of course, Mr. Boisseau's mere title alone is insufficient to impose liability, and the allegations here are boilerplate and nothing more than an effort to bootstrap on to a combination of plaintiffs' inadequate substantive allegations and plaintiffs' claims regarding Optionable's supposedly weak internal controls.

Starting with the internal controls issue, plaintiffs allege that because certain members of Optionable's management controlled 50 percent of the Company and because the Company had no audit or compensation committees, Optionable's internal controls

were not adequate to ensure accurate and timely SEC disclosures, and therefore, its representations regarding its internal controls were false. (CAC, ¶ 20). This claim is based on a false premise concerning the adequacy of the controls, but, more importantly, the claim ignores the fact that the internal controls were accurately represented. Indeed, in the very same Form 10-KSB that forms the basis of plaintiffs' claims, Optionable stated that "[o]ur officer and directors beneficially own approximately 50% of our outstanding common stock," and further disclosed that "[w]e do not have an audit committee or a compensation committee." As a matter of law, where the underlying facts are fully disclosed, there can be no claim for misrepresentations based on how an issuer _characterizes_ (or fails to characterize) those facts. *See, e.g., Tuchman v. DSC Comms. Corp.*, 14 F.3d 1061, 1069 (5th Cir. 1994) ("defendants [] under no duty to 'employ the adjectorial characterization' that the plaintiffs believe is more accurate") (internal citations omitted). Thus, the characterization of Optionable's internal controls is not actionable. Further, causation is another problem for plaintiffs. Plaintiffs have not alleged (because they cannot explain) how a different management structure (*i.e.*, if Optionable had an audit or compensation committee) would have changed anything about Optionable's SEC disclosures. To state the obvious, if a company does not have an audit or compensation committee, the board of directors is responsible for fulfilling that function.

Again, Mr. Boisseau was not a director. It is within Optionable's actual internal control environment that Mr. Boisseau's Sarbanes-Oxley certifications must be evaluated, but plaintiffs do not explain with the required particularity any of the matters they say render Mr. Boisseau's certifications false, nor what Mr. Boisseau knew in relation to what was disclosed. The mere invocation of the words "Sarbanes-Oxley certification" does not magically create liability. Even if Mr. Boisseau's Sarbanes-Oxley certifications could be shown to be false (which they are not), without more, it would not, as a matter of law, demonstrate a strong influence of scienter. *See, e.g., Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1265-66 (11th Cir. 2006) (certification probative of scienter only if signatory was severely reckless in certifying accuracy of financial statements); *In re Hypercom Corp. Sec. Litig.*, 2006 WL 1836181, at *11 (D. Ariz. July 5, 2006) ("[A]n incorrect Sarbanes-Oxley certification does not, by itself, create a strong inference of scienter"). Plaintiffs have pleaded no facts as to Mr. Boisseau in satisfaction of this standard. Count I must therefore be dismissed.

### III.    PLAINTIFFS' SECTION 20(a) CLAIM MUST BE DISMISSED AS TO MR. BOISSEAU

Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a) provides:

> Every person who, directly, or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

To plead control-person liability, plaintiffs must allege: "(1) a primary violation by the controlled person, (2) control of the primary violator by the defendant, and (3) that the defendant was, in some meaningful sense, a culpable participant in the controlled person's

20

fraud." *ATSI Communications, Inc. v. Shaar Fund, LTD.*, 493 F.3d 87, 108 (2d Cir. 2007);

15 U.S.C. § 78t(a) (*citing SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1472-73 (2d Cir.

1996)).[8]

To start, because plaintiffs have failed to sufficiently plead their underlying Section

10(b) claims, their Section 20(a) control persons claim must also fail. *ATSI*

*Communications, Inc.*, 493 F.3d at 108; *see also SEC v. First Jersey Secs., Inc.*, 101 F.3d

at 1472-73 ("In order to establish a prima facie case of controlling-person liability, a

plaintiff must show a primary violation by the controlled person.").

Additionally, plaintiffs have failed to allege either the requisite control by Mr.

Boisseau over Optionable, the "primary violator" or culpable participation. *ATSI*

*Communications, Inc.*, 493 F.3d at 108. Instead, plaintiffs again attempt to base liability

through group pleading. (*See, e.g.*, CAC, ¶ 89). Of course, the law is that the Court must

undertake an "individualized determination of a defendant's control of the primary

violator, as well as of the defendant's *particular culpability*." *In re Alstom SA Sec. Litig.*,

406 F. Supp. 2d 433, 486 (S.D.N.Y. 2005) (emphasis added) (internal quotations omitted).

The lack of specifics in the CAC makes such an undertaking impossible. "Actual control

is essential to control person liability." *Id.*; *accord In re Global Crossing, Ltd. Sec. Litig.*,

