Michael G. Bongiorno
Justina L. Geraci
WILMER CUTLER PICKERING HALE AND DORR LLP
399 Park Avenue
New York, New York 10022
212-230-8800

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------x
                                                      :
In re OPTIONABLE, INC. SECURITIES  :         No. 07 Civ. 3753 (LAK)
LITIGATION                                          :
                                                      :         ORAL ARGUMENT REQUESTED
-----------------------------------------------------x


**DEFENDANT OPTIONABLE, INC'S REPLY MEMORANDUM IN SUPPORT OF ITS
MOTION TO DISMISS THE CONSOLIDATED CLASS ACTION COMPLAINT**

I.   Introduction

Nowhere in their three separate briefs in opposition do Plaintiffs identify contemporaneous facts pled with specificity and based on proper sources that would sustain the Consolidated Amended Class Action Complaint ("Complaint" or "CAC").  Conspicuously lacking is any direct response to the numerous pleading deficiencies identified by Optionable in its opening brief, or to the demonstration that the Complaint conveniently ignored or mischaracterized Optionable's disclosures.  Instead, the three briefs consist principally of general statements of the law, a rehashing of the allegations in the Complaint, and unilateral declarations that those allegations meet the legal standard.  While Plaintiffs feebly attempt to distinguish a few of the authorities that Optionable cited in its brief, they cite precious few of their own cases, and none upholding allegations similarly conclusory in nature.

II.  Argument

   A.   **Plaintiffs have not adequately pled the alleged scheme to misprice options**

Plaintiffs' allegations concerning the Deloitte report are based solely on a press report that relied on an unnamed source purportedly "familiar with" the report, about whom no further information is provided.  *See* CAC at ¶ 43.  This source is inadequate, and Plaintiffs offer no authority to the contrary.  *See In re Sierra Wireless, Inc. Sec. Litig.*, 482 F. Supp. 2d 365, 376 (S.D.N.Y. 2007) (in securities fraud cases, plaintiff must provide sufficient information for court to assess whether confidential source was in position to know what was ascribed to her).  Plaintiffs' musings about the reliability of newspapers in other contexts (*see* Opp. to Motions of Nordlicht, Cassidy, and Helmig ("Opp. Brief 2") at 9) are irrelevant; newspaper articles are

subject to the same standard and "should be credited only to the extent that other factual allegations would be--if they are sufficiently particular and detailed to indicate their reliability. Conclusory allegations of wrongdoing are no more sufficient if they come from a newspaper article than from plaintiff's counsel." *In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d 1248, 1272 (N.D. Cal. 2000) (citing to *Haft v. Eastland Fin. Corp.*, 772 F. Supp. 1315 (D.R.I. 1991)). Accordingly, the Court should not consider the allegations concerning the Deloitte report.

Even if considered, the Deloitte allegations do not contain sufficient particulars linking Optionable to any scheme with BMO to misprice marks. Plaintiffs now attempt to confuse the issue by suggesting that the "scheme" at issue is not one between Optionable and BMO, but rather one by Optionable to inflate its stock price. (*See* Opp. to Motion of Co. ("Brief 1") at 16.) The Complaint, however, alleges that "…Defendants had engaged in a scheme to grossly misprice options **with BMO**… ." CAC at ¶ 10 (emphasis supplied). Moreover, Plaintiffs offer no specifics of the alleged mispricing, such as who at Optionable was involved, or how many marks were mispriced, or the net effect of the mispricing. Nothing is alleged beyond that "some" unidentified portion of the incorrectly priced marks in BMO's portfolio had been provided by Optionable. CAC ¶ 43. While identifying every single transaction may not be required in this context, Plaintiffs offer no authority suggesting that merely alleging that "some" marks were mispriced is enough adequately to plead securities fraud, especially absent any other details of the mispricing. Such a pleading cannot survive a motion to dismiss. *See In re FBR Inc. Sec. Litig.*, Master File No. 05 Civ. 4617 (RJH), 2008 WL 857627, at *6 (S.D.N.Y. March 31, 2008) (dismissing complaint that "allege[d] the nature of defendants' violation of the securities laws, [but did] not specify what defendants did, who they did it with, or how what defendants did

constituted the alleged violation" and noting that "[s]ecurities plaintiffs cannot meet the heightened pleading standards imposed by Rule 9 and the PSLRA with such conclusory claims of undisclosed wrongdoing").