2005 WL 1875445 *3 (S.D.N.Y. Aug. 5, 2005). Moreover, the heightened pleading

requirements of the PSLRA apply to the culpable participation element. *See Global*

*Crossing*, 2005 WL 2990646 * 8 (S.D.N.Y. 2006); *In re AOL Time Warner, Inc. Sec. &*

*ERISA Litig.*, 381 F. Supp. 2d 192, 235 (S.D.N.Y. 2004) (requires particularized

allegations of fact giving rise to a strong inference of scienter to satisfy the "culpable

---

[8] *But see In re Parmalat Sec. Litig.*, 497 F. Supp. 2d 526, 532 fn. 42 (S.D.N.Y. 2007)
(declining to follow the Second Circuit decision in *ATSI Communications, Inc. v. Shaar*

21

participation" element of a Section 20(a) claim).    Thus, plaintiffs must "plead _with particularity_ facts giving rise to _a strong inference_ that the controlling person knew or should have known that the primary violator, over who that person had control, was engaging in fraudulent conduct." _Id._ (emphasis in original); _see also Kalin v. Xanboo, Inc._, 2007 WL 273546 * 11-12 (S.D.N.Y. Jan. 31, 2007).    When tested against this pleading burden, the CAC once again fails.

As previously alluded to, courts routinely reject attempts to premise scienter upon allegations that, by virtue of defendants' executive managerial position (or even board memberships), they had access to information concerning a company's adverse financial outlook or other company information.    _In re Health Management Sys., Inc. Sec. Litig._, 1998 WL 283286 at * 6; _Glickman v. Alexander & Alexander Svcs., Inc._, 1996 WL 88570 * 14 (S.D.N.Y. 1996).    Thus, without more, an individual's position as an officer (or even director) alone is insufficient to support an inference of scienter.    _In re Citigroup, Inc. Sec. Litig._, 330 F. Supp. 2d at 381-82; _see also In re Health Mgmt., Inc., Sec. Litig._, 970 F. Supp. at 204.    Yet, that is the basis upon which plaintiffs predicate liability against Mr. Boisseau.

In stark contrast to what is not alleged in the CAC, all of the statements attributed to Mr. Boisseau (as noted previously) were either true and, even assuming _arguendo_ they were not, plaintiffs have done nothing to show that Mr. Boisseau knew the statements to be false at the time they were made.    Because truthful statements (or statements amounting to nothing but puffery) cannot serve as the basis for a Section 10(b) claim, the statements attributable to Mr. Boisseau in the CAC fail to support a strong inference of fraudulent intent.    Lastly, plaintiffs fail to allege any facts establishing that Mr. Boisseau had any

_Fund, LTD._, 493 F.3d 87, 108 (2d Cir. 2007).

22

*culpable* role, much less actual control, related to plaintiffs' claims regarding failures to disclose: (i) purported problems with OPEX (*see* CAC, ¶¶ 8, 10, 18, 26-7, 29, 69, 94); (ii) certain of his individual co-defendants' sales of Optionable stock at allegedly "inflated" prices (*see* CAC, ¶¶ 47, 93); (iii) the purported "true" extent of Optionable's reliance on BMO, and that BMO's trading losses were Optionable's fault because Optionable purportedly provided "some" erroneous quotes to BMO causing BMO to pull its business from Optionable (*see* CAC, ¶¶ 7, 14, 19, 27, 29, 31, 36, 39, 43, 50, 56-69, 65-66, 69, 94); and (iv) Cassidy's old non-securities fraud convictions and purported "undisclosed relationship" between traders at BMO and Cassidy (*see* CAC, ¶¶ 6(b), 7, 16, 29). Nor have plaintiffs pleaded particularized facts that would give rise to a "strong inference" that Mr. Boisseau was *culpably* involved in any decision by Optionable to not disclose any of the foregoing. Thus, plaintiffs' Section 20(a) claim should be dismissed.

## CONCLUSION

For all of the foregoing reasons state herein and in the referenced Motions and Memoranda filed by the other Defendants, Marc-Andre Boisseau respectfully submits that the Complaint should be dismissed with prejudice and without leave to amend.

DATED: February 19, 2008          **EDWARDS ANGELL PALMER & DODGE LLP**

By:____/s/ Paul E. Dans_____
        Paul E. Dans
        750 Lexington Avenue
        New York, NY 10022-1200
        T: (212) 912-2736
        F: (212) 308-4844
        E: pdans@eapdlaw.com

Of Counsel:

John L. Reed
Michael J. Maimone
Paul D. Brown
Joseph B. Cicero
919 North Market Street, 15th Floor
Wilmington, DE 19801
T: (302) 777-7770
F: (302) 777-7263
E: jreed@eapdlaw.com
    mmaimone@eapdlaw.com
    pdbrown@eapdlaw.com
    jcicero@eapdlaw.com

*Attorneys for Defendant Marc-Andre Boisseau*

512566.3