Plaintiffs' attempt to distinguish cases cited by Optionable is futile. They claim that *Shushany v. Allwaste, Inc.*, 992 F.2d 517 (5th Cir. 1993), a case dismissing securities fraud allegations for failure to plead with particularity, somehow supports them. Brief 1 at 17. In *Shushany*, the court dismissed the Complaint because, *inter alia*, it did not provide any specifics as to how the accounting adjustments at issue were improper or why they were material. *Shushany,* 992 F.2d at 522-524. Plaintiffs simply decree that they have pleaded more, but the only "express" allegation to which they point -- the loss of a specific percentage of revenue when BMO terminated its relationship with the Company -- does not detail the alleged fraud itself (as a revenue figure might if the allegation was that Optionable had overstated revenues), but rather quantifies its supposed consequences. In short, this is a red herring.[1] To the same effect is Plaintiffs' bogus attempt to distinguish *Davidoff v. Farina*, Civ. A. No. 04-7617, 2005 WL 2030501 (S.D.N.Y. Aug. 22, 2005), where the failure to plead amount of revenue improperly recognized meant that plaintiffs there had not pleaded materiality. *Id.* at *13.

Nor do Plaintiffs allege anything suggesting any mispricing was intentional, as is necessary to plead scienter. Allegations of a personal friendship between Cassidy and Lee are wholly unsourced, and do not suggest in any event that Optionable was intentionally mispricing marks for Lee's benefit. In the demand futility context, also governed by a heightened pleading standard, courts ascribe no importance to routine personal or business relationships absent specific allegations that they rise to the level where the defendant would rather risk his own reputation than to take action contrary to the colleague's interest. *See Beam ex rel. Martha*

---

[1] The additional "express" allegation of *BMO's* loss is even less meaningful.

*Stewart Living Omnimedia, Inc. v. Stewart*, 845 A.2d 1040, 1052 (Del. 2004).  As for payments to Lee and his supposed sister, Plaintiffs rely only on an unnamed analyst about whom they provide no information at all other than that he or she followed Optionable, and offer no authority suggesting this paltry source can be credited.  CAC ¶ 7.  Nor do Plaintiffs articulate how payments *to* Lee and his supposed sister[2] somehow show that Optionable was mispricing marks for Lee's benefit.[3]  Finally, that Lee and Moore were placed on leave says nothing at all about *Optionable*, and BMO's cutting its ties with Optionable is consistent with many explanations and not probative of intentional misconduct, particularly where Plaintiffs do not even attempt to allege that BMO itself ever accused Optionable of misconduct.

      **B.**      **Defendants made full disclosures concerning BMO**

Plaintiffs essentially concede that Optionable disclosed the counterparty risks from transactions involving BMO.  *See* Brief 2 at 20.  But instead of acknowledging their failure carefully to read the SEC filings before filing the CAC, Plaintiffs make the bizarre argument that those very disclosures confused investors.  In particular, Plaintiffs say that because the statement about counterparty risks immediately followed the identification of the percentage of revenues derived directly from BMO, somehow investors were misled into believing that figure ***included*** revenues from counterparties.  *Id*.  This twisted interpretation makes no sense.  Obviously, the reason for the further disclosure was to give additional context for the 24 percent figure.  *See Sedighim v. Donaldson, Lufkin & Jenrette, Inc.*, 167 F. Supp. 2d 639, 646-47 (S.D.N.Y. 2001) (on motion to dismiss, "[i]f … allegations of securities fraud conflict with the plain language of the publicly filed disclosure documents, the disclosure documents control, and the court need not

---

[2] Specific, well-sourced allegations that Lee was paying *Optionable* might suggest some motive for Optionable to reciprocate by mispricing marks to help him deceive his employer; these allegations do not.
[3] *U.S. v. Hirsch*, 239 F.3d 221 (2d Cir. 2001), cited by Plaintiffs in Brief 1 at 21 n.12, is wholly inapposite as it concerns sentencing for mail fraud and in particular whether defendant had abused his trust because of personal relationships with clients.

accept the allegations as true." (citations omitted)); *In re Tower Automotive Securities Litigation*, 483 F. Supp. 2d 327, 334 (S.D.N.Y. 2007) (Plaintiff's "mere conclusions of law or unwarranted deductions need not be accepted. Furthermore, the truth of factual allegations that are contradicted by documents properly considered on a motion to dismiss need not be accepted." (citations and internal quotation marks omitted)); *Polar Int'l. Brokerage Corp. v. Reeve*, 196 F.R.D. 13, 16 (S.D.N.Y. 2000) (after earlier dismissal of securities fraud class action, court stated: "plaintiffs' repeated attempts to bolster their objectively unreasonable claims of misstatement and omission by exaggerating, mischaracterizing and ignoring the plain language of relevant documents is sanctionable conduct …" (internal citations omitted)).  As previously shown, the counterparty nature of Optionable's business, as well as the incentive payments it received from NYMEX, were disclosed in the SEC filings, which Plaintiffs ignore.  *See* Optionable's Brief in Support of its Motion to Dismiss ("Opening Brief") at 17-18, citing to Form 10-KSB at 7, 22.   If Optionable had wanted to mislead investors, it would have remained silent about counterparty risks.

Alternatively, Plaintiffs argue that "truth on the market" is an affirmative defense that cannot be decided on a motion to dismiss.  *See* Brief 2 at 19.  But that doctrine applies where misrepresentations are not actionable because the market already knew the truth from other sources.  *Ganino v. Citizens Util. Co.*, 228 F.3d 154, 167 (2d Cir. 2000).  Optionable does not rely on this doctrine at all, because Optionable's own clear disclosures show that there was no misrepresentation in the first place.  This is a perfectly appropriate basis to dismiss.[4]  *See Barios v. Paco Pharm. Serv.*, *Inc.,* 816 F. Supp. 243, 252 (S.D.N.Y. 1993) (no claim under section 10(b)

---

[4] Plaintiffs' cases are easily distinguishable.  *Hougibant, Inc. v. Dev. Specialists, Inc.,* 229 F. Supp. 2d 208 (S.D.N.Y. 2002) was a trademark case dealing with *res judicata* and the trademark infringement claim was not implicated in the complaint; *Lapin v. Goldman Sachs Grp.,* 506 F. Supp. 2d. 221 (S.D.N.Y. 2006) dealt with disclosures reported in the media, not made in filings; *Ganino,* 228 F.3d 154 dealt with disclosures made by third parties; and *In re Columbia Sec. Litig,* 155 F.R.D. 466 (S.D.N.Y. 1994) also dealt with news media articles.

where offering document "exactly states the cautionary 'fact' that the plaintiff claims has been covered up or misrepresented"); *In re Alliance N. Am. Gov't Income Trust, Inc. Sec. Litig.*, No. 95 Civ. 0330 (LMM), 1996 WL 551732, at *7-8 (S.D.N.Y. Sept. 27, 1996) (reasonable investor could not have been misled in light of disclosures clearly set forth in section entitled "Risks"). In the end, Plaintiffs are complaining not about fraud, but about the unfortunate materialization of a ***known*** risk.

      C.      **OPEX**

Plaintiffs now concede that OPEX was not "defective" (*see* Brief 1 at 23), and say their grievances are (1) that OPEX was used as an instrument to misprice marks (and therefore was not "transparent" as represented), and (2) that OPEX's prospects were overstated because Optionable lied about its dependence on BMO. *Id.*, 21-22. For the same reasons those allegations fail to state a claim (as set forth in section immediately above), these derivative OPEX allegations also fail.

      D.      **Mr. Cassidy's convictions**

Under Item 401 of Regulation S-B, there would have been no duty to disclose Mr. Cassidy's convictions even if he had been an officer at the time of the statement at issue, because they were too remote in time. *See* Opening Brief at 23. Plaintiffs recite question-begging general regulations instructing registrants to disclose material information, and then simply decree without supporting authority that information about Mr. Cassidy's remote convictions was necessary to make generic descriptions of his present duties not misleading. *See* Brief 1 at 19-20. This self-serving argument fails to recognize that the specific SEC regulation, being grounded in materiality notions, is itself a persuasive authority that the convictions are immaterial. Even if there were any sort of duty of disclosure, the allegations fail for lack of loss

causation because Mr. Cassidy's convictions were disclosed after the Class Period. Plaintiffs' response is mostly a red herring, arguing that their *other* allegations connect to corrective Class Period disclosures. *See* Opp. to Motions of O'Connor and Boisseau ("Brief 3") at 6-8. *Montoya v. Mamma.com* is inapposite because there, the involvement of the individual in question *was* disclosed during the class period. No. 05 Civ. 2313 (HB), 2006 WL 770573, at *7 (S.D.N.Y. March 28, 2006). Moreover, the quotation from that case, which Plaintiffs take out of context, is from a discussion whether the initial surge in the company's stock price was caused by concealment of the individual's involvement – an issue not presented here. Plaintiffs also rely heavily on *Suez Equity Investors, L.P. v. Toronto-Dominion Bank*, 250 F.3d 87 (2d Cir. 2001) for the proposition that "averring the omission of a material fact - one which a shareholder would view as significant in altering a decision whether to invest or not in a risk - is sufficient to plead loss causation." Brief 3 at 7. They are plainly wrong, as the Supreme Court squarely rejected that proposition in *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 346 (2005), holding that allegations of purchase at an inflated price do not suffice to allege *loss* causation.

E.  **Puffery**

Plaintiffs managed to unearth several cases where courts found optimistic statements actionable. Brief 1 at 27-30. However, unlike here, those statements were either characterizations of a specific event, *see e.g.*, *In re Northern Telecom. Ltd. Sed. Litig.*, 1994 WL 455534, at *7 (S.D.N.Y. Aug. 22, 1994); or specifically touted the superiority of particular products*, see, e.g., Morgan v. AXT, Inc.*, No. C 04-4362 (MJJ), 2005 WL 2347125, at *10 (N.D. Cal. Sept. 23, 2005), *In re Allaire Corp. Sec. Litig.*, 224 F. Supp. 2d 319, 332 (D. Mass. 2002); or plaintiffs alleged with particularity that they were made with knowledge of their falsity, *see Lapin*, 506 F. Supp. 2d at 240. Optionable cited abundant authority showing that courts have

held statements strikingly similar to the ones at issue to be mere puffery. *See* Opening Brief at 30-32.  Importantly, even if the Court were to conclude that any particular statement is not puffery, Plaintiffs have not pleaded specific facts showing they were made with knowledge of their falsity or recklessly.

  **F.**  **Scienter**

  Unable to point to facts directly showing culpable state of mind, Plaintiffs ask the Court to infer it from the individual Defendants' sale of shares to NYMEX (at prices a fraction of the market price).  They argue that such sales were "suspicious" in timing because they occurred "just days prior to Optionable's mispriced trades becoming public." *See* Compl. at ¶ 47 and Brief 2 at 14.  However, the individual Defendants committed to these sales several months in advance of their execution, on January 22, 2007 (*see* March 23, 2007 Form 10-KSB at 8, attached as Exhibit B to Declaration of Michael G. Bongiorno.)  Accordingly, the timing of the sales is not "suspicious" at all.[5]

  Plaintiffs also contend that the below-market price is irrelevant because the sales could not have been made on the open market. *See* Brief 2 at 14.  But they offer no support for this proposition, which is counterintuitive given their own allegations that the market for Optionable stock was supposedly efficient.  Surely if the intent were to reap the benefits of fraud, the individual Defendants would have sold *some* stock at market prices, but not even *one share* was sold at market price, undercutting any inference of scienter.[6] *See In re Openwave Systems Sec. Litig.*, 528 F. Supp. 2d 236, 251 (S.D.N.Y. 2007) (failure to raise inference of scienter because, *inter alia*, the shares were sold well below the class-period high price per share, and plaintiff had not offered any basis from which to infer that the stock sales were related to any knowledge of

---

[5] Moreover, Plaintiffs cite nothing suggesting the individual Defendants knew in advance that problems at BMO would be revealed, or when.
[6] Plaintiff does not deny that the sale to NYMEX served a corporate purpose. *See Novak*, 216 F.3d at 307; *see also* Opening Brief at 32-33.

wrongdoing at company); *Malin v. XL Capital Ltd.*, 499 F. Supp. 2d 117, 151-53 (D. Conn. 2007) (court did not find the timing of the sales to be inherently suspicious, thus the gross proceeds, on their own, did not support an inference of scienter (citing multiple cases)).

Finally, Plaintiffs misleadingly cite to *Tellabs*, *Inc. v. Makor Issues & Rights Ltd.,* 127 S. Ct. 2499 (2007), suggesting that it somehow lowered the threshold for pleading scienter. *See* Brief 2 at 2-4. Plaintiffs have it precisely backwards. *Tellabs* overruled previous cases that had examined *only* the inferences favorable to *plaintiff* in determining whether a complaint raised a strong inference of scienter, held that competing inferences of nonculpability also *must* be considered, and further held that only where the inference of fraudulent intent was cogent and at least as compelling as the nonculpable explanation could a complaint survive. *See In re Initial Public Offering Sec. Litig.*, Master File No. 21 MC 92 (SAS), 2008 WL 819762, at 8, 9 (S.D.N.Y. March 26, 2008), noting that *Tellabs* imposes "heightened pleading requirements" and prescribes a "heightened inquiry." It is in *that* context that the "totality" of the scienter allegations must be considered. Here, the "totality" of Plaintiffs' allegations amounts to no more than the sum of its individual parts, none of which remotely suggests the requisite strong inference of scienter.

### G. Internal Controls, GAAP and Sarbanes-Oxley Claims

Plaintiffs do not dispute that Optionable disclosed all of the alleged weaknesses in its internal controls. *See* Opening Brief at 27. Their only quibble is that Optionable used an *adjective* ("effective") to describe those controls. But they cite no authority for the proposition that the use of a particular adjective can constitute a securities violation where the underlying facts are fully disclosed (and indeed form the basis of the claim).

Plaintiffs do nothing to suggest their GAAP and Sarbanes-Oxley claims are anything but duplicative of their other claims, which fail for the reasons set forth above. As the Company showed in its opening brief, the Plaintiffs have not adequately alleged false Sarbanes-Oxley certifications nor GAAP violations. *See* Opening Brief 29-30.

### III. Conclusion

For the reasons set out above and in its opening brief, Optionable submits that the Complaint should be dismissed because it fails to allege fraud, or to set forth the requisite inference of scienter, with the particularity demanded by the PSLRA and Rule 9(b). As Plaintiffs give no indication whatsoever that they will be able to cure these deficiencies, and because it is unfair to subject Optionable and the individual Defendants to another round of briefing, leave to amend (*see* Brief 1 at 30, n. 20; and Brief 2 at 25, n. 12) should be denied and dismissal should be with prejudice.

Dated: New York, New York
April 22, 2008

                                        WILMER CUTLER PICKERING
                                        HALE AND DORR LLP

                                        By: /s/ Michael G. Bongiorno
                                            Michael G. Bongiorno
                                            Justina L. Geraci
                                            399 Park Avenue
                                            New York, New York 10022
                                            Tel.: 212-230-8800
                                            Fax: 212-230-8888

                                        *Attorneys for Defendant Optionable, Inc.*